UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INGERSOLL-RAND COMPANY,

              Plaintiff,

        v.

CENTURY INDEMNITY COMPANY
(as successor to CCI Insurance
Company, successor to Insurance
Company of North America),

              Defendant.

Civil Action No. 1:07-cv-04825-UA

---

## MEMORANDUM OF LAW IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THIS ACTION IN FAVOR OF FIRST-FILED NEW JERSEY ACTION

CROWELL & MORING LLP
153 EAST 53RD STREET
NEW YORK, NY 10022-4611

(212) 223-4000

Attorneys for Defendant

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    FACTS AND PROCEDURAL HISTORY .........................................2

    A.     The Underlying Dispute and Settlement ............................2

    B.     The Present Competing Actions ............................................4

    C.     The Location of the Parties, Witnesses and Documents ......6

III.   ARGUMENT .......................................................................................7

    A.     The Court Should Dismiss or Stay This Action Because It
        Involves State Law Issues and Requests for Declaratory Relief
        More Appropriately Decided In New Jersey State Court ....................7

    1.     Cases Governed By State Law Are Particularly Appropriate for
        Dismissal or Stay in Favor of State Court Actions ............................7

    2.     Cases Involving Requests for Declaratory Relief Are Also
        Particularly Suited For Dismissal in Favor of State Court
        Actions .......................................................................................9

    B.     The Court Should Dismiss or Stay This Action Because  The
        New Jersey Action Was Filed First ........................................13

    1.     The First-Filed Rule Creates a Strong Presumption In Favor Of
        the First-Filed New Jersey Action ......................................................13

    2.     The First-Filed New Jersey Action Is Substantially Similar To
        This Case ......................................................................................15

    3.     Ingersoll-Rand Cannot Overcome the Strong First-filed
        Presumption Where Neither Special Circumstances Nor the
        Balance of Convenience Points to the Second-filed New York
        Action ......................................................................................16

    C.     The Court Should Dismiss This Action on *Forum Non
        Conveniens* Grounds ..........................................................20

IV.    CONCLUSION ..................................................................................23

## I.    **INTRODUCTION**

Defendant Century Indemnity Company ("Century") submits this Memorandum in support of its motion to dismiss, or alternatively stay, this action filed by Ingersoll-Rand Company ("Ingersoll-Rand") in favor of Century's virtually identical, previously-filed action in New Jersey state court.  Both actions involve the enforceability of a 2003 settlement agreement resolving Ingersoll-Rand's claims to coverage for asbestos liabilities under two Century excess insurance policies – a settlement agreement under which Century already has paid – and Ingersoll-Rand already has accepted – tens of millions of dollars.

Already pending in the Superior Court of Bergen County, New Jersey, is Century's action seeking enforcement of the parties' 2003 settlement agreement.  That first-filed New Jersey state court action involves the *same* parties and issues as this case, and will provide a full and complete opportunity for adjudication of the issues presented here.  In addition, issues concerning the enforceability of the parties' settlement agreement – at the heart of both the New Jersey action and this action –are more appropriately heard by a New Jersey state court because they involve state law issues likely governed by New Jersey law.  Finally, New Jersey is the most appropriate forum because it is the state in which: (i) Ingersoll-Rand has been incorporated since 1905;  (ii) Ingersoll-Rand has maintained its corporate headquarters since 1972; (iii) the negotiations that resulted in the parties' 2003 settlement agreement took place; and (iv) Ingersoll-Rand documents and employees relevant to the case are located.

Indeed, not only is the first-filed New Jersey action pending in the very county (Bergen County) where Ingersoll-Rand is incorporated and headquartered, but it also is the same county in which Ingersoll-Rand itself filed a prior lawsuit regarding insurance coverage for its asbestos liabilities under policies issued by Century's predecessor, Insurance Company of North America ("INA"), as well as other insurance-related lawsuits.   Simply put, New Jersey is the obvious forum in which this dispute should be heard, and Ingersoll-Rand should not be permitted to forum-shop through the expedient of this copycat action.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    The Underlying Dispute and Settlement

The dispute that is the subject of both the instant action and Century's first-filed New Jersey action began when Ingersoll-Rand sought coverage for certain underlying asbestos bodily injury claims under two excess liability insurance policies issued by Century, Policy No. XBC 1904  and Policy No. XBC 42188 (collectively, the "Century Policies").  (Century Indem. Co. v. Ingersoll-Rand Co., BER-L 003063, Compl. at ¶ 5; attached as Exh. A.)  Ingersoll-Rand's coverage claims raised a number of issues concerning the parties' respective rights and obligations, if any, under the Century Policies, including whether the total amount of coverage, if any, available for underlying bodily injury claims under the Century Policies was limited to $25 million, as Century contended.  (Id. at ¶ 6.)

In 2003, Century and Ingersoll-Rand participated in a series of negotiations aimed at reaching a complete and permanent settlement of the coverage dispute.

(Aff. of Malcolm L. Myers, ¶ 5; attached as Exh. B.)  None of those settlement negotiations took place in New York.  (Id.)

In or around November 2003, Century and Ingersoll-Rand met in Hamburg, New Jersey, where they reached a settlement agreement under which they would permanently and completely resolve their coverage dispute and avoid litigation (the "2003 Settlement Agreement"). (Exh. A at ¶ 9; Exh. B at ¶ 6.)  Among other things, Century and Ingersoll-Rand agreed that the total amount available under the Century policies for defense and indemnity of Ingersoll Rand's asbestos liabilities are as follows: (a) $15 million under Policy No. XBC 1904; and (b) $22.5 million under Policy No. XBC 42188, for a combined total of $37.5 million under both Century Policies. (Exh. A at ¶ 10.)

Century has since been reimbursing Ingersoll-Rand for its defense costs and indemnity payments in accordance with, and in express reliance upon, the terms of the 2003 Settlement Agreement.  (Exh. B at ¶ 7.)  Since 2003, Century has paid more than $25 million to Ingersoll-Rand in accordance with, and in express reliance upon, the terms of the 2003 Settlement Agreement. (Id.)  Such payments have all been sent to Ingersoll-Rand in New Jersey.  (Id. at ¶ 8.)

B.    **The Present Competing Actions**[1]

On April 27, 2007, Century filed a complaint against Ingersoll-Rand in the

Superior Court of Bergen County, New Jersey, styled <u>Century Indemnity Co. v.</u>

<u>Ingersoll-Rand Co.</u>, BER-L 003063 ("New Jersey Action") (Exh. A).  Century served

its First Set of Interrogatories and Document Requests on Ingersoll-Rand in the

New Jersey Action on May 7, 2007.  On May 17, 2007, Ingersoll-Rand filed a

virtually identical complaint against Century in the Supreme Court of New York

County, New York, styled <u>Ingersoll-Rand Co. v. Century Indemnity Co.</u>, No.

601653/07 (May 17, 2007) ("New York Action").  Century removed the New York

Action to this Court on June 6, 2007.

Not only are the parties to this action – Century and Ingersoll-Rand –

identical to the parties in the New Jersey Action, but the claims and issues set forth

are essentially the same as, if not identical to, those identified in the first-filed New

Jersey Action.  For example, in Count I of the Complaint in the New Jersey Action,

---

[1]    On July 19, 2006, Century filed a complaint against Ingersoll-Rand in the Superior Court of Bergen County, New Jersey styled <u>Century Indemnity Co. v. Ingersoll-Rand Co.</u>, BER-L 5312-06.  Nearly three weeks later, on August 8, 2006, Ingersoll-Rand filed a virtually identical lawsuit in the Supreme Court of New York County, New York styled <u>Ingersoll-Rand Co. v. Century Indemnity Co.</u>, No. 602770/06 (Aug. 8, 2006).  On August 28, 2006, Century removed that case to this Court.  Some time after these actions were filed, Century and Ingersoll-Rand entered into mediation.  To that end, the parties executed an Agreement to Facilitate Mediation on December 13, 2006, under which they agreed to voluntarily dismiss without prejudice their respective actions and to refrain from refiling litigation until termination of the agreement.  The New Jersey Action was thus dismissed on December 15 ,2006, and the New York Action was dismissed on December 18, 2006.  The parties also agreed under that agreement that, in the event mediation was unsuccessful, Century would have the right to refile its New Jersey action against Ingersoll-Rand first, with Ingersoll-Rand being able to refile its New York action against Century 20 days later, thereby preserving the procedural aspects of the original competing actions.  Ingersoll-Rand terminated the Agreement to Facilitate Mediation on March 28, 2007.

Century seeks a declaration that the 2003 Settlement Agreement, which resolved the dispute between Century and Ingersoll-Rand over their respective rights and obligations under the Century Policies, is enforceable.  (Exh. A at  ¶¶ 24-32.)  Likewise, in Count I of the complaint in the instant action, Ingersoll-Rand seeks a declaration that the 2003 Settlement Agreement is *not* enforceable. (Ingersoll-Rand's Compl. ("Compl.") at ¶¶ 53-57.)

If the New Jersey court finds that the 2003 Settlement Agreement is *not* enforceable, then in the alternative, Count II of the New Jersey Action seeks a determination of the parties' rights and obligations under the Century Policies. (Exh. A at ¶¶ 33-36.)  Likewise, in Count II of the instant action, Ingersoll-Rand also seeks a determination of the Parties' rights and obligations under the Century Policies.  (Compl. at ¶¶ 58-62.)  Thus, Count II in both complaints will come into play if, and only if, the 2003 Settlement Agreement that is the subject of Count I is determined to be unenforceable.

Both lawsuits also contain a third count requesting amounts allegedly owed if it is determined that the 2003 Settlement Agreement is not enforceable.  In the New Jersey Action, Century seeks reimbursement of all amounts Century has (or will have) paid to Ingersoll-Rand in performance of the 2003 Settlement Agreement that it did not in fact owe.  Specifically, Century seeks all amounts in excess of $25 million, which Century claims is the total limits available under the Century Policies.  (Exh. A at ¶¶ 37-40.)  Likewise, in the instant action, Ingersoll-Rand apparently seeks "damages" which it contends reflect its view of the total aggregate

limits available under the Century Policies. (Compl. at ¶¶ 30, 63-65.) Like Count

II, Count III in both lawsuits will come into play *only if* the 2003 Settlement

Agreement that is the subject of Count I is determined to be unenforceable.

### C.    The Location of the Parties, Witnesses and Documents

Century is, and at all times relevant hereto was, a corporation organized

under the laws of Pennsylvania, with its principal place of business in Philadelphia,

Pennsylvania. (Exh. B at ¶ 2). Ingersoll-Rand is incorporated and maintains its

principal place of business in Montvale, New Jersey, (Compl. at ¶ 2), which is

located in Bergen County, the county in which the New Jersey Action is pending.

The negotiations that resulted in the 2003 Settlement Agreement concluded in New

Jersey, and none of these negotiations took place in New York. (Exh. B at ¶¶ 5-6.)

In addition, witnesses, including Ingersoll-Rand employees involved in the

negotiations, reside in New Jersey, and potentially relevant documents are located

there. Furthermore, Ingersoll-Rand itself has previously filed insurance-related

actions in the Superior Court in Bergen County, New Jersey.[2]

---

[2]    For example, Ingersoll-Rand sought resolution of disputes in the Superior Court in
Bergen County regarding insurance coverage for asbestos claims under other policies issued
by a number of carriers, including Century's predecessor, Insurance Company of North
America ("INA"). (See Ingersoll-Rand Co. v. Commercial Union Ins. Co., et. al., No. L-
37911-89, 3d Am. Compl., (N.J. Super. Ct. Law Div., Bergen County, March 6, 1995);
attached as Exh. C.) As stated in Ingersoll-Rand's summary judgment briefs in that action,
Ingersoll-Rand has "long ties and deep roots" in New Jersey. (Ingersoll-Rand Co. v.
Commercial Union Ins. Co. et. al., No. L-37911-89, Reply Br. of Ingersoll-Rand in Supp. of
its Cross-Mot. for Summ. J., 15-16; attached as Exh. D.) Ingersoll-Rand has been
incorporated in, and has thus been a continuous citizen of, New Jersey since 1905. (Id. at
14) Ingersoll-Rand also has maintained its corporate headquarters in New Jersey since
1972. (Id. at 15; Compl. at ¶¶ 2-3). Additionally, in that prior New Jersey action,
Ingersoll-Rand asserted that it maintains its "flagship" production facility in Phillipsburg,

(continued…)

### III.  ARGUMENT

**A.    The Court Should Dismiss or Stay This Action Because It Involves State Law Issues and Requests for Declaratory Relief More Appropriately Decided In New Jersey State Court**

**1.    Cases Governed By State Law Are Particularly Appropriate for Dismissal or Stay in Favor of State Court Actions**

This Court should dismiss or stay this action in favor of the first-filed New Jersey action because the New Jersey state court is a more appropriate forum for resolution of the exclusively state law issues involved here.  See, e.g., Travelers Indem. Co. v. Philips Elecs. N. Am. Corp., No. 02 CIV 9800, 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004); Nat'l Union Fire Ins. Co. of Pittsburgh v. Warrantech Corp., No. 00 CIV 5007, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001); Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp., No. 94 Civ. 6971 (SS), 1996 WL 61763, at *3-4 (S.D.N.Y. Feb. 13, 1996).   Indeed, a *New Jersey* state court is particularly well-suited to hear this dispute involving issues regarding the enforceability of a settlement agreement negotiated largely in New Jersey with a New Jersey policyholder – issues likely

---

(continued)

New Jersey, and that that facility was produced many of the pumps that gave rise to more than half of its asbestos claims.  (Exh. D at 14-15.)  In short, Ingersoll-Rand contended that it has "many substantial and historic ties to New Jersey[.]"  (Id. at 12.)

governed by New Jersey law.[3]

This Court repeatedly has dismissed insurance-related disputes because such disputes are governed by state law and therefore are especially appropriate for state court.  See, e.g., Philips Elec. N. Am. Corp., 2004 WL 193564, at *2 (dismissing insurance-related case and emphasizing that "district courts routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law."); Warrantech Corp., 2001 WL 194903 at *3-4 (dismissing insurance-related case in favor of pending Texas state action where, inter alia, no federal law issues were presented and where all the issues in the New York case either were already asserted in Texas or could be asserted as defenses or counterclaims); Multi-Fin. Sec. Corp., 1996 WL 61763 at *3-4 (dismissing insurance-related case and holding that "[t]ipping heavily in favor of abstention in this case . . . is the fact that state law will govern the outcome of this action."). See also Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 475 F. Supp. 2d 213, 234 (E.D.N.Y. 2007) ("The absence of federal issues in a declaratory judgment action weighs heavily in favor of abstention."). Thus, the fact that this case involves state

---

[3]    The New York courts apply the center of gravity/grouping of contacts approach set forth in the Restatement (Second) Conflict of Laws in order to identify the state with the most significant interest in the specific issue necessitating the choice of law.  Here, New Jersey has the most significant interest in having its law apply to the predicate issue of whether there is a valid and enforceable settlement agreement since New Jersey is the state in which the 2003 Settlement Agreement was reached and in which negotiations took place, and where the policyholder involved in the 2003 Settlement Agreement has its principal place of business and state of incorporation.

law issues likely governed by New Jersey law supports a dismissal or stay of this action in favor of the first-filed New Jersey state court action.

**2.    Cases Involving Requests for Declaratory Relief Are Also Particularly Suited For Dismissal in Favor of State Court Actions**

This case is, at its core, a declaratory judgment action.[4]  The United States Supreme Court has held that where a case involves a request for a declaratory judgment, the federal district court can exercise its discretion to dismiss or stay the case where another suit is pending in state court presenting the same state law issues.  In <u>Brillhart v. Excess Insurance Co. of America</u>, 316 U.S. 491, 495 (1942), the Supreme Court stated that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  <u>Id.</u> at 495.

---

[4]    The New York action brought by Ingersoll-Rand includes two counts for declaratory relief as well as a related claim for damages.  As with Count III of the New Jersey Complaint, the damages count in the New York action (Count III) comes into play only if the 2003 Settlement Agreement is held unenforceable. It should be noted that because the New York case has now been removed, it is governed by federal procedural law; thus, the <u>Brillhart/Wilton</u> line of cases addressing the standard for dismissal of actions under the federal Declaratory Judgment Action would apply here.  <u>See</u> <u>Quality King Distrib., Inc. v. KMS Research, Inc.</u>, 946 F. Supp. 233, 236 (S.D.N.Y. 1996) (stating that removed "lawsuit is governed by federal rather than state law because the Declaratory Judgment Act addresses procedural as opposed to substantive rights" and applying <u>Brillhart/Wilton</u> line of cases).

9

The <u>Brillhart</u> Court identified the following as among the factors that may be considered by a federal district court in deciding whether to dismiss a case in favor of a state court action: (1) the scope of the pending state proceeding; (2) whether the claims of the parties can be adjudicated in that proceeding; (3) whether necessary parties have been joined; and (4) whether such parties are amenable to process.  <u>Id.</u>

In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995), the Supreme Court re-affirmed the <u>Brillhart</u> approach of giving federal district courts considerable discretion to dismiss an action where there is a parallel state court action pending. The <u>Wilton</u> Court noted that two additional factors that may be considered by the district court in deciding whether to dismiss a case are the avoidance of duplicative proceedings and the avoidance of forum shopping.  <u>Id.</u> at 280.

In addition to the <u>Brillhart</u>/<u>Wilton</u> factors, the United States Court of Appeals for the Second Circuit has stated that an additional factor to be considered by a federal district court in deciding whether to dismiss a case in favor of a parallel state court action is whether the action involves a novel issue of federal law.  <u>Youell v. Exxon Corp.</u>, 74 F.3d 373, 376 (2d Cir. 1996).  This Court also has recognized other factors that may be considered, including the relative convenience of the fora, the order of filing, and the choice of law.  <u>See</u> <u>Warrantech Corp.</u>, 2001 WL 194903, at *3.

An analysis of the factors set forth in <u>Brillhart/Wilton</u> and their progeny supports Century's request for a dismissal or stay of this action in favor of the New Jersey action.  First, analyzing this case under the <u>Brillhart</u> factors, the New Jersey

action involves the same parties and legal issues as this case, and the claims of both parties can satisfactorily be adjudicated in New Jersey. Both actions have, at their core, requests for declarations concerning the enforceability of the 2003 Settlement Agreement – with Century asking in Count I of its New Jersey Complaint for a declaration that the 2003 Settlement Agreement is enforceable, and Ingersoll-Rand asking in Count I of its New York Complaint for a declaration that the agreement is unenforceable. Count II of Century's Complaint requests that, in the event the 2003 Settlement Agreement is held unenforceable, the court issue a declaratory judgment regarding the parties' rights and obligations under the Century policies. Similarly, Count II of Ingersoll-Rand's Complaint also requests a declaration regarding the parties' rights and obligations under those policies. Finally, in Count III of both Complaints, the parties seek amounts alleged to be owed by the other if the 2003 Settlement Agreement is declared unenforceable – with Century asking for a return of those amounts paid under the agreement that were in excess of what Century claims the total policy limits are, and Ingersoll-Rand asking for "damages" in the amount of what it claims are the policy limits.

Examining this case pursuant to the additional factors noted by the <u>Wilton</u> Court, dismissal of this action would advance the goals of avoiding both duplicative proceedings and forum shopping. As discussed above, the copy-cat New York action is plainly duplicative of the first-filed New Jersey action. Moreover, until this dispute arose, Ingersoll-Rand (a New Jersey corporation with its principal place of business in Bergen County, New Jersey) had selected New Jersey to adjudicate

coverage disputes with Century; now, however, it wishes to avoid the Bergen County, New Jersey court for the resolution of this dispute – for reasons that appear difficult to explain other than by pure forum shopping motives. See, e.g., Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741, 758 (S.D.N.Y. 2006) (in dismissing case, this Court relied heavily on facts that "raise[d] a strong inference that forum-shopping reasons motivated" the choice of forum).

Looking at the factor added to the abstention analysis by the Second Circuit in Youell, this dispute does not involve *any* question of federal law, much less a "novel" issue. To the contrary, this is an exclusively state law dispute.

Finally, looking at the additional factors noted by this Court in Warrentech, *supra*, the convenience of the fora (including the fact that Ingersoll-Rand as well as relevant employee witnesses and potentially relevant documents are located in New Jersey, and New Jersey was the forum previously picked by Ingersoll-Rand for the resolution of related disputes between these parties), the order of filing (the New Jersey action being first-filed), and the choice of law governing this settlement enforceability dispute (likely New Jersey), all support dismissal of this case in favor of the first-filed New Jersey state court action.[5]

---

[5]    Even if this case was not at its core a declaratory judgment action governed by the Brillhart/Wilton standard (which it is), but was instead subject in any part to the stricter abstention standard set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), a dismissal or stay still would be appropriate here. In Colorado River, the Supreme Court stated that the following factors are appropriate for the district court to consider in deciding whether to dismiss or stay a case in favor of a parallel state

(continued…)

**B.    The Court Should Dismiss or Stay This Action Because
The New Jersey Action Was Filed First**

**1.    The First-Filed Rule Creates a Strong Presumption
In Favor Of the First-Filed New Jersey Action**

Even if this case did not involve the federal court/state court issues

that make abstention appropriate, a dismissal or stay of this case in favor

of the New Jersey action would still be appropriate under the traditional

first-filed rule.[6]  Courts in the Second Circuit consistently have dismissed

---

(continued)

action:  (1) the assumption by either court of jurisdiction over *res* or property; (2) the
inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in
which jurisdiction was obtained by the concurrent forums and the progress of the federal
court litigation; (5) whether state or federal law supplies the rule of decision; and (6)
whether the state court proceeding will adequately protect the rights of the party seeking to
invoke federal jurisdiction.  Most of these factors clearly cut in favor of abstention in this
case.  First, this case does not involve *res* or property.  The New Jersey Action was the first-
filed and discovery already has been served in that action, while the instant action has not
advanced beyond the initial pleading stage.  In addition, state law (likely New Jersey law)
will govern the issues in dispute concerning the 2003 Settlement Agreement. Finally, there
is no reason why the New Jersey Action would not adequately protect Ingersoll-Rand's
rights, since Ingersoll-Rand is free to assert its claims in this lawsuit as defenses and/or
counterclaims in the New Jersey Action.

[6]      In one case, the court stated that abstention – rather than the first-filed rule – is the
proper analytical framework for a federal court to use when faced with a pending *state*
court action involving the same parties and issues.  In Radioactive, J.V. v. Manson, 153 F.
Supp. 2d 462, 477 (S.D.N.Y. 2001), the court dismissed the federal court action in favor of
the state court action based on abstention, holding that the court's "exercise of jurisdiction
will lead to duplicative efforts, piecemeal litigation and the possibility of inconsistent
determinations."  Prior to dismissing the action on abstention grounds, the court stated
that the first-filed rule (as contrasted with the abstention doctrine) does not apply where
there are competing federal and state court actions, as opposed to competing federal court
actions.  Id. at 473.  Other cases decided by this Court have not made this distinction, and
have applied the first-filed rule to competing federal and state actions.  See, e.g., Quality
King, 946 F. Supp. 233.  See also NY CPLR 3211(a)(4) (allowing party to move to dismiss if
"there is another action pending between the same parties for the same cause of action in a
*court of any state or the United States*….").  Unlike the first-filed rule, the abstention
doctrine does not require that the state court action be filed first in order for the federal

(continued…)

or stayed cases in favor of first-filed actions involving the same parties and issues in order to avoid the inconvenience, waste of resources and risk of inconsistent results inherent in having nearly identical cases proceed in different courts.  See, e.g., First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) (affirming dismissal of second-filed action based on "the well-settled principle in this Circuit that '[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ...or ...special circumstances ...giving priority to the second.'") (citation omitted); Reliance Ins. Co. v. Six Star,Inc., 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) ("When two actions involving the same parties and issues are pending concurrently, courts in the Second Circuit follow the 'first-filed' rule whereby the court which first has possession of the action decides it."); Spotless Enter., Inc. v. Accessory Corp., 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (in dismissing second-filed case, the court stated that "[t]he 'first-filed' rule is a well-settled principle of law").

        This Court has emphasized the many important goals behind the first-filed rule:  "It seeks to advance judicial economy, protect a plaintiff's choice of forum and avoid duplicative litigation. It also protects parties from the considerable expense and potential for inconsistent judgments that duplicate litigation entails." Reliance,

_____

(continued)

court to dismiss the federal action in favor of the state action.  Here, Century's motion should be granted regardless of which doctrine(s) is(are) applied.

155 F. Supp. 2d at 54 (citations omitted). <u>See</u> <u>also</u> <u>In re Salomon Smith Barney Mut.</u>
<u>Fund Fees Litig.</u>, No. 04 CIV. 4055, 2006 WL 2085979, at *22 (S.D.N.Y. July 26,
2006) (in staying claims in second-filed action, court emphasized that first-filed rule
serves "the overriding policy considerations of conserving judicial resources and
ensuring that the parties' controversy be resolved in a single determination."); 
<u>Spotless</u>, 415 F. Supp. 2d at 205 (first-filed rule is viewed by New York courts "as
'wise judicial administration, giving regard to conservation of judicial resources and
comprehensive disposition of litigation.'") (citation omitted).

    Because of these important considerations, this Court has repeatedly stated
that there is a "strong presumption" in favor of the first-filed action.  For example,
in <u>J. Lyons & Co., Ltd. v. Republic of Tea, Inc.</u>, 892 F. Supp. 486, 493 (S.D.N.Y.
1995), this Court held that "[t]he first-to-file rule, which places a *strong*
*presumption* in favor of the first-filed suit, dictates that the New York actions be
dismissed in favor of the forums of the first-filed actions."  <u>Id.</u> (emphasis added).

### 2.    The First-Filed New Jersey Action Is Substantially Similar To This Case

    As noted by the courts in the Second Circuit, "[a]pplication of the [first-filed]
rule requires that both cases have identical or substantially similar parties and
claims."  <u>See</u>, <u>e.g.</u>, <u>Spotless</u>, 415 F. Supp. 2d at 205.  The key issue is whether there
is "substantial overlap."  <u>Id.</u>

    Here, Ingersoll-Rand's New York action involves the identical parties
(Ingersoll-Rand and Century) and virtually identical claims as Century's first-filed
New Jersey action.  Both actions have, at their core, requests for declarations

concerning the enforceability of the 2003 Settlement Agreement.  As discussed in detail above, each of the three Counts in the two actions is a near mirror image of the corresponding Count in the other action.[7]

As stated by the court in a similar situation, "[t]o say that there is 'substantial overlap' between the two cases would be an understatement[;] [t]he Court finds that these cases are nearly identical." Spotless, 415 F. Supp. 2d at 206. Thus, there is a "strong presumption" in favor of Century's first-filed New Jersey action.

### 3.    Ingersoll-Rand Cannot Overcome the Strong First-filed Presumption Where Neither Special Circumstances Nor the Balance of Convenience Points to the Second-filed New York Action

The courts have recognized a narrow exception to the first-filed rule, where there are either "special circumstances" or a "balance of conveniences" in favor of the second-filed action.  "The burden of showing such special circumstances or a balance of conveniences is on the party seeking to proceed with the second action." Quality King Distribs., Inc., v. KMS Research, Inc., 946 F. Supp. 233, 237 (E.D.N.Y. 1996).  Here, Ingersoll-Rand cannot show either the "special circumstances" or the "balance of conveniences" necessary to overcome the strong presumption in favor of the first-filed New Jersey action.

---

[7]      It is not necessary that the claims in both actions be completely identical, particularly where, as here, there is nothing to prevent any allegedly new claims asserted in the later-filed action from being decided in the first-filed action.  Gyadu v. Hartford Ins. Co., 133 F.3d 907 (2d Cir. 1998) (affirming district court's dismissal in favor of first-filed action, and holding that even though later-filed action addressed events which occurred after the first action was filed, the plaintiff in the later-filed action "still had the opportunity to raise [those] causes of action . . . in the first action").

This Court has emphasized that the party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception.  "Special circumstances justifying an exception to the rule exist where the first suit constitutes an 'improper anticipatory filing' or was motivated *solely* by forum shopping."  Reliance, 155 F. Supp. 2d at 54 (emphasis added) (citation omitted).  An anticipatory filing is "when a party brings a declaratory judgment action after receiving notice of a planned lawsuit by the other party."  AbovePeer, Inc. v. Recording Indus. Ass'n of Am., Inc., 166 F. Supp. 2d. 655, 658 (N.D.N.Y. 2001).  Forum shopping occurs when a party selects a forum with only a slight connection to the factual circumstances of its action, or where forum shopping alone motivated the choice.

Here, Ingersoll-Rand would be unable to meet its burden of demonstrating the "special circumstances" necessary to overcome the strong presumption in favor of the first-filed New Jersey action, as there is absolutely no evidence of either forum shopping or an anticipatory filing.  To the contrary, New Jersey is the state with the greatest connection to this dispute and the most natural choice of forum. New Jersey is the state: (i) where Ingersoll-Rand has – for over a century – been incorporated; (ii) where Ingersoll-Rand has – for over three decades – maintained its headquarters; (iii) where Ingersoll-Rand previously has chosen to bring coverage litigation, and (iv) where many of Ingersoll-Rand's employee witnesses and potentially relevant documents are located.  Moreover, the settlement agreement that is at the core of this dispute was reached at a meeting between Century and

17

Ingersoll-Rand that occurred in Hamburg, New Jersey.  In light of these overwhelmingly predominant New Jersey connections, there is no credible argument that New Jersey is a mere forum-shopping locale.  Moreover, Century did not have knowledge that Ingersoll-Rand intended to file suit against Century, nor did Century have knowledge that Ingersoll-Rand would choose to file suit in New York, rather than in Ingersoll-Rand's home county of Bergen County, New Jersey, thereby precipitating this forum battle between the parties.  (Exh. B at ¶ 9.)  In short, there are no "special circumstances" that would allow Ingersoll-Rand to meet its burden of overcoming the strong presumption in favor of Century's first-filed New Jersey action.

Similarly, Ingersoll-Rand cannot reasonably argue that the "balance of convenience" justifies departure from the strong presumption in favor of the first-filed action.  Reliance, 155 F. Supp. 2d at 55. The factors considered as part of the "balance of convenience" are: (1) the convenience of the witnesses, as well as the availability of process to compel their attendance if unwilling; (2) the location of relevant documents and ease of access to sources of proof; (3) the convenience and relative means of the parties; (4) the locus of the operative facts; (5) the forums' respective familiarity with the governing law; (6) the weight accorded to the plaintiff's choice of forum; (7) trial efficiency and the interests of justice; and (8) any other relevant factors special to the two cases.  Spotless, 415 F. Supp. 2d at 207.

Here, the "balance of convenience" points decidedly to the first-filed New Jersey action.  Ingersoll-Rand is headquartered in New Jersey, and witnesses and

potentially relevant documents are located there.  Two Ingersoll-Rand employees

involved in negotiation of the 2003 Settlement Agreement reside in New Jersey.

Many of the negotiations leading up to the 2003 Settlement Agreement took place in

New Jersey, not in New York.  In addition, the New Jersey courts are most familiar

with the law that will govern issues relating to the enforceability of the 2003

Settlement Agreement – which is likely to be the law of New Jersey because, *inter*

*alia*, that is where the settlement negotiations primarily took place, where the 2003

Settlement Agreement was reached, and where Ingersoll-Rand has long been

incorporated and headquartered.  Indeed, the New Jersey action is pending in

Ingersoll-Rand's *own home county* – the very county in which Ingersoll-Rand itself

has filed suit against Century's predecessor concerning coverage for asbestos claims

as well as other insurance-related actions.

　　　In sum, the "balance of convenience" here does not overcome the strong

presumption in favor of the first-filed New Jersey Action, but instead clearly

supports it.  Because there are neither the "special circumstances" nor "balance of

convenience" necessary to bring this case within the narrow exception to the first-

filed rule, this Court should dismiss or stay this second-filed action.[8]

---

[8]　　The first-filed rule used by courts in the Second Circuit also has been used by the
New York state courts and would have been applied here, even if this case had not been
removed to this Court.  See, e.g., Woollard v. Shaffer Stores Co., 272 N.Y. 304, 311 (1936)
("When … another action between the same parties, in which all issues could be
determined, is actually pending at the time of the commencement of an action for a
declaratory judgment, the court abuses its discretion when it entertains jurisdiction.");
Conn. Gen. Life Ins. Co. v. Zurich Reinsurance, Inc., No. 601334/00, 2002 WL 1880261, at
*7 (N.Y. Sup. Ct. Mar. 7, 2002) (refusing to dismiss first-filed New York action and

(continued…)

C.    **The Court Should Dismiss This Action on *Forum Non Conveniens* Grounds**

The *forum non conveniens* doctrine provides strong additional support for dismissal of this case.  "The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice."  R. Maganlal & Co. v. M.G. Chem., Inc., 942 F.2d 164, 167 (2d Cir. 1991).  "To prevail on a motion to dismiss based on *forum non conveniens*, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in [Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)], the balance of convenience tilts strongly in favor of trial in the foreign forum."  Id.

The four private interest factors set forth by the United States Supreme Court in Gilbert are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, including the enforceability of the ultimate

---

(continued)

emphasizing that New York "is the center of gravity for the parties' dispute...." because, *inter alia*, it was the principal place of business of the defendants and was the state wherein took place "several important meetings" relating to the alleged oral reinsurance agreement.)  See also NY CPLR 3211(a)(4) (allowing party to move to dismiss if "there is another action pending between the same parties for the same cause of action in a court of any state or the United States...."). Moreover, the New Jersey Court likely would deny any motion to dismiss Century's first-filed New Jersey action based on the first-filed rule applicable in the New Jersey state courts.  See, e.g., Yancoskie v. Del. Port Auth., 78 N.J. 321, 324 (1978).

judgment. The public interest factors are: (1) the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin; (2) the imposition of jury duty on members of a community having no relation to the litigation; (3) the local interest in the subject matter such that affected members of the community may have to view the trial and (4) the local interest in having localized controversies decided at home. The U.S. Court of Appeals for the Second Circuit has emphasized that "access to proof and witnesses" are particularly important factors in the *forum non conveniens* analysis. Maganlal, 942 F.2d at 168.

In this case, "an adequate alternative forum" (New Jersey state court) not only "exists," but there is a first-filed action *already pending* in that forum. Moreover, a number of the "private interest factors" set forth in Gilbert point to New Jersey. As discussed in more detail above, New Jersey is where the two Ingersoll-Rand employees involved in the negotiations reside, where potentially relevant documents likely are located, and where many of the operative facts relating to the 2003 Settlement Agreement occurred. As emphasized by the U.S. Court of Appeals for the Second Circuit, the litigants' "access to proof and witnesses" in New Jersey is important to the *forum non conveniens* analysis. See Maganal, 942 F. 2d at 168. In contrast, none of the private factors points to New York. Similarly, a number of the "public interest factors" also point to the New Jersey forum. Indeed, a New Jersey judge and jury would have a particular interest in this case, which involves a controversy over a settlement agreement negotiated

largely in New Jersey involving a New Jersey corporation and likely governed by New Jersey law.

Courts in the Second Circuit have not hesitated to dismiss cases on *forum non conveniens* grounds.  See, e.g., Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741 (S.D.N.Y. 2006); Multi-Fin. Sec., 1996 WL 61763 at *4 ("The choice of law and *forum non conveniens* factors also support abstention [in favor of state court in Denver].  Denver is a marginally better forum than New York because the central issue in this litigation centers around [defendant's] knowledge of [third party's] fraud and most of the witnesses and records regarding [defendant's] due diligence of [third party] are located in Denver.").  Similarly, in this case, *forum non conveniens* provides additional grounds for dismissal in favor of the first-filed action pending in New Jersey state court.

IV.    **CONCLUSION**

For all the foregoing reasons, this Court should grant Century's motion to dismiss or stay this action in favor of the first-filed action in New Jersey state court.

Dated:    June 15, 2007                 Respectfully submitted,

**CROWELL & MORING LLP**

By: _____*s/ Frank M. Esposito*_____
        Frank M. Esposito, Esq.    (FE2558)

153 East 53rd St.
31st Floor
New York, NY 10022
212-223-4000 (ph)
212-223-4134 (fax)

-and-

**CROWELL & MORING LLP**
David Florin, Esq.
Kathryn A. Underhill, Esq.
Margot L. Green, Esq.

1001 Pennsylvania Ave., N.W.
Washington, DC 20004
202-624-2500 (ph)
202- 628-5116 (fax)

Attorneys for Defendant Century
Indemnity Company

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 15th day of June, 2007, I caused a copy of the foregoing Memorandum Of Law In Support of Century Indemnity Company's Motion to Dismiss Or, In The Alternative, Stay This Action In Favor Of First-Filed Action to be delivered via first class mail to the following individuals:

Anthony Bartell
Steven H. Weisman
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, NY 10167-0001

Attorneys for Plaintiff
Ingersoll-Rand Company

_s/ Frank M. Esposito_
Frank M. Esposito

24