SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO.: L-37911-89

INGERSOLL-RAND COMPANY, a New
Jersey corporation,

        Plaintiff,

    v.

COMMERCIAL UNION INSURANCE
COMPANY, et al.,

        Defendants.

Civil Action

: 

: 

: 

: 

: 

---

## REPLY BRIEF OF INGERSOLL-RAND COMPANY
## IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

---

LOWENSTEIN, SANDLER, KOHL,
  FISHER & BOYLAN
A Professional Corporation
65 Livingston Avenue
Roseland, New Jersey 07068
(201) 992-8700
Attorneys for Plaintiff
  Ingersoll-Rand Company

On the Brief:

    David L. Harris, Esq.
    Karim G. Kaspar, Esq.
    Geoffrey A. Price, Esq.

Of Counsel:

    Gregory B. Reilly, Esq.
    Robert D. Chesler, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

POINT I

GEN RE'S COMPLAINTS CONCERING
THE LACK OF OPPORTUNITY FOR
DISCOVERY ARE BASELESS ............................................................................... 3

     A.      Gen Re Has Vigorously Participated
            In All Aspects Of The Defendants'
            Discovery Demands And I-R Responses Thereto ..................................................... 3

     B.      Gen Re Unreasonably Delayed In Responding
            To I-R's Notice For Coverage And Is Therefore
            Liable For Counsel Fees ......................................................................................... 6

     C.      This Court Should Appoint A Special Master To
            Resolve All Allocation Issues After It Rules On The
            Legal Issues Of I-R's Motion Which Are Essentially
            Unopposed By Gen Re .......................................................................................... 7

POINT II

GEN RE DOES NOT DISPUTE THAT UNDER
OWENS-ILLINOIS, ITS POLICY IS TRIGGERED
AND THE ALLOCATION OF ITS SHARE OF
LIABILITY TO I-R IS BASED BOTH UPON
POLICY LIMITS AND YEARS .................................................................................. 9

     A.      Gen Re Is Liable For $8 Million Indemnity .......................................................... 9

     B.      Defense Costs Are Excluded From The Ultimate Net Loss ....................................... 10

     C.      Only One $50,000 SIR Must Be Exhausted............................................................ 11

POINT III

NEW JERSEY LAW SHOULD APPLY IN THIS CASE ............................................ 12

     A.      There Is No True Conflict Of Laws Between
            New Jersey And New York With Regard To
            The Allocation And Trigger-Of-Coverage Issues .................................................... 12

     B.      Even If There Were Any Conflict Of Laws To
            Resolve, The Gen Re Policy Should Be
            Interpreted Under New Jersey Law ...................................................................... 13

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

American Assurance Co. v. Hermann's Warehouse
Corp., 117 N.J. 1 (1989) ................................................................................. 11

American Home Prods. Corp. v. Liberty Mutual Ins.
Co., 565 F. Supp. 1485 (S.D.N.Y. 1983), aff'd ........................................... 13

Continental Cas. Co. v. Rapid American Corp., 609
N.E. 2d 506 (N.Y. 1993)................................................................................. 13

Continental Ins. Co. v. Beecham, Inc., 836 F. Supp.
1027 (D.N.J. 1993) ......................................................................................... 15

Diamond Shamrock Chemical Co. v. Aetna Cas. & Sur.
Co., 258 N.J. Super. 167 (App. Div. 1992).................................................. 14

Eagle-Picher Indus. v. Liberty Mutual Ins. Co., 829
F.2d 227 (1st Cir. 1987).................................................................................. 16

Gilbert Spruance Co. v. Penna. Mfrs. Ass'n Ins.
Co., 134 N.J. 96 (1993)............................................................................. 13, 14

Lumberman v. Employers Ins. of Wausau, 84 N.J. 325
(1980)................................................................................................................. 11

NL Industries Inc. v. Commercial Union Inc. Co., et
al, No. 90-2124 (D.N.J. May 26, 1994) ........................................................ 15

Owens-Illinois v. United Ins. Co., et al., 138 N.J.
437 (1994) ................................................................................. 1, 2, 3
6, 8, 9
10, 11
12, 13

Rova Farms Resort, Inc. v. Investors Ins. Co. of
America, 65 N.J. 474 (1974) ......................................................................... 11

Sears Mortgage Corp. v. Rose, 134 N.J. 326 (1993) ....................................... 10

State Farm Mutual Automobile Ins. Co. v. Estate of
Simmons, 84 N.J. 28 (1980)........................................................................... 14

<u>Veazey v. Doremus</u>, 103 N.J. 244 (1986) ............................................................................. 12

## MISCELLANEOUS

Rule 4:42-9(a)(6) ................................................................................................................ 6

Restatement Second §6 and §193 ....................................................................................... 14

## PRELIMINARY STATEMENT

Ingersoll-Rand Company's ("I-R") moving brief filed on November 1, 1994 asked this Court to declare that a) an asbestos claimant's first alleged exposure through manifestation triggers the General Reinsurance Corporation's ("Gen Re") policy; b) Gen Re has a duty to indemnify I-R for those claims which trigger its policy up to $8 million dollars; c) Gen Re must pay the balance of defense costs and indemnity remaining less a credit for payments made by the settling carriers; d) defense costs are excluded from the ultimate net loss and do not deplete the limits for each of the eight contract periods; and e) that only one $50,000 SIR (Self-Insured Retention) has to be exhausted to trigger the Gen Re policy.

Since I-R filed its motion, the New Jersey Supreme Court's decided <u>Owens-Illinois v. United Ins. Co., et al.</u>, 138 N.J. 437 (1994), which has dramatically simplified and clarified the issues set forth in the pending motions. The Supreme Court confirmed that the continuous trigger theory applies to asbestos injury. It further determined that a fair method of allocation of multiple indemnity policies is according to both time on the risk and degree of the risk assumed.

Gen Re's opposition confuses the issues before this Court for decision by raising fact issues which under <u>Owens-Illinois</u> are to be conducted by a special master. Nearly all of Gen Re's brief is premised upon the alleged lack of discovery as it relates to allocation issues. Gen Re's position is that this Court must examine each and every one of the 37,378 underlying claims in order to make a determination as to which claims trigger Gen Re's years. Defendant's brief at 11, 12. Gen Re's argument ignores the Supreme Court ruling in <u>Owens-Illinois</u> which mandated the appointment of a master to "create a model for allocating the claims." <u>Id</u>. at 477. As demonstrated herein, there is an ample record upon which the master can make the necessary allocation after the Court establishes the necessary parameters.

It appears that Gen Re's real agenda is continued delay. I-R notified Gen Re of these claims in May, 1984 and joined Gen Re in the instant suit in 1990. Every other insurer has since settled. This case will be resolved only when Gen Re knows that it cannot delay any further

and that it has exposure of $8 million indemnity plus reimbursement of defense costs. This Court should not allow Gen Re to further delay payment of these claims.

Accordingly, in light of the <u>Owens-Illinois</u> decision, I-R amends its prayer for relief and simply asks this Court to declare that (1) Gen Re is liable for its allocated share of all asbestos claims from first alleged exposure through manifestation which trigger its years (I-R's Br. at 10);[1] (2) a) there are eight $1 million limits issued to I-R by Gen Re (I-R's Br. at 7); b) defense costs are excluded from the Gen Re "Ultimate Net Loss" and do not reduce the $1 million per contract period limit (I-R's Br. at 13); and c) only one $50,000 SIR needs to be exhausted in order to trigger each of the eight contract periods of the Gen Re policy (I-R's Br. at 15); (3) in the event this Court determines there is a conflict, New Jersey law should apply; (4) any and all issues with respect to allocation of Gen Re's share of I-R's defense and indemnity costs be referred to a Special Master; and (5) Ingersoll is entitled to an award of attorneys' fees and costs in connection with this motion and prejudgment interest on monies wrongfully withheld by Gen Re (I-R's Br. at 18). As set forth in <u>Owens-Illinois</u>, the issue of the exact quantum of damages to be allocated to Gen Re, based upon Gen Re's years and limits, and the years of exposure of each underlying claimant can be left to a special master.

---

[1]    "I-R's Br." refers to I-R's original brief filed on November 1, 1994.

<u>POINT I</u>

### GEN RE'S COMPLAINTS CONCERNING THE LACK OF OPPORTUNITY FOR DISCOVERY ARE BASELESS

In its opposition, Gen Re asserts that I-R's motion for summary judgment must be denied for two reasons: 1) the record is devoid of facts necessary to resolve this matter; and 2) the Appellate Division's holdings in <u>Owens-Illinois</u>, upon which Ingersoll relied, have been reversed. (Defendant's brief at 16.) The first point is factually wrong and contradicted by the record; Gen Re's second point is legally irrelevant since <u>Owens-Illinois</u> does not relieve Gen Re of liability but rather provides a formula for allocation to Gen Re based upon limits ($1 million per contract period) and years (8 contract periods over six and one-half years).

**A.      Gen Re Has Vigorously Participated In All Aspects Of The Defendants' Discovery Demands And I-R's Responses Thereto.**

Gen Re's contention that discovery is incomplete is simply wrong and is nothing more than another delay tactic to continue to deny coverage to I-R. Gen Re has successfully delayed since it received notice of the initial asbestos suits in May, 1984. In the intervening ten and one-half years, Gen Re has done absolutely nothing. All other parties to this action have since settled while decisions on I-R's summary judgment motions were pending. Yet, Gen Re incredulously claims that I-R's motion is "premature" (Defendant's brief at 2); and that "Gen Re hasn't had an opportunity to conduct discovery" (Defendant's brief at 1). It cannot be said that Gen Re is attempting to mislead the Court with such statements; rather they stand in such stark contrast to the record that they can only be regarded as pure fantasy. For example:

1.      Gen Re claims that the early Case Management Orders stayed discovery; that is correct. Case Management Orders I, II, III, IV stayed discovery after this suit was instituted until October 31, 1990. Gen Re does not inform the Court that these stays of discovery were <u>prior</u> to Gen Re filing its Answer in this action in March 1991 (Kaspar Cert., ¶3)[2]; hence,

---

[2]      All references are to the Certification of Karim G. Kaspar, Esq. filed simultaneously herewith.

3

these stays of discovery did not affect Gen Re. In fact, once Gen Re was named as a party-defendant, Case Management Order V appointed Gen Re to the Defense Steering Committee. As a member of the Defense Steering Committee, Gen Re participated in the formulation of discovery demands propounded upon I-R until discovery closed. All stays of discovery were to allow the parties an opportunity for settlement discussions. After these discussions were unsuccessful, I-R filed for summary judgment in August, 1991 against its primary carriers. All defendants then had an opportunity to conduct discovery for four months before filing their opposition in January 1992. Even though I-R's original motion was not filed against Gen Re, Gen Re actively participated in all phases of discovery. (Kaspar Cert., ¶5).

2.    Gen Re's claim in the Crooker Affidavit, that since "... September 1991, no discovery has been conducted in this matter" is equally incomprehensible. This is not posturing or advocacy - it is total fiction. Between September 1 and December 13, 1991, nine I-R personnel - risk managers, claims' assistants, product liability director, litigation analysts and corporate officers - were deposed, both in New Jersey and North Carolina. Exhibit A to the Kaspar Cert. contains the cover page and attendance sheets confirming that Mr. Crooker, or someone from his office on behalf of Gen Re, was present at each and everyone of these depositions. (Kaspar Cert., ¶6). These depositions were preceded by several days of document production at I-R's New Jersey headquarters and at its office in North Carolina from which the asbestos claims were being administered prior to I-R's settlement with its primary carriers. Gen Re's counsel, Mr. Crooker, was a lead figure on behalf of the defense steering committee in studying the files in North Carolina which contained all of the complaints and litigation summaries prepared by coordinating counsel. Expenses allocated to each claim, and other claims information, were copied and produced to defense counsel for review. (Kaspar Cert. ¶5).

3.    On April 1, 1992 during oral argument I-R's motion for summary judgment against its primary carriers before Honorable Donald W. de Cordova, Richard Crooker, stated to the Court that:

4

> Ingersoll-Rand has named Gen Re as a defendant in
> this case <u>with the benefit of the considerable
> discovery that has gone on,</u> and if Your Honor takes
> a look at the insurance policy of Gen Re, which is a
> mess...
> (emphasis added) (Kaspar Cert. at ¶7).

This admission concerning the scope of completed discovery was made in this action by Gen Re's counsel and is contrary to the entire premise upon which Gen Re bases its brief.

      4.    Gen Re claims that despite its repeated requests, I-R has not provided the following: (1) claims information; (2) damages or settlement of claims; (3) identification of I-R's products; (4) exhaustion of other policies (Defendant's brief at 13). These are allocation issues and are not before the Court for decision. Nevertheless, as set forth in the Morscher Certification submitted in support of I-R's original brief, which is ignored by Gen Re, each and every one of the 37,378 claims was reported and made available to Gen Re either directly by I-R or through its broker, Marsh & McLennan Inc. (Morscher Cert. ¶ 7-10). In response to each of these notices, no steps were taken by Gen Re to assist in I-R's defense. (Morscher Cert. ¶'s 9, 11). Moreover, as set forth above, Mr. Crooker himself had an opportunity to study, in detail, the complaints, expenses and claims information and then depose Felicia Feimster, I-R's claims administrator. With respect to product identification, the defendants deposed John Clary, I-R's product liability director, who testified as to the identity of I-R's products from which the asbestos claims arose (Kaspar Cert., Exhibit C; litigation status reports identifying I-R's products were generated by I-R's coordinating counsel, Wilson, Elser, and were forwarded to Gen Re (Morscher Cert. at ¶11). Finally, information with regard to tracking payments of defense and indemnity made by I-R's settling carriers is summarized in Morscher Cert. ¶14 and represents a full credit for all payments made by the settling carriers. Periodically, as I-R has settled major cases, such as the Mississippi cases, it has advised Gen Re of same. Gen Re has never requested more information on those settlements, although they have had the Mississippi complaints for more than four years.

      It is not surprising that Gen Re has made no citation to the discovery record regarding either its specific discovery requests, I-R's responses or any of the depositions.

Notwithstanding the baselessness of Gen Re's belated claims regarding discovery, they need not delay the legal issues before this Court for decision since they all implicate allocation issues which, under <u>Owens-Illinois</u>, are to be resolved by a special master.

**B.    Gen Re Unreasonably Delayed In Responding To I-R's
Notice For Coverage And Is Therefore Liable For Counsel Fees.**

Gen Re argues that it has no liability for the asbestos claims because: a) I-R did not report these claims for coverage; and b) Gen Re did not 'consent' to any settlements and therefore has no liability.

Despite the fact that Gen Re did not respond for more than two years, Gen Re claims that I-R's May, 1984 letter providing notice of the initial asbestos lawsuits made "no claim for coverage".  Defendant's brief at 21.  Yet, the first line of the above-referenced letter directed to Gen Re states as follows:

> The attached [9] suits are being reported to you for coverage
> under the policies listed above. [Morscher Cert., Ex. A].

The plain meaning of the above statement is apparently obvious to everyone except Gen Re; yet Gen Re did nothing in response to same. (Morscher Cert., ¶'s 6, 9).

The provision for imposition of attorneys fees for failure to provide coverage contained in <u>Owens-Illinois</u> is most appropriate here:

> Insurers whose policies are triggered by an injury during a policy
> period must respond to any claims presented to them and, if they
> deny full coverage, must initiate proceedings to determine the
> portion allocable for defense and indemnity costs.  For <u>failure to
> provide coverage, a policyholder may recover costs incurred under
> the provisions of Rule</u> 4:42-9(a)(6).  <u>Id</u>. at 479 (emphasis added).

I-R gave notice to Gen Re in May 1984, joined Gen Re in the suit in 1990, and has since settled with all carriers except Gen Re.  This is the exact situation that <u>Owens-Illinois</u> addressed in approving an award of counsel fees for an insured who must initiate proceedings against a recalcitrant carrier.  This court should impose same upon Gen Re.

6

C. **This Court Should Appoint A Special Master To Resolve All Allocation Issues After It Rules On The Legal Issues Of I-R's Motion Which Are Essentially Unopposed By Gen Re.**

Gen Re has reviewed and studied all of the underlying asbestos complaints that had been filed when Ms. Feimster was deposed in 1991. In addition, Gen Re has since received all complaints from I-R or through its broker. (Morscher Cert., ¶'s 7, 8, 10). Gen Re admits that six of the eight sample complaints annexed to I-R's moving papers trigger its policy years, but, because it did not read the complaints, erroneously concludes that of the 37,378 claims, 37,372 remain. (Defendant's brief at 12). Gen Re's calculations as to the number of complaints, and the number of complainants contained within those complaints, is clearly wrong.

I-R submitted eight sample complaints as exhibits A and B to its moving brief. Seven of those sample complaints actually alleged years of exposure that trigger all of Gen Re's policy periods. It is these seven complaints to which Gen Re apparently refers when acknowledging that six complaints trigger its policy years. I-R argued that in the eighth sample complaint, the exposure should be inferred to trigger Gen Re's years since no specific years of exposure were contained in the complaint, but the normal gestation period for asbestos-injury would allow the inference that Gen Re's years are implicated (I-R's Br. at 12).

Each complaint, however, contains a widely varying number of claimants. The sample complaints allege exposure for 5,897 plaintiffs. The breakdown is as follows:

| State | Sample Complaint | Number of Claimants | Alleged Years of Exposure |
|-------|------------------|---------------------|---------------------------|
| Mississippi | 1 | 1025 | 1940 - 1979 |
| Mississippi | 2 | 4851 | 1930 - 1990 |
| New Jersey | 3 | 3 | 1946 - 1987 |
| New Jersey | 4 | 1 | 1946 - 1986 |
| Ohio | 5 | 1 | 1933 - 1989 |
| New York | 6 | 8 | 1947 - 1985 |
| Ohio | 7 | 7 | 1942 - 1980 |
| | Total | 5896 | |

The eighth complaint was filed in Texas by one claimant but does not specifically allege an exposure period. As noted, these are just sample complaints; in addition to these complaints, Gen Re has all of the complaints. Therefore, I-R and Gen Re have all these complaints from which they can argue their respective positions on trigger and allocation before the master. That dispute can be resolved once this Court rules on Gen Re's liability. That process cannot even begin until this Court decides the scope of Gen Re's liability. The Owens-Illinois Court proposed that:

> "... we must repose a substantial measure of discretion in a master who must develop the formula that fairly reflects the risks assumed or transferred." Id. at 476.
>
> • • •
>
> "A trial court may repose a large measure of discretion in a special master to aid the court in developing a formula for allocation of the costs of defense and indemnity." Id. at 479.

Similar to the instant matter, the Owens-Illinois Court noted that while there are difficulties in managing a large number of claims, "the record is reasonably well developed on the measure of risk assumed or transferred...a rough measure [of the risk assumed or retained] is all that we can achieve in this imperfect resolution of these issues." Id. at 476, 7.

Gen Re attempts to use the complexity of the second phase under Owens-Illinois - determination of trigger and allocation - in order to prevent this Court from addressing the first phase - the legal issues as to Gen Re's liability, which are straightforward.

8

## POINT II

### GEN RE DOES NOT DISPUTE THAT UNDER OWEN-ILLINOIS, ITS POLICY IS TRIGGERED AND THE ALLOCATION OF ITS SHARE OF LIABILITY TO I-R IS BASED BOTH UPON POLICY LIMITS AND YEARS

This Court need only determine the parameters of Gen Re's coverage in order to provide a framework for the special master. The construction of three policy provisions needs to be clarified by this Court. That construction is on issues of law appropriate for this Court. Those issues are: 1) Gen Re's liability for eight policy periods totals $8 million; 2) Gen Re's duty to pay defense costs is excluded from the indemnity limits; and 3) only one $50,000 SIR applies to all claims impacting each policy contract period. Gen Re does not dispute seriously I-R's position on any of these issues.[3]

### A.    Gen Re Is Liable For $8 Million Indemnity.

Gen Re insured I-R from August 5, 1954 through January 1, 1961. For each of the eight contract periods, there is a $1 million limit for a total of $8 million in indemnity. Gen Re argues that the Appellate Division's holding on joint and several liability has been reversed; this is irrelevant to a determination by this Court that Gen Re's exposure is $8 million.

Under Owens-Illinois, a carrier's liability is not only by limits, but by years. In Gen Re's case, there were eight policy periods for which I-R paid premiums. These eight policy periods represent an identifiable percentage of years and limits in proportion to the rest of I-R's indemnity carriers. Gen Re cannot respond to or dispute the fact that I-R paid premiums for eight policy periods; therefore, Gen Re basically concedes this point.[4]

---

[3]     It is not surprising that the Gen Re policy is ambiguous and defies interpretation since on April 1, 1992, at oral argument on I-R's motion for summary judgment against its primary carriers, Gen Re's counsel characterized the policy at issue as "a mess". (Kaspar Cert., Exhibit B, p. 58 lines 4-6).

[4]     Gen Re buries its response on p. 30 of its brief.

9

### B.    Defense Costs Are Excluded From the Ultimate Net Loss.

Gen Re's obligation to pay $8 million in indemnity is defined by the "ultimate net loss" provision. That provision does not apply to defense costs which have no limit. Gen Re does not dispute this. These costs are not charged against the policy limits but are apportioned between Gen Re and I-R on the basis of ¶G, Costs (I-R's moving brief, p.14). Gen Re does not respond to I-R's argument that ¶G of the policy obligates Gen Re to reimburse defense costs; and in fact concedes that it has an obligation to reimburse I-R for defense costs "under certain circumstances" as set forth in §G of the policy (Defendant's Brief at 36).

Gen Re also argues that it cannot be liable for defense costs because it did not 'consent' and has no 'duty to defend'. The Gen Re policy, ¶F, states that Gen Re shall have "...the right and shall be given the opportunity to associate with [I-R] in the defense and control of any claim, suit or proceeding..." Indeed, Gen Re is the sole remaining non-settling carrier in the asbestos action allowing I-R and every one of its responsible carriers to resolve the asbestos claims. Notwithstanding the fact that it has had notice of the initial asbestos suits since May, 1984, Gen Re has done nothing to accept its responsibilities in the following ten years.

This type of conduct by a recalcitrant carrier like Gen Re was specifically addressed by the Supreme Court in Owens-Illinois:

> "Because the defendants refused to involve themselves in the defense of the claims as presented, they should be bound by the facts set forth in plaintiff's own records with respect to the dates of exposure and with respect to the amounts of settlements and defense costs. ... We stress that there can be no relitigation of those settled claims. Exact dates of exposure may not now be available. Available data should enable the master to grasp the generality of the underlying claims and the exposures involved. Id. at 477.

If Gen Re's misinterpretation of ¶F is taken to its logical conclusion, there is no incentive for Gen Re ever to 'consent'. New Jersey law, of course, does not countenance such conduct. Every insurance contract imposes a "duty of good faith and fair dealing". Sears Mortgage Corp. v. Rose, 134 N.J. 326, 347 (1993). The "fundamental notion that the insurer

acts as a fiduciary for the insured and must in good faith be responsive to the insured's interests was recognized over a decade ago in <u>Lumberman v. Employers Ins. of Wausau</u>, 84 N.J. 325, 336 (1980). <u>See</u> <u>e.g.</u> <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of America</u>, 65 N.J. 474, 492 (1974) (recognizing a "duty to exercise good faith in settling claims"): <u>American Assurance Co.</u> <u>v. Hermann's Warehouse Corp.</u>, 117 N.J. 1, 7 (1989) ("[t]he good-faith obligation is not limited to [settling claims] exclusively. The nature of the relationship is such as to require an insurer to exercise good faith in its dealings with the insured, particularly when the insured's money or other interests...may be at risk").

Clearly, Gen Re's refusal to respond in any meaningful way to the information it has received on the asbestos claims constitutes a manifest breach of its duty of good faith and fair dealing. Accordingly, this Court must order that the defense costs are excluded from the ultimate net loss and Gen Re must reimburse I-R for same.

### C.   Only One $50,000 SIR Must Be Exhausted.

Gen Re has not even attempted to refute I-R's argument that only one $50,000 SIR (Self-Insured Retention) needs to be exhausted to trigger each of the eight contract periods of the Gen Re policy. <u>Owens-Illinois</u> did not disturb the Appellate Division's ruling that the SIR was to be applied on an "occurrence" basis; that is, since the manufacture and sale of asbestos constitute a single occurrence, only one $50,000 SIR needs to be exhausted to trigger each of the multiple contract periods under the Gen Re policy. Gen Re attempts to respond but realizes that its position is contrary to <u>Owens-Illinois</u> so it buries its argument in a footnote (Defendant's brief, p. 30, n. 8).

While the <u>Owens-Illinois</u> Court did not address the issue of the relationships between primary and excess carriers as it relates to allocation, it is irrelevant in the instant case since the Gen Re policy is excess to a $50,000 SIR. For purposes of allocation, Gen Re is in an identical position to I-R's primary carriers.

11

## POINT III

## NEW JERSEY LAW SHOULD APPLY IN THIS CASE

Gen Re erroneously argues that "in the event of a conflict of laws" between New Jersey and New York in this action, the Gen Re policy must be interpreted under New York law. (Defendant's Brief at 6-10). Gen Re's argument must fail for two reasons. To begin with, there is no true conflict of laws between New Jersey and New York on the allocation and trigger-of-coverage issues and Gen Re does not attempt to identify any such conflict.

Further, even if a conflict existed, New Jersey choice of law principles require the application of New Jersey law. Against I-R's many substantial and historic ties to New Jersey, discussed infra, Gen Re argues for the application of New York law because I-R's corporate headquarters were located in New York prior to 1972 and its insurance broker was also located there. According to Gen Re, these are the only contacts New York may have to this litigation. Any application of the "dominant significant relationship" analysis overwhelmingly weighs in favor of the application of New Jersey law to this litigation.

### A.    There Is No True Conflict Of Laws Between New Jersey And New York With Regard To The Allocation And Trigger-Of-Coverage Issues.

Before any choice of law analysis can be undertaken, the first task of this Court is to determine whether any conflict of laws actually exists between New Jersey and New York on an issue by issue basis. See Veazey v. Doremus, 103 N.J. 244, 248 (1986). As Gen Re concedes at pps. 15-16, n. 3 of its brief and as the many pages Gen Re devotes to the Owens-Illinois decision demonstrate, both New Jersey and New York require a reasonable allocation of indemnity and defense costs on a pro-rated basis across multiple triggered years. Under New York law, the allocation is to be made on the basis of years on the risk. In Owens-Illinois, the Court adopted an allocation formula based both on policy limits and by

12

years on the risk which authorizes the appointment of a special master and thus specifically relieves this Court of the obligation of determining each carriers' share of the liability. Nothing in the New York case authorities, however, prohibits this Court from referring this matter to a special master for the purposes of determining a fair allocation.

Moreover, Gen Re's reliance upon a federal court decision adopting the injury-in-fact trigger, American Home Prods. Corp. v. Liberty Mutual Ins. Co., 565 F. Supp. 1485 (S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984), as representing New York law on the trigger-of-coverage issue is wholly misplaced. In Continental Cas. Co. v. Rapid American Corp., 609 N.E. 2d 506 (N.Y. 1993), the New York Court of Appeals in an opinion decided six years after American Home Products left the trigger-of-coverage issue unresolved, noting that "[n]o New York appellate court has determined the issue." Id. at 511. The Court further observed that the occurrence provision is ambiguous and the courts have adopted multiple trigger tests. Id.

Finally, the Supreme Court in Owens-Illinois adopted Judge Keefe's finding that the "injury-in-fact" in asbestos cases is from first exposure through manifestation of disease. Owens-Illinois, 138 N.J. at 445, 456. Thus, even if New York were ultimately to adopt an injury-in-fact trigger, application of such a trigger would still result in coverage under the Gen Re policy.

Since there is no true conflict between the laws of New Jersey and New York on either the allocation or trigger-of-coverage issues, this Court should apply the law of New Jersey.

**B.    Even If There Were Any Conflict Of Laws To Resolve, The Gen Re Policy Should Be Interpreted Under New Jersey Law.**

Gen Re's position that the "law of the place of contract" governs this Court's choice of law inquiry stands on its head the New Jersey Supreme Court's decision in Gilbert Spruance Co. v. Penna. Mfrs. Ass'n Ins. Co., 134 N.J. 96 (1993), which is controlling in

casualty insurance choice of law disputes. In the <u>Gilbert Spruance</u> decision, which Gen Re has failed to cite, the Court pointed out that it had "rejected the mechanical and inflexible *lex loci contractus* rule" fifteen years ago in the very case on which Gen Re relies, <u>State Farm Mutual Automobile Ins. Co. v. Estate of Simmons</u>, 84 N.J. 28, 36-37 (1980). 134 N.J. at 102. Gen Re's reliance upon <u>Diamond Shamrock Chemical Co. v. Aetna Cas. & Sur. Co.</u>, 258 N.J. Super. 167 (App. Div. 1992), certif. denied, 134 N.J. 481 (1993), is also misplaced. To the extent the <u>Diamond Shamrock</u> opinion relies upon <u>State Farm</u> it is not good law because the Court in <u>Gilbert Spruance</u> specifically rejected the choice of law analysis in <u>State Farm</u>.

Having already rejected the approach urged by Gen Re, the Court in <u>Gilbert Spruance</u> devised a new choice of law rule in insurance coverage disputes that requires courts to initially focus on §193 of the *Restatement (Second) of Conflict of Laws*, which states that the law of the state that the parties understood would be the principal location of the risk governs the insurance contract, unless some other state has a more significant interest under § 6 of the *Restatement*. <u>Id</u> at 112. The Court recognized, however, that where (as in this case) the insured "operation or activity is predictably multi-state," the location of the risk has little significance. <u>Id</u>. In those situations, "the governing law is that of the state with the dominant significant relationship according to the principles set forth in *Restatement* section 6." <u>Id</u>.

Applying the factors set forth in § 6 of the *Restatement*, it is plainly apparent that New Jersey has the dominant significant relationship to this litigation. I-R's operations are worldwide and its insured risks located in many states and foreign countries. I-R has been a New Jersey corporation since 1905, and as such, has been a continuous citizen of New Jersey. I-R opened its Phillipsburg, New Jersey facility in 1902, and that facility has been in constant operation since that time. The Phillipsburg facility is a major source of the I-R pumps which have given rise to the asbestos bodily injury claims.[5] <u>See</u> also deposition testimony of Coleen Walsh[6] and Carl Horten.[7] I-R also had a research facility in Princeton

---

[5]    Certification of John Clary, Exhibit C to Kaspar Cert.
[6]    See Walsh transcript, 8-9-91, p. 158, Exhibit D to Kaspar Cert.

from 1964 to 1986, along with other operations in New Jersey. I-R moved its corporate headquarters to Woodcliff Lake, New Jersey in 1972.

In Continental Ins. Co. v. Beecham, Inc., 836 F. Supp. 1027 (D.N.J. 1993), the district court wrestled with the choice of law issues created by insurance policies covering risks in many states. The court in Beecham was faced with the problem whether Pennsylvania or New Jersey law should apply where a facility formerly owned by a New Jersey insured had caused contamination of a site in Pennsylvania. Id. at 1029-30. Applying the interest analysis, the court concluded that New Jersey's contacts with the transaction, its body of insurance law and its strong public policy of "protecting its insured citizens in insurance contract interpretation," made it evident that New Jersey law had to be applied. Id. at 1041. Specifically, the court pointed out:

> *The heart of this dispute is the insurance contracts, which have the most significant contacts with New Jersey.* In turn, New Jersey has a strong policy of protecting its insured citizens in insurance contract interpretation. Where the contacts and interests of one state so starkly rise above all other contacts and interests, the choice of law is evident: New Jersey law must be applied. Id.

See also NL Industries Inc. v. Commercial Union Inc. Co., et al, No. 90-2124 (D.N.J. May 26, 1994) (reported in Mealey's Lit. Rep. - Ins. , Vol. 8, No. 33, July 5, 1994) (Kaspar Cert., Exhibit F) (district court, recognizing that the Magistrate had chosen New Jersey law based on "the number of environmental claims in the companion action arising in New Jersey, the need for uniformity in both suits, [and] the fact that NL [the insured] is based in New Jersey," affirmed that New Jersey has the dominant relationship to the transaction and parties).

Products manufactured principally at I-R's flagship facility in Phillipsburg, New Jersey have allegedly caused injury nationwide.[8] In light of I-R's long ties and deep roots in

---

[7]      See Horten transcript. pp. 32-33, Exhibit E to Kaspar Cert.

[8]      It has been recognized that "[w]hether [the insured manufacturer] is entitled to reimbursement, and to what extent, for the many millions of dollars in claims paid as a result of injuries caused by its products is of

this state, it is the only jurisdiction that has a substantial interest in this litigation, and accordingly New Jersey's law should apply.

---

major concern to the state in which the business is domiciled." Eagle-Picher Indus. v. Liberty Mutual Ins. Co., 829 F.2d 227, 248 (1st Cir. 1987).

## CONCLUSION

For all the foregoing reasons, this Court should deny Gen Re's cross-motion and grant Ingersoll-Rand's cross-motion for summary judgment against Gen Re in its entirety.

LOWENSTEIN, SANDLER, KOHL,
  FISHER & BOYLAN
A Professional Corporation
65 Livingston Avenue
Roseland, New Jersey  07068
(201) 992-8700
Attorneys for Plaintiff
  Ingersoll-Rand Company

David L. Harris

Dated:    March 6, 1995

17