UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INGERSOLL-RAND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CENTURY INDEMNITY COMPANY (as successor to CCI Insurance Company, successor to Insurance Company of North America),<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:      Case No.  06-CV-6476 (LTS)(THK) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY OR DISMISS THIS COERCIVE ACTION**

**McCARTER & ENGLISH, LLP**
245 Park Avenue
New York, New York  10167
(212) 609-6800
Attorneys for Plaintiff

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

      A.    Ingersoll Rand's Asbestos Liabilities ..........................................................2

      B.    Century's Insurance Policies.......................................................................2

      C.    The Parties' Unsuccessful Settlement Discussions.....................................4

      D.    This Coercive Action And Century's New Jersey Declaratory
           Judgment Action .......................................................................................5

ARGUMENT

POINT I

BECAUSE NEW YORK LAW, AND NOT NEW JERSEY LAW, APPLIES TO THIS
COERCIVE ACTION, THE COURT SHOULD DENY CENTURY'S MOTION TO
DISMISS OR STAY ...................................................................................................7

      A.    The *Brillhart/Wilton* Doctrine Cannot Apply Because This
           Coercive Action Seeks More Than Declaratory Relief ...............................7

      B.    Even If The *Brillhart/Wilton* Doctrine Somehow Applies, The
           Court Should Permit This Coercive Action To Proceed To
           Resolution .................................................................................................9

           1.    New York Possesses The Paramount Interest In This Coverage
                 Dispute...........................................................................................9

           2.    New York Law Applies To This Coverage Dispute......................11

      C.    Century Fails to Show Any Exceptional Circumstances Warranting
           Dismissal of This Coercive Action............................................................14

           1.    This Action Involves No Issue Of Jurisdiction Over Property......15

           2.    This Action Provides A Convenient Forum For Resolving This
                  Dispute .........................................................................................15

           3.    This Action Eliminates The Threat Of Piecemeal Litigation ........16

           4.    The New Jersey Action Has Progressed No Further Than This
                  Action...........................................................................................16

5.  New York Law, Not New Jersey Law, Supplies The Rule of Decision ..................................................................................16

6.  The New Jersey Action Inadequately Will Protect Ingersoll Rand's Right To A Federal Forum............................................................17

POINT II

THE FIRST-FILED FACTOR CANNOT APPLY BECAUSE CENTURY FILED ITS COMPETING ACTION IN STATE COURT .................................................17

A.  Even if the First Filed Factor Applies, This Coercive Action Constitutes The Legitimate First-Filed Case ............................................19

POINT III

CENTURY DOES NOT, BECAUSE IT CANNOT, SATISFY ITS HEAVY BURDEN OF PROVING *FORUM NON CONVENIENS* REQUIRES DISMISSAL OF THIS ACTION ..............................................................................................22

A.  New York Possesses A Greater Interest Than New Jersey In Resolving This Coverage Dispute ............................................................23

B.  The Private Interest Factors Favor A New York Forum............................24

CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abercrombie v. Andrew College*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ............................8

*Alpine Group, Inc. v. Johnson*, 2002 WL 10495 (S.D.N.Y. Jan. 3, 2002) ........................17

*American Guaranty & Liability Insurance Co. v. Anco Insulations, Inc.*, 408 F.3d
        248 (5th Cir. 2005)........................................................................................................7

*Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325 (2d Cir.
        1986) ...............................................................................................................14, 16, 17

*BFI Waste System of N. America, Inc. v. Travelers Casualty & Surety Co.*, 1999
        WL. 813879 (D.N.H. Oct. 6, 1999) ............................................................................8

*Black Sea Investment Ltd. v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. 2000)...........7

*Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942)...................................7

*Capital Records, Inc. v. Optical Recording  Corp.*, 810 F. Supp. 1350 (S.D.N.Y.
        1992) .....................................................................................................................17, 19

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)............14

*Columbia Pictures Industrial, Inc. v. Schneider*, 45 F. Supp. 742 (S.D.N.Y. 1977).........22

*Continental Insurance Cos. v. Wickes Cos.*, 1991 WL 183771 (S.D.N.Y. Sept. 6,
        1991) ...........................................................................................................................20

*Federal Insurance v. Maersk*, 1993 WL 246133 (S.D.N.Y. July 1, 1993)........................16

*Federal Insurance Co. v. May Department Stores Co.*, 808 F. Supp. 347
        (S.D.N.Y. 1992).........................................................................................................20

*Great America Insurance Co. v. Houston General Insurance Co.*, 735 F. Supp.
        581 (S.D.N.Y. 1990) ...................................................................................................20

*Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976).....................................................20

*Heritage Capital Corp. v. Bedford Comp. Corp.*, 1992 WL 196787 (S.D.N.Y.
        July 31, 1992)..............................................................................................................18

*Hutchinson Group, Ltd. v. American International Specialty Lines Insurance Co.*,
        2006 WL 1580252 (W.D. Pa. Jun. 5, 2006) ................................................................7

MEI 6558525v.1

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) .......................................23, 25

*Kytel Inter. Group, Inc. v. Rent-A-Center, Inc.*, 43 Fed.Appx. 420, 422............................18

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1991) ...............................................22

*Mackey v. Durham*, 2000 WL 1191105 (S.D.N.Y. Aug. 22, 2000) ...................................19

*Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983) ............20

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460
        U.S. 1 (1983).......................................................................................................16

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004)..............................................12

*National Union Fire Insurance Co. of Pittsburgh, PA v. Warrantech Corp.*, 2001
        WL 194903 (S.D.N.Y. Feb. 27, 2001)................................................................8

*NL Industrial, Inc. v. Commercial Union Insurance Co.*, 65 F.3d 314 (3d Cir.
        1995) ..............................................................................................................11, 12

*Okasa v. Hyppolite*, 1992 WL 35931 (S.D.N.Y. Feb. 19, 1992) .......................................16

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y.
        1995) ....................................................................................................................19

*Quality King Distributors, Inc. v. KMS Research Inc.*, 946 F. Supp. 233
        (E.D.N.Y. 1996)...................................................................................................18

*R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164 (S.D.N.Y. 1991)..............22

*Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462 (S.D.N.Y. 2001)............................17, 18

*Reliance Insurance Co. v. Six Star, Inc.*, 155 F.Supp.2d 49 (S.D.N.Y. 2001) ..................21

*Reliance Insurance Co. of Ill. v. Multi-Financial Sec. Corp.*, 1996 WL 61763
        (S.D.N.Y. Feb. 13, 1996) ....................................................................................8

*Robeson v. Howard University*, 2002 WL 122913 (S.D.N.Y. Jan. 20, 2002) ...................22

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) .......................................................22

*Snodgrass v. Provident Life and Accident Insurance Co.*, 147 F.3d 1163 (9th Cir.
        1998) ....................................................................................................................7

ME1 6558525v.1

*State Farm Fire & Casualty Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988)...........19-21

*Strategic Value Master Fund, Ltd. v. Cargill Finance Services Corp.*, 421 F.
Supp. 2d 741 (S.D.N.Y. 2006)..................................................................................23

*The Centennial Life Insurance Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996).....................20

*Travelers Indemnity Co. v. Philips Electrics N. Amer. Corp.*, 2004 WL 193564
(S.D.N.Y. Feb. 3, 2004).............................................................................................8

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999)..............................7-8, 14-16

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)............................................................7, 9

## STATE CASES

*Appalachian Insurance Co. v. General Electric Co.*, 831 N.Y.S.2d 742 (N.Y.
2007)............................................................................................................................13

*Borg-Warner Corp. v. Insurance Co. of N. America*, 577 N.Y.S.2d 953 (N.Y.
App. Div. 1992)........................................................................................................10

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d
30 (N.Y. App. Div. 2006)........................................................................................11

*Certain Underwriters at Lloyd's London v. Hartford Acc. and Indemnity Co.*, 791
N.Y.S.2d 90 (N.Y. App. Div. 2005)........................................................................19

*Continental Insurance Co. v. Polaris Industrial Partners, L.P.*, 606 N.Y.S.2d 164
(N.Y. App. Div. 1993)..............................................................................................19

*Flintkote Co. v. American Mutual Liability Insurance Co.*, 480 N.Y.S.2d 742
(N.Y. App. Div. 1984)........................................................................................10, 19

*Lonza, Inc. v. Hartford Acc. & Indemnity Co.*, 359 N.J. Super. 333 (App. Div.
2003)..........................................................................................................................11

*Lucent Technologies GRL, LLC v. ThinkFire Serv. USA, Ltd.*, 2005 WL 2659949
(N.J. Super. Ct., Law Div., Sept. 30, 2005).............................................................13

*Sensient Colors Inc. v. Allstate Insurance Co.*, 388 N.J. Super. 374 (App. Div.
2006)..........................................................................................................................19

*State Farm Mutual Automobile Insurance Co. v. Simmons' Estate*, 84 N.J. 28
(1980)........................................................................................................................11

*Travelers Casualty and Surety Co. v. Certain Underwriters at Lloyd's*, 692
N.Y.S.2d 379 (N.Y. App. Div. 1999) ........................................................13

*Veazey v. Doremus*, 103 N.J. 244 (1986) ........................................................11

*White Light Productions, Inc. v. On the Scene Productions, Inc.*, 660 N.Y.S.2d
568 (N.Y. App. Div. 1997) ........................................................19

*Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.*, 618 N.Y.S.2d 609 (N.Y.
1994) ........................................................11

### DOCKETED CASES

*Ingersoll Rand v. Commercial Union Insurance Co., et al.*, Docket No. BER-L-
09918-90 (N.J. Super. Ct., Law Div., Nov. 16, 1995) ........................................12

### FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 45........................................................15

### MISCELLANEOUS

Moore's Federal Practice, § 107.03 ........................................................17

ME1 6558525v.1

## PRELIMINARY STATEMENT

After removing this diversity action from the state court to this federal district court, Century now contends this action belongs not in this federal district court but back in state court. Century also contends this breach of contract action belongs not in a New York court but in a New Jersey state court even though: (1) New York law applies to this dispute; (2) Ingersoll Rand, during the time it purchased Century's policies, maintained its principal place of business in New York; (3) Ingersoll Rand purchased Century's policies through the New York insurance producer formerly known as Marsh & McLennan, Inc.; (4) Ingersoll Rand litigates approximately 20% of its asbestos claims in New York, while it litigates less than 1% of its asbestos claims in New Jersey; and (5) Ingersoll Rand has incurred 24% of its asbestos-related indemnity costs in New York while it has incurred only 1% of its asbestos-related costs in New Jersey.

This Court should reject Century's procedural gamesmanship and resolve, under New York law, a dispute which will benefit primarily New York asbestos claimants. Because this Court provides an available, and the most appropriate, forum for resolving this coverage action, the Court should deny Century's stay/dismissal motion.

## STATEMENT OF FACTS

**A.     Ingersoll Rand's Asbestos Liabilities**

Ingersoll-Rand Company ("Ingersoll Rand") litigates tens of thousands of asbestos-related liability claims in New York and elsewhere, which give rise to millions of dollars in defense and indemnity costs ("Asbestos Claims"). Century Indemnity Company ("Century") has reimbursed Ingersoll Rand for only some of its asbestos-related costs under the insurance policies from which this dispute arises. The parties specifically dispute the liability limits provided by these insurance policies.

**B.     Century's Insurance Policies**

Century sold Ingersoll Rand the following multi-year excess liability policies: (1) policy number XBC 1904, issued for the periods from January 1, 1966 through January 1, 1969 ("1966 Century Policy"); and (2) policy number XBC 42188, issued for the periods from January 1, 1969 to January 1, 1972, and subsequently extended for an additional period from January 1, 1972 to February 15, 1972 ("1969 Century Policy") (together with the 1966 Century Policy, the "Century Policies"). The Century Policies provide coverage for defense and indemnity costs arising from Ingersoll Rand's Asbestos Claims. The parties, however, dispute whether the liability limits of each such Policy apply only once across the multi-year Policy period (Century's position) or whether these liability limits apply separately to each annual period (and portion thereof) of the multi-year Policy period (Ingersoll Rand's position).

The Century Policy language supports Ingersoll Rand's position by expressly applying each Policy's liability limits separately to each year of the multi-year period:

> [I]n no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000 (Ten Million Dollars) [$15,000,000] on account of any one occurrence or accident.

-2-

> There is no limit to the number of occurrences during the policy
> period for which claims may be made, except that the liability of
> the company arising out of the products hazard on account of all
> occurrences **during each policy year** shall not exceed $10,000,000
> [$15,000,000].

See Affidavit of Daniel L. Weiker ("Weiker Aff.") at Exhs. A and B (emphasis added).

Century issued Endorsement No. 3 to the 1969 Century Policy, which increased the Policy's liability limits from $10 million to $15 million effective July 10, 1969 ("Stub Endorsement One"). Id. Ingersoll Rand paid Century an additional $6,472 in premiums for this additional coverage. Stub Endorsement One, therefore, created two insurance policies during the January 1, 1969 to January 1, 1970 period; i.e., (1) one policy from January 1, 1969 to July 10, 1969, which provides $10 million in liability limits; and (2) a second policy from July 10, 1969 to January 1, 1970, which provides $15 million in liability limits.

Century subsequently issued another Endorsement, effective January 1, 1972, that extends the 1969 Century Policy from January 1, 1972 to February 15, 1972 ("Stub Endorsement Two"). Ingersoll Rand paid Century an additional $1,066 in premiums for this additional coverage. Id. Stub Endorsement Two, therefore, created a stub policy from January 1, 1972 to February 15, 1972, which provides Ingersoll Rand with an additional $15 million in liability limits for occurrences which trigger the stub policy period.

Ingersoll Rand contends the Century Policies provide total liability limits of $100 million:

- January 1, 1966 to January 1, 1967 -- $10 million;

- January 1, 1967 to January 1, 1968 -- $10 million;

- January 1, 1968 to January 1, 1969 -- $10 million;

- January 1, 1969 to July 10, 1969 -- $10 million;

- July 10, 1969 to January 1, 1970 -- $15 million;

- January 1, 1970 to January 1, 1971 -- $15 million;

- January 1, 1971 to January 1, 1972 -- $15 million; and

- January 1, 1972 to February 15, 1972 -- $15 million.

Century rejects Ingersoll Rand's position and contends its Policies provide total liability limits of only $25 million: (1) January 1, 1966 to January 1, 1969 -- $10 million; and (2) January 1, 1969 to February 15, 1972 -- $15 million. Century relies on this faulty analysis in asserting it need not reimburse Ingersoll Rand for asbestos-related defense and indemnity costs exceeding $25 million.

Ingersoll Rand, during the time it purchased the Century Policies, maintained its principal place of business in New York. *See* Weiker Aff. at ¶ 5. Ingersoll Rand, moreover, purchased the Century Policies through the New York insurance producer formerly known as Marsh & McLennan, Inc. *Id.* at ¶ 6.

**C.     The Parties' Unsuccessful Settlement Discussions**

Century and Ingersoll Rand, from 2002 through 2003, intermittently discussed settling their liability limits dispute arising from the Century Policies. *See, e.g.,* Affidavit of John Clary ("Clary Aff.") at ¶¶ 3-6 and Exh. A. These discussions involved, at different periods of time:

- William Hart (Ingersoll Rand's outside counsel), residing in New York;

- Clifford Hendler (Century's outside counsel), residing in Washington, D.C.;

- Ingrid Morscher (Ingersoll Rand's consultant), residing in New Jersey;

- Malcolm Myers (Vice President - Asbestos Issues for Resolute Management, Inc.), residing in Pennsylvania; and

- John Clary (Ingersoll Rand's former Risk Manager), residing in New Jersey.

Century alleges the parties settled their coverage disputes during a November 13, 2003 breakfast discussion at a golf course. Century further asserts it memorialized the parties' alleged settlement through a December 11, 2003 draft agreement the insurer forwarded for Ingersoll

Rand's and its counsel's review. The proposed agreement provides that New York law governs any dispute relating thereto:

> This Agreement, including any dispute regarding the applicability or scope of the arbitration clause in Paragraph 12 [sic], shall be controlled by and interpreted to [sic] the laws of the State of New York.

*See* Weisman Cert., Exhs. A and C (Complaint, Exh. A at ¶ 17). The proposed agreement also requires the parties to submit disputes to an arbitration "held in New York, New York." *Id.*, Exhs. A and C (Complaint, Exh. A at ¶ 10).

Ingersoll Rand never entered into any settlement with Century and it repeatedly rejected Century's settlement proposal. *See, e.g.*, Clary Aff. at ¶ 7. Ingersoll Rand most recently rejected Century's proposal at a July 17, 2006 dinner in New York among an insurer representative and several Ingersoll Rand employees. *See* Weiker Aff. at ¶ 12. Century acknowledged Ingersoll Rand's settlement position and concluded the discussion by stating it hoped the parties could resolve their dispute. *Id.* Only two days later, however, Century preemptively and prematurely filed its New Jersey declaratory judgment action.

**D.    This Coercive Action And Century's New Jersey Declaratory Judgment Action**

Century initially filed its New Jersey action on July 19, 2006, before Century paid its Policies' minimum $25 million liability limits toward the Asbestos Claims. *See* Weisman Cert., Exh. A; Weiker Aff. at ¶ 13. Century served its Complaint on Ingersoll Rand on July 27, 2006. *Id.* at Exh. B. Century seeks a declaratory judgment that: (1) it and Ingersoll Rand entered into a binding settlement agreement; and, alternatively, (2) the Century Policies provide total liability limits of only $25 million. *Id.* at Exhs. A and C.

On August 8, 2006, only twelve days after receiving Century's Complaint, Ingersoll Rand initially filed this coercive action against Century in the New York Supreme Court

("Coercive Action").  *Id.* at Exh. D.  Ingersoll Rand served its Complaint on Century on August 9, 2006.  *Id.* at Exh. E.  Ingersoll Rand seeks damages arising from Century's refusal to pay asbestos-related costs exceeding $25 million.

The parties, on December 18, 2006, dismissed their respective actions, without prejudice, to mediate their coverage disputes.  The mediation proved unsuccessful, and the parties refiled and re-served their respective actions consistent with the time line of the initial actions:

- Century filed the New Jersey action on April 27, 2007;
- Century served its Complaint on May 7, 2007;
- Ingersoll Rand filed this Coercive Action on May 17, 2007; and
- Ingersoll Rand served this Coercive Action on May 18, 2007.

*See* Weisman Cert., Exhs. A-G.  Although Century now argues this case belongs in state court rather than in federal court, Century removed the Coercive Action to this federal court on June 6, 2007.  The parties have taken no discovery in either this action or in the New Jersey declaratory judgment case.

**ARGUMENT**

**POINT I**

**BECAUSE NEW YORK LAW, AND NOT NEW JERSEY
LAW, APPLIES TO THIS COERCIVE ACTION, THE
COURT SHOULD DENY CENTURY'S MOTION TO
DISMISS OR STAY**

A.    **The *Brillhart/Wilton* Doctrine Cannot Apply Because This Coercive Action Seeks
More Than Declaratory Relief**

Century cannot legitimately contend this action belongs in state court rather than federal

court because Century itself removed this action from state court to this federal court.  The

*Brillhart/Wilton* abstention doctrine, in any event, applies only to purely declaratory judgment

actions and not to cases, like this case, that include damage claims.[1]  *See Hutchinson Group, Ltd.*

*v. American Int'l. Specialty Lines Ins. Co.*, 2006 WL 1580252 *5 (W.D. Pa. 2006) (applying

*Colorado River* doctrine instead of the *Brillhart* doctrine because the complaint seeks declaratory

judgment, breach of contract damages and bad faith damages and fees);  *American Guar. & Liab.*

*Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005) (*Brillhart* controls only if the

action seeks "purely declaratory" relief); *Black Sea Inv. Ltd. v. United Heritage Corp.*, 204 F.3d

647, 652 (5th Cir. 2000) (*Colorado River,* not *Brillhart*, controls when a party seeks both

injunctive and declaratory relief); *Village of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir.

1999) (applying *Colorado River* standard where federal action sought more than "purely

declaratory relief"); *Snodgrass v. Provident Life and Accident Ins. Co.*, 147 F.3d 1163, 1165 (9th

Cir. 1998) ("[W]hen other claims are joined with an action for declaratory relief (*e.g.*, bad faith,

breach of contract, breach of fiduciary duty, rescission or other claims for monetary relief), the

---

[1]    *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515
U.S. 277 (1995).

-7-

district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief").

Century relies on clearly inapposite cases where the plaintiff insurance companies sought only "a declaration of comparative rights and responsibilities under various liability insurance policies." *Travelers Indem. Co. v. Philips Elecs. N. Amer. Corp.*, 2004 WL 193564 at *1 (S.D.N.Y. Feb. 3, 2004); *see also National Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, 2001 WL 194903 at *2 (S.D.N.Y. Feb. 27, 2001) (insurer commenced action seeking a declaratory judgment that it possesses no obligation to insured for certain underlying litigation); *Reliance Ins. Co. of Ill. v. Multi-Financial Sec. Corp.*, 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996) (insurer filed action "seeking a declaratory judgment rescinding the [p]olicies as having been void *ab initio* due to [insured's] misrepresentations and non-disclosure of its knowledge [of a certain] Ponzi scheme").

Ingersoll Rand's Coercive Action, in contrast, seeks (in addition to declaratory relief) damages, including a money judgment, arising from Century's breach of its contractual obligations under the Century Policies. *See* Weisman Cert., Exhs. D and F at ¶¶ 53-56 and Demands for Relief. This Court applies "the more demanding *Colorado River* standard to cases that seek more than just declaratory relief." *Abercrombie v. Andrew College*, 438 F.Supp.2d 243, 260 n.18 (S.D.N.Y. 2006); *see also Westfield*, 170 F.3d at 124-25 n. 5 ("*Wilton* does not apply here. Although Welch did seek a declaration of rights . . . the federal action did not seek purely declaratory relief. Rather, the Village sought payment of the unpaid user charges against Welch."); *BFI Waste Sys. of N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 1999 WL 813879, at *3 (D.N.H. Oct. 6, 1999) ("the Second ... Circuit [ ] appl[ies] the *Colorado River* standard to decide abstention in cases with mixed claims").

**B.    Even If The *Brillhart/Wilton* Doctrine Somehow Applies, The Court Should Permit This Coercive Action To Proceed To Resolution**

The *Brillhart/Wilton* doctrine requires this Court to consider "whether the questions in controversy between the parties to the deferral suit ... can better be settled in the proceeding pending in state court." 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495). This Court can best settle this coverage dispute because New York possesses a greater interest than New Jersey in resolving Century's obligations for the Asbestos Claims.[2] New Jersey, in contrast, possesses no public policy interest in this dispute, and this dispute affects no legitimate New Jersey interest.

**1.    New York Possesses The Paramount Interest In This Coverage Dispute**

Ingersoll Rand, during the time it purchased Century's Policies, maintained its principal place of business in New York. *Id.* at ¶ 5. Ingersoll Rand, moreover, purchased the Century Policies through the New York insurance producer formerly known as Marsh & McLennan, Inc. *Id.* at ¶ 6. Century, conversely, incorporated and maintains its principal place of business in Pennsylvania.

Although Ingersoll Rand defends Asbestos Claims throughout the United States, New York handles far more of these Claims than New Jersey:

- The New York courts currently litigate more than 19,000 Asbestos Claims (*i.e.*, 20% of all Asbestos Claims); while

- The New Jersey courts currently litigate less than 300 Asbestos Claims (*i.e.*, less than 1% of all Asbestos Claims).

---

[2]    Century recognized this fact by inserting in its proposed settlement agreement: (1) a choice of law clause which requires application of New York law to any disputes thereunder; and (2) a forum selection clause requiring that any arbitration be held in New York. *See* Weisman Cert., Exhs. A and C (Complaint, Exh. A at ¶¶ 10 and 17).

*See* Weiker Aff. at ¶ 9.  A far greater percentage of Ingersoll Rand's asbestos-related costs, moreover, arise from the New York Asbestos Claims than from the New Jersey Asbestos Claims:

- New York's Asbestos Claims give rise to 24% of Ingersoll Rand's asbestos-related indemnity costs; while

- New Jersey's Asbestos Claims give rise to only 1% of Ingersoll Rand's asbestos-related indemnity costs.

*Id.* at ¶ 10.[3]

New York, in short, possesses a greater interest than New Jersey in resolving disputes over insurance dollars available to those suffering from asbestos-related injuries.  *See Borg-Warner Corp. v. Insurance Co. of N. Am.*, 577 N.Y.S.2d 953, 956 (N.Y. App. Div. 1992) (rejecting Plaintiff's argument to apply Illinois law and applying New York law to the coverage issues because, among other things, 7 of the 19 sites are in New York, with the balance of the sites scattered throughout the country); *Flintkote Co. v. American Mut. Liab. Ins. Co.*, 480 N.Y.S.2d 742 (N.Y. App. Div. 1984) (dismissing policyholder's coverage action because thousands of Flintkote's asbestos claims were pending in California and only seven in New York).[4]

---

[3]     Confidentiality concerns prevent Ingersoll Rand from setting forth the actual dollars spent on its Asbestos Claims.

[4]     Century recognizes New York's interest in insurance and breach of contract actions where it seeks reimbursement for payments made to a New York company. *See, e.g.*, Weisman Cert., Exh. I (Century breach of reinsurance contract action against Clearwater Insurance Co. for reimbursement of Century's insurance payments to Pfizer, Inc., which maintains its principal place of business in New York).  Century's payments, here, primarily will go to New York Asbestos Claimants.

### 2.    New York Law Applies To This Coverage Dispute

New York and New Jersey choice of law principles require application of New York law to this coverage dispute.[5] New York's "center of gravity" or "grouping of contacts" test requires New York courts to apply the law of the state with the "most significant relationship to the transaction and the parties." *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30 (N.Y. App. Div. 2006) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 618 N.Y.S.2d 609 (N.Y. 1994)). *Foster Wheeler* deals with coverage for asbestos-related claims, like those asserted against Ingersoll Rand, and holds that "where the insured risk is scattered throughout multiple states, courts still deem the risk to be located principally in one state, namely, in the state of the insured's domicile at the time the policy was issued." *Id.* at 36 (citation omitted).[6] The court applied New Jersey law to the coverage dispute because Foster Wheeler maintained its principal place of business in New Jersey at the time it purchased the policies. *Id.* at 36 and 39.

New Jersey courts apply the "governmental-interest" analysis to choice of law disputes. *Lonza, Inc. v. Hartford Acc. & Indem. Co.*, 359 N.J. Super. 333, 343 (App. Div. 2003) (citing *Veazey v. Doremus*, 103 N.J. 244, 247-49 (1986), and *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 36-37 (1980)). The governmental-interest analysis similarly requires New Jersey courts to apply the law of the state with the greatest interest in, or most significant contacts with, the dispute. *Id.* The place of contracting possesses the presumptive "dominant relationship" to an insurance coverage dispute. *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995).

---

[5]    Century, for this reason (among many others), cannot legitimately argue Ingersoll Rand filed the Coercive Action with forum shopping motives.

[6]    Where the insured's principal place of business and state of incorporation differ, "the state of the principal place of business takes precedence over the state of incorporation." *Id.*

The Third Circuit, in *NL Industries*, held that because the parties contracted for coverage in New York, that state possessed a greater interest than New Jersey in determining coverage for product liability actions pending in New Jersey courts. *Id.* at 322. NL Industries, like Ingersoll Rand, incorporated in New Jersey but maintained its principal place of business in New York. NL Industries, also like Ingersoll Rand, purchased the policies through a New York producer, the parties signed the policies in New York, the insurer coded the policies and premiums as New York policies and premiums, and the insurer paid premium taxes in New York. *Id.* at 329. These facts convinced the court to apply New York law to the coverage dispute. *Id.*

To understand why Ingersoll Rand filed this Coercive Action in New York, this Court and Century need look no further than to a prior New Jersey state court decision holding New York law applies to Ingersoll Rand's coverage disputes. In *Ingersoll Rand v. Commercial Union Ins. Co., et al.*, Docket No. BER-L-09918-90 (N.J. Super. Ct., Law Div., Nov. 16, 1995), the court considered New Jersey's choice of law factors and "appl[ied] New York law to the trigger-of-coverage issue" under policies negotiated, issued and delivered to Ingersoll Rand in New York when Ingersoll Rand maintained its headquarters in that state. *See* Weisman Cert. Exh. H. Nothing warrants this Court, or the New Jersey court, from reaching a contrary choice of law conclusion.

New York law also governs whether the parties somehow already settled their coverage dispute. This conclusion flows from the New York choice of law provision Century inserted into its putative settlement agreement. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004) ("a choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract") (citing *International Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996) (applying an English choice-of-law clause to an issue of contract formation)).

In *Lucent Technologies GRL, LLC v. ThinkFire Serv. USA, Ltd.*, 2005 WL 2659949 at *9 (N.J. Super. Ct., Law Div. Sept. 30, 2005), the court recognized the parties' substantial New Jersey contacts: (1) both Lucent and ThinkFire maintain a place of business in New Jersey; (2) the parties negotiated the contracts in New Jersey; (3) the parties executed the contracts in New Jersey; and (4) ThinkFire performed under the contracts in New Jersey. *Id.* at 9. The court, however, observed that the underlying arbitration, from which Lucent sought relief, took place in New York and that New York law applied to the contractual dispute. *Id.* The court, therefore, concluded "New York would have a more vested interest in hearing and deciding the case." *Id.* Similar circumstances exist here. Ingersoll Rand purchased the Century Policies when it maintained its principal place of business in New York. Ingersoll Rand litigates approximately 20% of the Asbestos Claims in New York and has incurred 24% of its asbestos-related indemnity costs in New York. See Weiker Aff. at ¶¶ 9-10. Ingersoll Rand and Century's settlement discussions took place in New York, New Jersey, Pennsylvania and Washington, D.C. *See* Clary Aff. at ¶¶ 3-6, Weiker Aff. at ¶¶ 10, 12. New York law, therefore, applies to determining whether the parties' settlement discussions somehow resulted in a settlement agreement.

This Court can better settle this dispute than can the New Jersey state court because it regularly addresses New York state law, and New York state courts regularly rely on its decisions. *See, e.g., Appalachian Ins. Co. v. General Elec. Co.*, 831 N.Y.S.2d 742, 749, n. 4 (N.Y. 2007) (New York Court of Appeals held its conclusion, in case of first impression, that exposure to asbestos constitutes multiple occurrences "is consistent with the results reached by the United States Court of Appeals for the Second Circuit when applying New York law to claims arising from asbestos exposure or contamination."); *Travelers Cas. and Sur. Co. v. Certain Underwriters at Lloyd's*, 692 N.Y.S.2d 379, 380 (N.Y. App. Div. 1999) (holding lower

court "properly looked to" a Second Circuit decision where it found a lack of controlling New York case law on the issue).  This Court, therefore, should not abstain from exercising its jurisdiction over this Coercive Action.

**C.    Century Fails to Show Any Exceptional Circumstances Warranting Dismissal of This Coercive Action**

The Second Circuit holds that:

> abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

*Westfield*, 170 F.3d. at 121 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).  Where a federal court possesses subject matter jurisdiction over a dispute, "it has a virtually unflagging obligation to exercise that jurisdiction even if an action concerning that same matter is pending in state court." *Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).

To determine whether exceptional circumstances exist to forego jurisdiction over this action, the Court must consider the following six factors, "with the balance heavily weighed in favor of the exercise of jurisdiction." *Westfield*, 170 F.3d at 124 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)):

> (1) the assumption of jurisdiction by either court over any *res* or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and

> (6) whether a state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Id.* at 121 (citing *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996)).

### 1.    This Action Involves No Issue Of Jurisdiction Over Property

Where, as here, the case involves no *in rem* action or any issue concerning jurisdiction over property, the first factor "points toward exercise of federal jurisdiction." *Id.* (citing *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (citing *Bethlehem*, 800 F.2d at 327)).

### 2.    This Action Provides A Convenient Forum For Resolving This Dispute

The overwhelming majority of evidence will come from the parties themselves. The parties easily can access Ingersoll Rand's documents and personnel whether they litigate in New York or New Jersey. Because Century's personnel and documents most likely reside in Pennsylvania, the parties can access this evidence as easily from New York as from New Jersey. *See* Weisman Cert., Exhs. I and J (Century regularly prosecutes actions in this Court).

Ingersoll Rand, moreover, voluntarily shall produce any relevant former employees for properly noticed depositions. Ingersoll Rand knows of no relevant former Century employees who reside in New Jersey and who will not cooperate and appear for depositions properly noticed through this Court. Even if such individuals exist, they fall within this Court's subpoena powers. *See* Fed. R. Civ. P. 45.

While the parties suffer no prejudice moving forward with discovery and trial in this Court, Century cannot make the same claim about litigating in New Jersey. Ingersoll Rand purchased the Century Policies through a New York insurance producer. This New York-based information source may fall outside the New Jersey state court's compulsory process. This Court, in contrast, can compel the production of information from this New York insurance producer.

-15-

This Court, in short, presents a convenient -- and, in fact, the most convenient -- forum to litigate this dispute. This factor favors the Court's retention of this action. *Westfield*, 170 F.3d at 122 (citing *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995)); *see also Federal Ins. v. Maersk*, 1993 WL 246133 (S.D.N.Y. July 1, 1993) (denying motion for *forum non conveniens* transfer because defendant failed to suggest why litigating on one side of the Hudson River would prove more "vexatious" or "oppressive" than the other); *Okasa v. Hyppolite*, 1992 WL 35931 (S.D.N.Y. Feb. 19, 1992) (denying *forum non conveniens* motion, noting the District of New Jersey is in the same metropolitan area as this district court).

### 3.      This Action Eliminates The Threat Of Piecemeal Litigation

This Coercive Action involves all the issues asserted in Century's declaratory judgment action. This Coercive Action also includes Ingersoll Rand's breach of contract claim, which seeks a money judgment for all unreimbursed indemnity and defense costs incurred by Ingersoll Rand. *See* Weisman Cert., Exhs. D and F at ¶¶ 63-65. This Coercive Action, therefore, will result in no piecemeal litigation.

### 4.      The New Jersey Action Has Progressed No Further Than This Action

This factor examines "how much progress has been made in the . . . actions." *Moses*, 460 U.S. at 3. The parties have taken no discovery in this action or in the New Jersey action.[7] Each court faces only a motion to dismiss or stay the plaintiff's complaint. The New Jersey action, therefore, has proceeded no further toward resolution than this Coercive Action.

### 5.      New York Law, Not New Jersey Law, Supplies The Rule of Decision

This Court should surrender its federal jurisdiction only in those "rare circumstances" where another court can better handle novel issues of state law. *Bethlehem*, 800 F.2d at 328

---

[7]      Although Century states it served discovery on Ingersoll Rand in its New Jersey action, Ingersoll Rand has received no such discovery.

(citations omitted). This action involves no novel issues of New Jersey state law and, in fact, involves no New Jersey state law issues whatsoever. New York state law issues, not New Jersey state law issues, apply here. *See supra* at pp. 11-13. This Court, therefore, can best adjudicate this action. *See supra* at pp. 13-14.

6.    **The New Jersey Action Inadequately Will Protect Ingersoll Rand's Right To A Federal Forum**

"[T]he possibility that the [New Jersey] proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." *Bethlehem*, 800 F.2d at 328. By removing this Coercive Action, Century invoked federal jurisdiction "designed to provide defendants with a federal forum to **litigate** ... state claims with diverse parties." Moore's Fed. Prac. 3d, § 107.03 (emphasis added). Century, however, removed this action not "to litigate" the parties' coverage dispute but apparently to secure a more favorable audience for its stay/dismissal arguments through a manufactured (and flawed) *Brillhart/Wilton* scenario. Century's conduct constitutes a blatant misuse of the removal doctrine and should go unrewarded.

Century, in short, cannot demonstrate exceptional circumstances sufficient to overcome the heavy presumption favoring exercise of jurisdiction. This Court, therefore, should retain its jurisdiction invoked by Century's removal.

## POINT II

### THE FIRST-FILED FACTOR CANNOT APPLY BECAUSE CENTURY FILED ITS COMPETING ACTION IN STATE COURT

The "first-filed" factor applies only to competing federal court actions. *Alpine Group, Inc. v. Johnson*, 2002 WL 10495, *4 (S.D.N.Y. Jan. 3, 2002) (refusing to apply the "first to file" factor because "only one of the two actions is a federal action."); *Radioactive, J.V. v. Manson*,

153 F.Supp.2d 462, 473 (S.D.N.Y. 2001) ("the first-to-file doctrine applies to concurrent federal

litigation-not concurrent state/federal litigation"); *Capital Records, Inc. v. Optical Recording

Corp.*, 810 F.Supp. 1350, 1353 (S.D.N.Y. 1992) (same); *Heritage Capital Corp. v. Bedford

Comp. Corp.*, 1992 WL 196787, *6 (S.D.N.Y. July 31, 1992) (refusing to invoke "first to file"

factor because "the first action was brought in the Superior Court of New Hampshire").[8]

    The Second Circuit recently held that in determining whether to dismiss or stay in favor

of a competing state court action, the district court must consider *Colorado River* abstention

rather than the "first filed" factor:

> The first filed rule, a change of venue principle, permits the
> transfer or dismissal of subsequently commenced litigation
> involving the same parties and the same issues when both suits are
> pending in federal courts. Because the Texas action is in state
> court, it was error for the District Court to dismiss on the basis of
> the first filed rule. . . . The only grounds for a federal court to
> refrain from exercising its jurisdiction in favor of a pending state
> proceeding in the situation presented in this case would be for
> reasons of "wise judicial administration" under *Colorado River*.

*Kytel Inter. Group, Inc. v. Rent-A-Center, Inc.*, 43 Fed.Appx. 420, 422 (2d Cir. Aug. 5, 2002)

(citations omitted); *see also Radioactive*, 153 F.Supp.2d at 474 ("The Supreme Court [in

*Colorado River*] has delineated a standard by which federal courts can determine whether to

defer to parallel state actions."). Because this Court considers competing actions pending in

federal court and state court, the first filed factor cannot apply.

---

[8]    Century cites to only one case dealing with other than competing federal actions. In
*Quality King Distributors, Inc. v. KMS Research Inc.*, 946 F.Supp. 233 (E.D.N.Y. 1996), the
court applies the first filed factor "where an action is brought in one federal court and a later
action is brought in another federal court or state court...." *Id.* at 237. *Quality King* cannot
apply here because Century filed its action in state court.

A.    **Even if the First Filed Factor Applies, This Coercive Action Constitutes The
      Legitimate First-Filed Case**

Century filed the New Jersey action only two days after the parties' July 17, 2006 dinner

meeting, clearly anticipating Ingersoll Rand would file this lawsuit. Ingersoll Rand filed this

action only twelve days after receiving Century's Complaint. This short gap renders the "first-

filed" factor irrelevant to this Court's stay/dismissal analysis. *See Mackey v. Durham,* 2000 WL

1191105, *2 (S.D.N.Y. Aug. 22, 2000) ("Courts in this district have shown 'little regard to dates

of filing' when actions are brought within days of one another."); *Ontel Prods., Inc. v. Project*

*Strategies Corp.,* 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995) ("even where a significant difference

in timing of the suits' filings exist, 'temporal precedence is but a factor to consider and is not

controlling'") (citation omitted); *Capital Records, supra* (allowing second action to proceed

where only "twenty days elapsed between the filing of the two complaints and no discovery or

other pretrial proceedings has occurred in either forum at that time").[9]

---

[9]     New Jersey and New York state courts similarly eschew mechanical application of the
first filed factor when determining which competing jurisdiction should adjudicate an action.
*See, e.g., Sensient Colors Inc. v. Allstate Ins. Co.,* 388 N.J. Super. 374, 383 & 389 (App. Div.
2006) (denying insurer's motion to dismiss or stay policyholder's second filed New Jersey
insurance coverage action in favor of the insurer's first filed New York action because the
polluted site resides in New Jersey, New Jersey law applies to the action, and such relief might
well "thwart the public policy of New Jersey in protecting its environment, regulatory process
and policyholders and frustrate its interest in insuring adequate financial resources to remediate
its toxic waste sites and compensate its pollution victims"); *White Light Productions, Inc. v. On*
*the Scene Productions, Inc.,* 660 N.Y.S.2d 568, 575 (N.Y. App. Div. 1997) ("Defendants should
not be rewarded for their precipitous filing, approximately a week after learning of plaintiffs'
intention to bring an action, placing venue in a distant forum"); *Continental Ins. Co. v. Polaris*
*Indus. Partners, L.P.,* 606 N.Y.S.2d 164 (N.Y. App. Div. 1993) (affirming trial court's decision
to dismiss insurer's first filed New York action in favor of policyholder's later Minnesota action
"commenced reasonably close in time"); *Flintkote Co. v. American Mut. Liab. Ins. Co.,* 480
N.Y.S.2d 742 (N.Y. App. Div. 1984) (dismissing insurer's first filed New York asbestos
coverage action in favor of policyholder's California action filed 11 days later, because the bulk
of the underlying asbestos actions were pending in California and California law was likely to
apply). *Accord Certain Underwriters at Lloyd's London v. Hartford Acc. and Indem. Co.,* 791
N.Y.S.2d 90 (N.Y. App. Div. 2005).

"The party asserting a right against an insurance company is normally the one having the privilege of choosing the forum." 6A Moore's Federal Practice ¶ 57.19, at 57-208 (2d ed. 1993). This principle effectuates an injured party's "traditional" and "legitimate interests" in choosing the forum in which to recover its losses. *See State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 430 (M.D.N.C. 1988). Where the injured party (here the policyholder) neither fails to bring, nor delays in bringing, its coercive action, the non-injured party cannot choose the forum for litigation. *See, e.g., Federal Ins. Co. v. May Dept. Stores Co.*, 808 F.Supp. 347, 351 (S.D.N.Y. 1992) ("By bringing an anticipatory declaratory judgment action, [insurer] initially deprived [insured] of its choice of forum"); *Continental Ins. Cos. v. Wickes Cos.*, 1991 WL 183771, *5 (S.D.N.Y. Sept. 6, 1991) ("By anticipating the possible filing of a suit by [the policyholder], [the insurance company] reversed the usual roles of plaintiff and defendant and deprived [the policyholder], the putative injured party, of its chance to have this dispute heard in the forum of its choice.").

A non-injured party, like Century, cannot file a declaratory judgment action "to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action." *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F.Supp. 581, 586 (S.D.N.Y. 1990). Such conduct "militates in favor of dismissing the declaratory judgment action." *Id.* The federal courts hold a non-injured party cannot use the declaratory judgment procedure to test its defenses to the injured party's anticipated coercive action. "The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 429-30 (M.D.N.C. 1988) (citing *Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976)); *see also The Centennial Life Ins. Co. v. Poston*,

88 F.3d 255 (4th Cir. 1996) (dismissing insurer's first-filed action, refusing "to place undue significance on the race to the courthouse door, particularly in this instance where Centennial had constructive notice of the Postons' intent to sue"); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) ("there really can be no dispute that [insurer] expected [insured] to file suit if its claim was denied, and this suit was in anticipation of that expected action"). A court, therefore, must "consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is merely anticipatory of a parallel state action." *Taylor*, 118 F.R.D. at 430.

Century acted inequitably when, anticipating Ingersoll Rand's Coercive Action, it initially filed this lawsuit a mere two days after the parties' July 17, 2006 dinner meeting (at which Century expressed its alleged hope the parties could settle amicably their dispute). Century, at that time, had been paying Ingersoll Rand's asbestos-related costs and had not yet exhausted the Policies' minimum $25 million liability limits. *See* Weiker Aff., at ¶ 13. Nothing, therefore, required Ingersoll Rand to file an action against Century at that point. Century, however, knew that once it refused to pay asbestos-related costs above approximately $25 million, Ingersoll Rand would take steps to secure its remaining $75 million in coverage under the Century Policies. Century, therefore, inappropriately filed the New Jersey Action to secure its desired forum.[10]

Century cannot feign injured party status simply because it seeks to enforce the alleged settlement. Century allegedly agreed to provide Ingersoll Rand with $37.5 million in liability limits but filed its New Jersey declaratory judgment action when it had paid less than $25 million

---

[10]     The first filed factor also cannot apply because the balance of conveniences exception to that factor tilts in Ingersoll Rand's favor. *See, e.g., Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp.2d 49, 55-56 (S.D.N.Y. 2001) (stating that courts may depart from the "first-filed" rule if the balance of conveniences warrants). *See also supra* at pp. 14-17 and at pp. 22-25.

toward the Asbestos Claims.[11]  Century, furthermore, represented to Ingersoll Rand it would continue their settlement discussions.  Century cannot exploit the first filed factor by lulling Ingersoll Rand into thinking the parties would explore an amicable resolution of their dispute. *See Robeson v. Howard Univ.*, 2002 WL 122913, *3 (S.D.N.Y. Jan. 20, 2002) ("One 'special circumstance,' which may override the first-to-file rule, exists when the parties intend to continue settlement discussions.  A party may not exploit the first-to-file rule by expressing a willingness to negotiate in order to delay his adversary's filing and, thereby win the 'race to the courthouse.'"); *see also Columbia Pictures Indus., Inc. v. Schneider*, 45 F.Supp. 742, 751 (S.D.N.Y. 1977) (finding departure from the first filed doctrine warranted given the totality of the circumstances which included one party's "good faith attempts at settlement").

**POINT III**

**CENTURY DOES NOT, BECAUSE IT CANNOT, SATISFY
ITS HEAVY BURDEN OF PROVING *FORUM NON
CONVENIENS* REQUIRES DISMISSAL OF THIS ACTION**

This Court should deny Century's dismissal motion because the insurer does not, because it cannot, show "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 167 (S.D.N.Y. 1991) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991); *accord Schertenleib v. Traum*, 589 F.2d 1156, 1159-60 (2d Cir. 1978)).  Century cannot demonstrate trial in New Jersey "will be most convenient and will serve the ends of justice." *Maganlal, supra* (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)).  Even if this Court finds New Jersey a suitable

---

[11]    Century's New Jersey complaint, for this reason, seeks only declaratory relief and not damages.

-22-

alternative forum for resolving this dispute, the relevant private and public interest factors

require denial of Century's motion to dismiss on *forum non conveniens*.[12]

## A.    New York Possesses A Greater Interest Than New Jersey In Resolving This Coverage Dispute

In making *forum non conveniens* determinations, the courts consider both public and

private interest factors. The courts specifically consider the following public interest factors:

> (1) any administrative difficulties that may arise if an alternative forum is particularly congested with litigation;
>
> (2) the consideration that jurors should not be obligated to decide disputes with no relation to their community;
>
> (3) the fact that where a case affects many people, a forum that allows those affected to view the suit, rather than learn of it by report from a foreign forum, is preferable;
>
> (4) the forum's local interest in having its own controversies decided at home; and
>
> (5) the potential pitfalls that stem from a diversity case being heard in a foreign forum that must resolve conflicts of law and substantive law problems, rather than a forum familiar with the state law to be applied to the case."

*Strategic Value*, 421 F.Supp.2d at 757-58 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09

(1947) and *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001)).

New York law applies to this case. This Court, on a daily basis, interprets and applies

New York law. New York state courts, in fact, regularly refer to Second Circuit decisions

applying New York law on complex insurance coverage issues. *See supra* at p. 13. A New

---

[12]     Although Century argues "the Second Circuit have [sic] not hesitated to dismiss cases on *forum non conveniens* grounds," the courts carefully and exhaustively analyze the required factors in considering a defendant's dismissal motion. *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, 421 F.Supp.2d 741, 758-75 (S.D.N.Y. 2006) (requiring a seventeen-page analysis of the relevant factors before dismissing the case because "the public and private interests are largely centered in England and not the United States").

Jersey court, in contrast, could experience difficulty ascertaining and applying the appropriate New York legal principles to this dispute.

The facts underlying the Century Policies and the Asbestos Claims, moreover, confirm New York possesses a greater public interest than New Jersey in resolving this action. This interest extends to the parties' alleged settlement because that issue also (and solely) concerns the insurance dollars available for Ingersoll Rand's Asbestos Claims. The parties' settlement discussions occurred in New York, New Jersey, Pennsylvania and Washington, D.C. *See* Clary Aff., Exhs. A and B. The parties, in fact, conducted their final pre-litigation settlement meeting in New York. *See* Weiker Aff. at ¶ 12. Century's proposed settlement agreement -- which purportedly resolves the parties rights and obligations under the Century Policies -- provides that New York law governs any disputes thereunder. *See* Weisman Cert., Exhs. A and C (Complaint, Exh. A at ¶ 17). The proposed agreement also requires the parties to resolve such disputes through an arbitration "held in New York, New York." *Id.* (Complaint, Exh. A at ¶ 10).

New York constitutes the place of contracting of the Century Policies. And, New York handles 20% of Ingersoll Rand's Asbestos Claims (*id.* at ¶ 9), while New Jersey handles less than 1% of these Claims. *Id.* The New Jersey Bergen County courts, moreover, litigate none of the Asbestos Claims, and no Bergen County resident acts as an Asbestos Claims plaintiff. *Id.* at ¶¶ 7. The New York Asbestos Claims, moreover, give rise to 24% of Ingersoll Rand's total asbestos-related indemnity costs, while New Jersey's handful of Asbestos Claims give rise to only 1% of such costs. *Id.* New York, in short, bears a much greater interest than New Jersey in resolving coverage disputes over Ingersoll Rand's Asbestos Claims.

## B.     The Private Interest Factors Favor A New York Forum

The private interest factors help a court decide whether it must retain the action to ensure the parties secure, and present at trial, the facts and evidence. The courts specifically consider:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Iragorri*, 274 F.3d at 73-74 (quoting *Gulf Oil*, 330 U.S. at 508).  Ingersoll Rand demonstrates above that this Court provides a more convenient forum than (or, at least, as convenient a forum as) New Jersey to litigate the Coercive Action. *See supra* at pp. 11-12.

Ingersoll Rand foresees no practical problems arising from a New York judgment in its favor.  Only Ingersoll Rand seeks a money judgment for Century's breach of its Policies. *See* Weisman Cert., Exhs. D and F at ¶¶ 63-65.  Because Century resides neither in New Jersey nor New York, enforcing a money judgment entered by a New York court against Century should prove no less difficult than enforcing a judgment entered by this Court.

## CONCLUSION

The Court should deny Century's motion to dismiss or stay this action.

Respectfully submitted,

McCARTER & ENGLISH, LLP
Attorneys for Ingersoll-Rand Company

By: _____
Steven H. Weisman (SW2408)
Anthony Bartell, Esq.
    (*Pro Hac Vice* Motion Pending)
Jason M. Alexander, Esq.
    (*Pro Hac Vice* Motion Pending)

Dated:  July 5, 2007