UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| INGERSOLL-RAND COMPANY, | : | |
| | : | |
| Plaintiff, | : | Case No. 07-CV-4825 (LTS)(THK) |
| | : | |
| v. | : | |
| | : | |
| CENTURY INDEMNITY COMPANY (as | : | **AFFIDAVIT OF STEVEN H. WEISMAN IN** |
| successor to CCI Insurance Company, | : | **OPPOSITION TO DEFENDANT'S** |
| successor to Insurance Company of North | : | **DISMISSAL MOTION** |
| America), | : | |
| | : | |
| Defendant. | : | |
| | : | |

STATE OF NEW JERSEY )
                     ) ss.:
COUNTY OF ESSEX      )

Steven H. Weisman, being duly sworn, deposes and says:

1.    I am an attorney-at-law of the State of New Jersey, and I am an associate with the

law firm of McCarter & English, LLP, attorneys for plaintiff Ingersoll-Rand Company

("Ingersoll Rand"). I am fully familiar with the facts set forth herein.

2.    I submit this Affidavit in support of Ingersoll Rand's opposition to the dismissal

motion filed by Century Indemnity Company ("Century").

2.    Attached hereto as Exhibit A is a true copy of Century's Complaint for

Declaratory Judgment, dated July 19, 2006.

3.    Attached hereto as Exhibit B is a true copy of the Affidavit of Service of

Century's Declaratory Judgment Complaint.

4.    Attached hereto as Exhibit C is a true copy of Century's Complaint for

Declaratory Judgment, dated April 27, 2007.

5.      Attached hereto as Exhibit D is a true copy of Ingersoll Rand's Complaint, filed on August 8, 2006, in the action captioned, *Ingersoll-Rand Company v. Century Indemnity Company*, Supreme Court of the State of New York, County of New York Index No. 602770/06.

6.      Attached hereto as Exhibit E is a true copy of the Affidavit of Service, evidencing service, on August 9, 2006, of the Complaint attached hereto as Exhibit D.

7.      Attached hereto as Exhibit F is a true copy of Ingersoll Rand's Complaint, filed on May 17, 2007, in the action captioned, *Ingersoll-Rand Company v. Century Indemnity Company*, Supreme Court of the State of New York, County of New York, Index No. 601653/07.

8.      Attached hereto as Exhibit G is a true copy of the State of New York Insurance Department's acknowledgement of service, on May 18, 2007, of the Complaint attached hereto as Exhibit F.

9.      Attached hereto as Exhibit H is a true copy of The Honorable Patrick F.X. Fitzpatrick's opinion in *Ingersoll-Rand v. Commercial Union Ins. Co., et al.*, Docket No. BER-L-09918-90 (N.J. Super. Ct., Law Div., Nov. 16, 1995).

10.     Attached hereto as Exhibit I is a true copy of Century's Complaint in an action titled *Century Indemnity Company v. Clearwater Insurance Company*, United States District Court for the Southern District of New York Civil Action No. 2006 CV 0424 (SAS).

11.  Attached hereto as Exhibit J is a true copy of Century's Complaint filed in an action titled *Century Indemnity Company v. General Reinsurance Corporation*, United States District Court for the Southern District of New York Civil Action No. 05 CV 9393.


Steven H. Weisman

Sworn and Subscribed to
before me this 5th day of July, 2007

Lisa Marie White
NOTARY PUBLIC

LISA MARIE WHITE
A Notary Public of New Jersey
My Commission Expires November 14, 2009

# EXHIBIT A

CONFIDENTIAL
FILED
UNDER SEAL

## Civil Case Information Statement (CIS)

Use for initial Law Division - Civil Part pleadings (not Motions) under Rule 4:5-1
Pleading will be rejected for filing, under Rule 1:5-6(c), If information above the black bar is not completed or If attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY | | |
|---|---|---|
| PAYMENT TYPE:   CK   CG   CA | | |
| CHG/CK NO: | | |
| AMOUNT: | | |
| OVERPAYMENT: | | |
| BATCH NUMBER: | | |

| Attorney Name/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Martin F. Siegal, Esq. | (856) 380-8900 | Bergen County |

| Firm Name (If Applicable) | Docket Number (When available) |
|---|---|
| Siegal Napierkowski & Park | |

| Office Address | Document Type |
|---|---|
| 533 Fellowship Road, Suite 120 Mt. Laurel, New Jersey  08054 | |

| Fax Number | Complaint |
|---|---|
| (856) 380-8901 | Jury Demand   [X]   Yes   ____   No |

| Name of Party (e.g. John Doe, Plaintiff) | CAPTION |
|---|---|
| Plaintiff, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America | Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America v. Ingersoll-Rand Company |

| Case Type Number        508, 156 (see reverse side for listing) | IS THIS IS A PROFESSIONAL MALPRACTICE CASE? [  ]YES  [ X ]NO IF YOU HAVE CHECKED "YES," SEE N.J.S.A.2A-53A-27AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|
| Related Cases Pending?   [  ] Yes  [X]  No | If yes, List Docket Numbers |
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? [  ]  Yes   [X]  No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN [  ] NONE      [  ] UNKNOWN      N/A |

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A.   DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP      [  ] YES   [X] NO | IF YES, IS THAT RELATIONSHIP  [  ] EMPLOYER-EMPLOYEE   [  ] FRIEND/NEIGHBOR [  ] FAMILIAL  [  ] BUSINESS   OTHER (explain) _____ |
|---|---|

B.   DOES THE STATUE GOVERNING THIS CASE PROVIDE
FOR PAYMENT OF FEES BY THE LOSING PARTY?        [  ]  YES      [X]  NO
USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS
THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY
DISABILITIES ACCOMMODATIONS?   [  ] YES    [X] NO       IF YES, PLEASE IDENTIFY THE
REQUESTED ACCOMMODATION:_____

WILL AN INTERPRETER BE NEEDED? [  ] YES    [X]   NO      IF YES, FOR WHAT LANGUAGE _____

ATTORNEY SIGNATURE:

REVISED EFFECTIVE 3/1/04

SIEGAL, NAPIERKOWSKI & PARK
Martin F. Siegal, Esq.
533 Fellowship Road, Suite 120
Mt. Laurel, N.J. 08054
Tel:(856) 380-8916
Fax:(856) 380-8917
Attorneys for Plaintiff

OF COUNSEL for Plaintiff:
CROWELL & MORING LLP
Paul W. Kalish, Esq.
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:(202) 624-2500
Fax:(202) 628-5116

**CONFIDENTIAL**

**FILED**
**UNDER SEAL**

| | |
|---|---|
| CENTURY INDEMNITY COMPANY )<br>(as successor to )<br>CCI Insurance Company, )<br>successor to Insurance )<br>Company of North America), )<br>         )<br>      Plaintiff, )<br>         )<br>      v. )<br>         )<br>INGERSOLL-RAND COMPANY, )<br>         )<br>Defendant. )<br>         )<br>         )<br>         )<br>         )<br>         ) | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>BERGEN COUNTY<br><br>CONFIDENTIAL MATERIALS:<br>FILED UNDER SEAL<br><br>Docket No.<br>    CIVIL ACTION<br><br>COMPLAINT FOR DECLARATORY<br>JUDGMENT and<br>REIMBURSEMENT/RECOUPMENT,<br>JURY DEMAND AND<br>DESIGNATION OF TRIAL COUNSEL |

Plaintiff, Century Indemnity Company, as successor to CCI Insurance Company, successor to Insurance Company of North America ("Century"), sets forth its complaint against the above-captioned defendant, Ingersoll-Rand Company ("Ingersoll-Rand").

<u>NATURE OF ACTION AND RELIEF SOUGHT</u>

1.    This is an action for declaratory judgment under N.J.S.A. 2A:16-50 *et. seq.* Plaintiff Century seeks a

declaration enforcing the oral settlement agreement that resolved the dispute between Century and Ingersoll-Rand (collectively, the "Parties") over their respective rights and obligations under two excess liability insurance policies issued by Century (the "Century Policies"). In the alternative, and only to the extent the Court does not enforce that oral settlement agreement, Century seeks a determination of the Parties' rights and obligations under the Century Policies, under which Ingersoll-Rand seeks coverage for past, pending and future claims and lawsuits against it by claimants who allege that they suffered bodily injury from certain of Ingersoll-Rand's products (the "Underlying Bodily Injury Claims"). Further, if the Court does not enforce that oral settlement agreement, and if the Court finds that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Century is entitled to reimbursement of any and all payments it made to Ingersoll-Rand in excess of $25 million, plus interest.

## PARTIES

2.    Plaintiff Century is a corporation organized under the laws of Pennsylvania, with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19106.  At all times relevant hereto, Century has been licensed to transact

insurance business in the state of New Jersey. Century is the successor to CCI Insurance Company, which is the successor to Insurance Company of North America.

3.    Upon information and belief, Defendant Ingersoll-Rand is a corporation organized under the laws of New Jersey, with its principal place of business at 200 Chestnut Ridge Road, Woodcliff Lake, Bergen County, New Jersey 07675.

## THE CENTURY POLICIES

4.    Century issued two excess liability insurance policies to Ingersoll-Rand that are the subject of the above-referenced settlement agreement:

    a.    Policy No. XBC 1904, which was in effect for the
          period January 1, 1966 through January 1, 1969;
          and

    b.    Policy No. XBC 42188, which was in effect for the
          period January 1, 1969 through February 15, 1972.

## NEGOTIATION OF THE ORAL SETTLEMENT AGREEMENT

5.    In 2002, Ingersoll-Rand sought coverage from Century for certain Underlying Bodily Injury Claims under the Century Policies.

6.    Ingersoll-Rand's coverage claims raised a number of issues concerning the Parties' respective rights and obligations, if any, under the Century Policies with regard to

-3-

the Underlying Bodily Injury Claims. These issues included without limitation:

    a.    Whether and to what extent Century had any coverage obligations under the Century Policies for Underlying Bodily Injury Claims;

    b.    Whether all preconditions to coverage, as set forth in the Century Policies, had been satisfied, including but not limited to the issue of whether the limits of all underlying insurance had been properly exhausted;

    c.    Whether the total amount of coverage, if any, available for Underlying Bodily Injury Claims under the Century Policies was limited to $25 million, as Century contended;

    d.    Whether Century had any defense cost obligations under the Century Policies and, if so, the extent of those obligations;

    e.    The proper method for allocating indemnity (or defense) payments that Century might be obligated to pay under the Century Policies in connection with the Underlying Bodily Injury Claims;

    f.    The extent to which Century had rights to control the defense of the Underlying Bodily Injury Claims.

7.  By the Spring of 2002, Ingersoll-Rand and Century had discussed possible settlement approaches for the Parties' coverage dispute under which the Century Policies would pay portions of defense costs and indemnity payments associated with the Underlying Bodily Injury Claims.

8.  In 2003, Mr. Malcolm Myers on behalf of Century, and Mr. John Clary and Ms. Ingrid Morscher, on behalf of Ingersoll-Rand, participated in a series of negotiations aimed at reaching a complete and permanent settlement of this coverage dispute.

9.  In or around November 2003, Century and Ingersoll-Rand reached a settlement agreement under which they would permanently and completely resolve their coverage dispute and avoid litigation (the "Oral Settlement Agreement"). .

10.  As part of the Oral Settlement Agreement, the Parties agreed that the total amount available (for both defense costs and indemnity payments taken together) for Underlying Bodily Injury Claims under the Century Policies are as follows:  (a) $15 million under Policy No. XBC 1904; and (b) $22.5 million under Policy No. XBC 42188, for a combined total of $37.5 million under both Century Policies.

11.  As part of the Oral Settlement Agreement, the Parties also agreed that whenever any one of the annual periods of two underlying policies ("Underlying Policies") became exhausted, Century would pay a 2.94% share of Ingersoll-Rand's defense

costs and indemnity payments for Underlying Bodily Injury Claims under the Century Policy that is immediately excess of the exhausted Underlying Policy, up to a maximum of 8.82% per Century Policy. The Parties also agreed that once a Century Policy is reached, the entire agreed-upon limits (described in paragraph 10 above) would be available to Ingersoll-Rand for Underlying Bodily Injury Claims, subject to the 8.82% per policy cap, under the percentage share formula.

12. As part of the Oral Settlement Agreement, Century agreed to pay certain previously-invoiced defense costs and indemnity payments for Underlying Bodily Injury Claims in reliance upon certain Ingersoll-Rand representations concerning exhaustion.

13. As part of the Oral Settlement Agreement, Ingersoll-Rand agreed to consult Century regarding the selection of defense counsel, defense strategy, and administration of Underlying Bodily Injury Claims.

14. The Oral Settlement Agreement resolved all other disputed issues relating to the Parties' respective rights and obligations under the Century Policies for Underlying Bodily Injury Claims.

### The Written Settlement Agreement Memorializing
### The Oral Settlement Agreement

15. On or about December 11, 2003, Mr. Myers sent Ms. Morscher a written settlement agreement memorializing the Oral Settlement Agreement (the "Written Settlement Agreement"), which is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

16. In subsequent communications, Ms. Morscher confirmed that the Oral Settlement Agreement had been reached, and that Ingersoll-Rand had no issues or problems with the substantive terms as set forth in the Written Settlement Agreement. Ms. Morscher told Mr. Myers that Ingersoll-Rand's counsel would review the Written Settlement Agreement and perhaps suggest edits to its wording.

17. To date, Ingersoll-Rand has not provided Century with any suggested edits to the Written Settlement Agreement.

### Performance of the Parties' Agreement

18. In or around November 2003, Ms. Morscher provided to Century a list of previously-invoiced defense costs and indemnity payments for Underlying Bodily Injury Claims, which Century had agreed to pay pursuant to the Oral Settlement Agreement.

19. Century paid its share of the defense costs and indemnity payments described in Paragraph 18, and has since been paying defense costs and indemnity payments in accordance with, and in express reliance upon, the terms of the Oral Settlement Agreement.

20. Since 2003, Century has paid over $25 million to Ingersoll-Rand in accordance with, and in express reliance upon, the terms of the Oral Settlement Agreement.

21. Ingersoll-Rand has accepted all payments of indemnity and defense costs made by Century in performance of, and in reliance upon, the terms of the Oral Settlement Agreement.

22. A number of months after the Oral Settlement Agreement was reached, Ingersoll-Rand suggested to Mr. Myers that Ingersoll-Rand was uncertain whether or not it would formalize the Written Settlement Agreement by signing it.

23. Despite Century's requests that Ingersoll-Rand formalize the Written Settlement Agreement, and notwithstanding Century's performance of that agreement, Ingersoll-Rand has not yet signed it.

<u>COUNT I</u>

(Declaratory Relief: Enforcement of Century's Rights
Under the Oral Settlement Agreement)

24. Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

- 8 -

25. Both Century and Ingersoll-Rand mutually assented to the essential terms of the Oral Settlement Agreement.

26. Both Century and Ingersoll-Rand manifested an intent to be contractually bound to the terms of the Oral Settlement Agreement.

27. The terms of the Oral Settlement Agreement are sufficiently definite that the performance to be rendered by each of the Parties can be ascertained with reasonable certainty.

28. The promises made by Century under the Oral Settlement Agreement constitute good and valuable consideration for the promises made by Ingersoll-Rand under the Oral Settlement Agreement.

29. The promises made by Ingersoll-Rand under the Oral Settlement Agreement constitute good and valuable consideration for the promises made by Century under the Oral Settlement Agreement.

30. Century has been performing in accordance with the Oral Settlement Agreement and in reasonable, detrimental reliance upon Ingersoll-Rand's clear and definite promises set forth therein.

31. There is an actual controversy between Century and Ingersoll-Rand concerning the enforcement of the Oral Settlement Agreement.

- 9 -

32.   Under contract law and equitable principles, Century is entitled to a declaration enforcing its rights under the Oral Settlement Agreement.

COUNT II

(Declaratory Relief:   Rights and Obligations under the Century Policies)

33.   Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

34.   Were this Court to decline to enforce the Oral Settlement Agreement, then Ingersoll-Rand's claim for coverage under the Century Policies for Underlying Bodily Injury Claims would again raise a number of coverage issues, including without limitation those described in Paragraph 6.

35.   Were this Court to decline to enforce the Oral Settlement Agreement, then there would be an actual controversy between Century and Ingersoll-Rand concerning whether and to what extent the Century Policies provide coverage for Underlying Bodily Injury Claims.

36.   Were this Court to decline to enforce the Oral Settlement Agreement, then Century is entitled to a declaration of rights and obligations under the Century Policies for Underlying Bodily Injury Claims.

COUNT III
(Recoupment/Reimbursement)

37.  Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

38.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Ingersoll-Rand would have unjustly received a benefit to which it was not entitled.

39.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then it would be unjust, inequitable, and detrimental to Century to allow Ingersoll-Rand to retain the payments made by Century in excess of $25 million.

40.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Century is entitled to full and complete reimbursement of

any and all payments it made to Ingersoll-Rand in excess of $25 million, with interest.

REQUEST FOR RELIEF

WHEREFORE, Century respectfully requests that this Court enter a judgment in favor of Century declaring:

41. That the Oral Settlement Agreement is enforceable and that Ingersoll-Rand is bound by its terms; and

42. That the terms of the Oral Settlement Agreement are those that are set forth in the Written Settlement Agreement attached hereto as Exhibit A.

IN THE ALTERNATIVE, Century respectfully requests that this Court:

43. Issue a declaration determining the respective rights and obligations of Century and Ingersoll-Rand concerning defense costs and indemnity payments for Underlying Bodily Injury Claims under the Century Policies, including without limitation:

a. Whether and to what extent Century has any coverage obligations under the Century Policies for Underlying Bodily Injury Claims;

b. Whether all preconditions to coverage, as set forth in the Century Policies, have been satisfied, including but not limited to the issue of whether the limits of all underlying insurance have been properly exhausted;

c.    Whether the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million;

d.    Whether Century has any defense cost obligations under the Century Policies, and, if so, the extent of those obligations;

e.    The proper method for allocating any indemnity (or defense) payments that Century might be obligated to make under the Century Policies in connection with the Underlying Bodily Injury Claims; and

f.    Century's rights in connection with the control of the defense of the Underlying Bodily Injury Claims;

44.    Order Ingersoll-Rand to fully and completely reimburse Century for any and all payments made in excess of $25 million, with interest; and

45.    Grant all other relief that the Court may deem just, proper and equitable.

<u>JURY DEMAND</u>

Century demands a trial by jury on all issues.

<u>DESIGNATION OF TRIAL ATTORNEY</u>

Pursuant to Rule 4:25-4, Plaintiff hereby designates Martin F. Seigal, Esq. as trial counsel.

SIEGAL, NAPIERKOWSKI & PARK
Attorneys for Plaintiff,
Century Indemnity Company, as
successor to CCI Insurance
Company, successor to
Insurance Company of North
America,

By _____
      Martin F. Siegal, Esq.

Dated:   July 19, 2006


## CERTIFICATION PURSUANT TO R. 4:5-1

   Pursuant to R. 4:5-1, I hereby certify that there is no

other action pending in any Court or arbitration proceeding

concerning the matter in controversy and none is contemplated.

Further, I know of no other party who should be joined in this

action.

                    _____
                     Martin F. Siegal, Esq.

Dated:   July 19, 2006

## SIEGAL, NAPIERKOWSKI & PARK
533 FELLOWSHIP ROAD, SUITE 120
MT. LAUREL, NJ 08054
(856) 380-8900
FAX: (856) 380-8901

BRIAN Q. FOX*□G*
JERRALD J. HOCHMAN□
SCOTT E. LEVENS
EDWARD M. NAPIERKOWSKI*
LAWRENCE A. NATHANSON*
SETH GOODMAN PARK□
LAWRENCE A. SERLIN*
MELVIN R. SHUSTER*
MARTIN F. SIEGAL

*ALSO ADMITTED IN PENNSYLVANIA
*ALSO ADMITTED IN DISTRICT OF COLUMBIA
*ALSO ADMITTED IN ILLINOIS
*NOT ADMITTED IN NEW JERSEY
□ALSO ADMITTED IN MASSACHUSETTS
□ALSO ADMITTED IN NEW YORK

writer's direct: (856) 380-8906

**VIA HAND DELIVERY**

July 19, 2006

Clerk of the Civil Court
Bergen County Superior Court
10 Main Street
Hackensack, NJ 07601-7699

      Re:    Century Indemnity Company v. Ingersoll-Rand Company
           Bergen County, Docket No.:  BER-L-_____

Dear Sir or Madam:

      On behalf of Plaintiff, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, enclosed please find:

    1.     Civil Case Information Statement;

    2.     Complaint;

    3.     Notice of Motion Seeking Leave to Seal Complaint and Settlement Agreement;

    4.     Supporting Certification;

    5.     Proposed form of Order;

    6.     Brief; and

    7.     Certificate of Service.

INGERSOLLRAND\071006LT.CLK

Clerk of the Court
Bergen County Superior Court (Civil)
July 19, 2006
Page 2


     **We respectfully request that all the above documents be filed under seal until the Court has an opportunity to rule on this application.** Please have any filing fees charged to our Superior Court Account 140240. Please contact the undersigned if you have any questions regarding this filing. Oral argument is requested as to the motion. Thank you for your assistance in this matter.

                                      Very truly yours,

                                        Martin F. Siegal

Enclosures
SEL/pm

CONFIDENTIAL

FILED

UNDER SEAL
DRAFT
December 10, 2003

## CONFIDENTIAL AGREEMENT REGARDING
## CENTURY EXCESS POLICIES XBC 1904 AND XBC 42188

This CONFIDENTIAL AGREEMENT REGARDING CENTURY EXCESS

POLICIES XBC 1904 AND XBC 42188 is made as of December __, 2003, by and

between INGERSOLL-RAND COMPANY, whose principal place of business is at

200 Chestnut Ridge Road, Woodcliff Lake, NJ 07675-8738 ("I-R") and CENTURY

INDEMNITY COMPANY AS SUCCESSOR TO CCI INSURANCE COMPANY AS

SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA ("CENTURY"),

whose principal place of business is at 1601 Chestnut Street, Philadelphia, PA

19101-1484.  I-R and Century may hereafter be referred to individually as "Party"

and collectively as "Parties."

### WITNESSETH:

WHEREAS, I-R faces claims and lawsuits from plaintiffs who allege that

they suffered bodily injury from I-R products that allegedly exposed them to

asbestos; and

WHEREAS, I-R and CENTURY, among others, entered into an agreement

entitled "Interim Agreement Regarding Asbestos-Related Bodily Injury Cases"

made as of January 15, 1993 ("Interim Asbestos Agreement").

WHEREAS, the purpose of the Interim Asbestos Agreement was to adopt a

mechanism for allocating the responsibility for Defense Costs and Indemnity

CONFIDENTIAL

FILED
UNDER SEAL

- 2 -

Payments with respect to past, pending and future Asbestos-Related Bodily Injury

Claims, as defined therein; and

WHEREAS, the insurance policies issued by CENTURY to I-R to which the

Interim Asbestos Agreement applied were primary policies, the limits of which have

now been exhausted; and

WHEREAS, CENTURY issued to I-R excess insurance policies XBC 1904

(1/1/66-1/1/69) and XBC 42188 (1/1/69-2/15/72) ("Century Excess Policies"); and

WHEREAS, the Parties to this Agreement believe that the insurance policies

issued to I-R by Home Insurance Company ("Home") which underlie the Century

Excess Policies ("Home Underlying Policies") either already are or may in the future

be exhausted; and

WHEREAS, I-R also now faces claims and lawsuits from plaintiffs who allege

that they suffered bodily injury from I-R products that allegedly exposed them back

in the 1960's or 1970's to mixed dust, mineral dust, grain dust, silica and/or other

deleterious substances, which claims may just be asbestos claims pled differently

and/or may actually involve other contaminants either on their own or in

combination with asbestos; and

WHEREAS, the Parties to this Agreement have different positions on various

issues regarding alleged insurance coverage and their respective rights, duties and

obligations, if any, under the Century Excess Policies; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of

compromise and accord and without prejudice to or waiver of their respective

CONFIDENTIAL

FILED

UNDER SEAL

- 3 -

positions in other matters, a mechanism for permanently allocating the responsibility for Defense Costs and Indemnity Payments in connection with Bodily Injury Claims under the Century Excess Policies;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises contained herein, and intending to be legally bound hereby, I-R and Century agree as follows:

1.   **DEFINITIONS FOR PURPOSES OF THIS AGREEMENT ONLY**

(a)   "Bodily Injury Claims" means those claims or lawsuits, or portions of claims or lawsuits, whenever filed, which seek monetary damages or other monetary relief from I-R for bodily injuries, illnesses, ailments, diseases or death therefrom which are alleged to have been caused, in whole or in part, by historic exposure to asbestos (or mixed dust, mineral dust, grain dust, silica, and/or other deleterious substances) for which I-R is allegedly responsible. "Bodily Injury Claims" shall not include, and I-R will not seek to recover from the Century Excess Policies, those portions of such suits and/or claims (or an entire suit and/or claim solely): (i) seeking injunctive, declaratory or other prospective or equitable relief and not seeking compensatory damages; (ii) arising out of a worker's compensation statute or similar statute or law; (iii) seeking recovery because of an alleged conspiracy between I-R and one or more other companies or persons not employed by I-R to suppress information regarding alleged dangers of bodily injury arising out of exposure to asbestos and/or other deleterious substances or other

CONFIDENTIAL

FILED

UNDER SEAL

- 4 -

alleged intentional misconduct; (iv) seeking punitive or exemplary

damages, where such damages would not be insurable under the

applicable state law; and/or (v) seeking recovery on the basis of an I-R

contract to indemnify another entity unless such contract is approved

in writing by CENTURY or is otherwise within the coverage of the

Century Excess Policies.

If only a portion of a suit or claim falls within the definition of

Bodily Injury Claims, then the Defense Costs and Indemnity Payments

associated with such suit or claim shall be allocated in a fair and

reasonable manner between the portion(s) of the suit or claim that fall

within the definition of Bodily Injury Claims and the portion(s) of the

suit or claim that fall outside that definition, and I-R will not seek to

recover for the portion(s) of the suit or claim that fall outside that

definition.

(b)    "Defense Costs" mean all reasonable and necessary expenses incurred

in the defense of I-R for Bodily Injury Claims, including, without

limitation, reasonable and necessary investigative expenses, attorneys'

fees and expenses, court costs, disbursements and expert and other

witness fees. "Defense Costs" do not include any fees, costs or expenses

incurred by I-R for (i) its employees, consultants, and/or contractors to

manage or generally administer the Bodily Injury Claims, (ii) its

efforts to identify, secure, enforce, or interpret alleged coverage under

CONFIDENTIAL
FILED
UNDER SEAL

- 5 -

a policy of insurance, and/or (iii) the preparation or negotiation of this Agreement.

   (c)   "Indemnity Payments" mean all payments for settlements or judgments payable pursuant to this Agreement, made by or on behalf of I-R to or for the benefit of plaintiffs and/or claimants in connection with Bodily Injury Claims.

   (d)   "Effective Date" means the date when both I-R and CENTURY have executed counterpart originals of this Agreement.

   (e)   "Home Underlying Policies" mean the Home insurance policies listed on Exhibit "A" annexed hereto.

   (f)   "Century Excess Policies" defined above as Century Excess Policies XBC 1904 and XBC 42188 does not include other higher layer ACE USA Companies' policies. Such higher layer policies are not part of this Agreement.

As necessary to effect the purposes of this Agreement, each defined term stated in singular form shall include the plural form, and each defined term stated in plural form shall include the singular form

## 2.  CENTURY'S DEFENSE COSTS/INDEMNITY PAYMENT OBLIGATIONS

Two Century Excess Policies – XBC 1904 (1/1/66-1/1/69) and XBC 42188 (1/1/69-2/15/72) – are the subject this agreement. The Parties agree that the first Century Excess Policy, XBC 1904, will pay up to $15 million in limits, and the second Century Excess Policy, XBC 42188, will pay up to $22.5 million in limits,

CONFIDENTIAL
FILED
UNDER SEAL

- 6 -

such that I-R may all together receive up to $37.5 million from those two Century

Excess Policies.

Whenever any one of the Home Underlying Policies, listed on Exhibit A

becomes exhausted for any one of the six Home time periods set forth in Exhibit A,

CENTURY will pay 2.94% of Defense Costs and Indemnity Payments for Bodily

Injury Claims thereafter incurred in lieu of the exhausted Home Underlying Policy

pursuant to the Century Excess Policy that is excess of such Home Underlying

Policy. CENTURY's obligation to make such payments for such exhausted Home

time periods under either or both Century Excess Policies shall continue until the

agreed limit for the Century Excess Policy involved has been exhausted. In no

event, will CENTURY pay more than a combined total of Defense Costs and/or

Indemnity Payments of $15 million under XBC 1904 or pay more than a combined

total of Defense Costs and/or Indemnity Payments of $22.5 million under XBC

42188.

However, CENTURY agrees that once a Home time period set forth in

Exhibit B under one of the Century Excess Policies is exhausted, and I-R allocates

the 2.94% of Defense Costs and Indemnity Payments previously paid by that Home

policy to the Century Excess Policy that is excess of such Home underlying policy,

the entire agreed amount that Century Excess Policy (i.e., $15 million or $22.5

million) is potentially available to be paid to I-R under that Century Excess Policy.

Upon exhaustion of either or both of the Century Excess Policies, the obligation to

CONFIDENTIAL
FILED
UNDER SEAL

- 7 -

pay Defense Costs and Indemnity Payments for such time period shall pass to another insurance carrier of I-R.

As set forth above, the Parties agree that any payments for Defense Costs will erode the combined $37.5 million in agreed limits available under the Century Excess Policies per this Agreement, and in no event will the payment of Defense Costs be considered to be in excess of the combined $37.5 million in agreed limits available under the Century Excess Policies per the terms of this Agreement.

Under this Agreement, I-R agrees that CENTURY has the right to audit or review from time to time, either at I-R's offices in Woodcliff, New Jersey and/or at the offices of underlying defense counsel firms, any and all documentation in connection with Defense Costs and Indemnity Payments billed to Century under the Century Excess Policies. If such audit or review establishes that CENTURY has made overpayments for amounts that should not have been allocated to it, I-R will upon a written request from Century reimburse CENTURY within 60 days for any overpayments.

I-R has represented that at least one of the six Home time periods set forth in Exhibit A of the Home Underlying Policies (i.e., the time period 1/1/70-1/1/71) has already been exhausted. Whenever I-R believes that such a Home time period has been exhausted, I-R agrees as soon as practicable to provide to CENTURY a written certification to that effect together with written documentation that I-R believes is sufficient to document that exhaustion.

CONFIDENTIAL
FILED
UNDER SEAL

- 8 -

In reliance upon such representations, CENTURY agrees to pay previously

invoiced Defense Costs and/or Indemnity Payments for Bodily Injury Claims under

the terms of this Agreement for exhausted Home time period(s) within (30) days

after the later of the effective date of this Agreement or the date that I-R provides

written certification and documentation that I-R believes sufficient to show that a

particular time period set forth in Exhibit B of the Home Underlying Policies has

been exhausted.  (I-R will also use its best efforts to obtain for CENTURY access to

pertinent Home files bearing on exhaustion.)

In the event that it is determined that I-R was mistaken regarding the

exhaustion of Home Underlying Policies, I-R agrees that CENTURY may stop

paying Defense Costs and Indemnity Payments for Bodily Injury Claims for the

time period(s) in question until it is, in fact, demonstrated that particular years of

the Home Underlying Policies have been exhausted.  If CENTURY so requests in

writing, I-R will refund to CENTURY within 60 days any CENTURY payments

determined not actually to have been owed by CENTURY.

The maximum percentage share allocable to the two Century Excess Policies

combined – assuming complete exhaustion of all six Home Underlying Policies time

periods – is 17.64% (i.e., six times 2.94%).

3.    PERMANENT AGREEMENT

This Agreement constitutes a final, permanent agreement and release

between CENTURY and I-R for Bodily Injury Claims under Century Excess Policies

XBC 1904 and XBC 42188.  CENTURY's obligation to make payments under each

CONFIDENTIAL
FILED
UNDER SEAL

- 9 -

Century Excess Policy will terminate once I-R has exhausted the $15 million (or $22.5 million) limit available under that policy.

4.    **EXHAUSTION OF AGREED LIMITS**

The Parties recognize that the $37.5 million in agreed limits available under the Century Excess Policies, per the terms of this Agreement, can be exhausted both by payments made pursuant to this Agreement and by payments for claims outside the scope of this Agreement.  Once those $37.5 million limits have been paid out, CENTURY will have no further coverage obligations for either type of claim.  If CENTURY should determine that the agreed limits of the Century Excess Policies have been exhausted, CENTURY will promptly notify I-R.

5.    **DUTIES OF CENTURY AND I-R IN CONNECTION WITH THE UNDERLYING DEFENSE EFFORT**

The defense of Bodily Injury Claims shall be conducted reasonably and in good faith in the best interests of I-R with the objective of minimizing to the extent practicable total payouts for defense and indemnity and settlement payments for unmeritorious claims.

I-R will administer implementation of this Agreement.  More specifically, I-R will have its defense counsel at the end of each calendar quarter send itemized billings to CENTURY for its percentage share of Defense Costs.  I-R also will have its defense counsel send CENTURY itemized billings for its percentage share of Indemnity Payments on an as needed basis to effectuate settlements.

I-R shall require its defense counsel to submit detailed billings and provide periodic updates and detailed semi-annual status reports.  Billings shall be required

CONFIDENTIAL
FILED
UNDER SEAL

- 10 -

to contain a description of each item or service performed, the date it was performed, the identity of the attorney or paralegal performing the service, the time spent upon the service, and the rate or rates charged for the service. Disbursements shall also be itemized. Notwithstanding the above, CENTURY retains the right to distribute billing guidelines to defense counsel, specifying further requirements and limitations on payments for services and disbursements. I-R and Century will consult with each other from time to time on whether the billing and reporting processes set forth above should be modified or improved in light of their practical experience with them.

I-R shall have settlement authority not to exceed $1 million for any one claimant or block of claimants, provided that the settlement amount is within underlying defense counsel's recommended case value(s). For authorization in excess of this amount, I-R shall obtain consent from CENTURY. If a disagreement or question should arise as to whether a settlement in excess of the above amounts should be entered into, the Parties will use their best efforts to reach a prompt and reasonable resolution of such disagreement or question.

Except in exigent circumstances, such as developments at an ongoing mediation or at trial, I-R shall, before reaching a settlement within its authority, (1) attempt to keep CENTURY informed of decisions to be made regarding settlement and of information received from defense counsel bearing upon whether settlement within certain ranges would or would not be advisable and (2) solicit the views and perspectives of CENTURY with respect to settlements that are being considered.

CONFIDENTIAL
FILED
UNDER SEAL

- 11 -

I-R shall also solicit the advice of CENTURY regarding the choice of defense counsel. I-R may replace defense counsel only with the approval of CENTURY. If a disagreement or question should arise as to decisions regarding the retention of defense counsel, the Parties will use their best efforts to reach a prompt and reasonable resolution of such disagreement or question.

I-R shall arrange for copies of the billings of defense counsel to be provided to CENTURY. If CENTURY objects to any part of any billing by defense counsel, it shall communicate such objection to I-R. I-R will then commence negotiations with defense counsel to try to reach a resolution of the objection. If CENTURY does not believe that I-R has reached a satisfactory resolution of its objection or if I-R declines to enter into negotiations with defense counsel, CENTURY shall be entitled to audit the billings, negotiate with defense counsel, and adjust disputed billing amounts. Any recoveries made from defense counsel shall be shared proportionately between CENTURY and I-R, and other funding carriers, if any, after deduction by CENTURY for its reasonable costs and expenses in accomplishing such recovery (not including salaries of its full-time employees).

6.  NO EVIDENCE; NO ADMISSION

This Agreement is a compromise mechanism for resolving issues related to defense and indemnity for Bodily Injury Claims. Except to the extent each Party is bound by this Agreement, each Party fully reserves, and does not waive, all of its rights and all of its defenses under and in connection with the Policies.

Nothing contained in this Agreement shall be deemed or construed to be an admission or concession by any Party that any claim or defense asserted or position

- 12 -

CONFIDENTIAL
FILED
UNDER SEAL

taken under any Policy is valid or correct, and, except to the extent that each Party

is bound by this Agreement, neither this Agreement nor any provision hereof shall

be deemed to be a waiver of any legal position which any Party may assert under

the Century Excess Policies or under any other policies.

This Agreement and the fact that payments were made pursuant to this

Agreement shall not be admissible in evidence in any suit, action or other

proceeding, except as may be necessary to enforce the terms and provisions of this

Agreement.

This Agreement shall not be construed as an admission of the validity of any

claims, rights or defenses under any Policy.

7.    **BREACH CLAIMS**

Subject to the foregoing, and in addition to any waivers or modifications of

rights provided herein, I-R waives and forever relinquishes any claim, demand,

right and cause of action it may have against CENTURY for breach of contract, bad

faith or punitive or treble damages related to the matters resolved by this

Agreement. Both parties waive and forever relinquish any claim, demand, right

and cause of action it may have against each other for any other contractual, tort or

statutory liability predicated on the matters resolved by this Agreement.

8.    **CONFIDENTIALITY**

This Agreement is made as a result of on-going settlement negotiations and

as a compromise and resolution of controversy between the Parties. This

Agreement and its implementation are confidential and, without the prior written

consent of both Parties or court order, may not be disclosed to anyone EXCEPT (a)

CONFIDENTIAL
FILED
UNDER SEAL

- 13 -

accountants, affiliates, attorneys, auditors, consultants, directors, employees,

lenders, officers and underwriters of the Parties, (b) other carriers of I-R, and

reinsurers (including reinsurers' agents, attorneys, auditors, employees,

retrocessionaires and any persons, arbitrators and judges, federal or state, who may

be involved in the reinsurance collection process or issues relating to the collection

of reinsurance of CENTURY, and (c) regulators and governmental entities charged

with licensing and/or regulation of the Parties, PROVIDED that any such disclosure

shall be made, to the extent practical, subject to the same confidentiality as

contemplated by this Agreement.

The Parties shall cooperate in protecting the confidentiality of this

Agreement. If demand is made upon either Party by anyone to disclose the terms of

this Agreement, such Party shall immediately notify the other Party of such

demand. Either Party that wishes to resist disclosure of this Agreement, or any of

its terms, may do so at its own expense, and the other Party will cooperate in

connection therewith, including but not limited to joining in the filing of papers in

opposition, supporting efforts to intervene and, in the event of an adverse judicial

determination, joining in an appeal or effort to obtain permission to file an

interlocutory appeal, provided that, unless a Party requesting cooperation is willing

to pay a cooperating Party's reasonable and necessary attorneys' fees, a cooperating

Party shall not be required to become involved to the extent of incurring more than

incidental amounts of legal fees. Subject to the overall requirement to fully and

- 14 -

CONFIDENTIAL
FILED
UNDER SEAL

genuinely support protecting the confidentiality of this Agreement, no Party shall

be required to adopt specific supporting arguments that it does not accept.

9.   **ENTIRE AGREEMENT**

This Agreement constitutes the entire Agreement among the Parties

concerning the matters addressed herein and supersedes any and all prior

agreements, oral or written, between the Parties concerning the administration,

defense or indemnity of Bodily Injury Claims in connection with the Century Excess

Policies.

10.   **SUBMISSION TO ARBITRATION**

Both Parties shall have the right to resolve disputes arising under this

Agreement by arbitration before three arbitrators pursuant to the rules, procedures

and practices of the American Arbitration Association.  Any such arbitration

proceeding shall be held in New York, New York.  Each Party shall bear its own

arbitration costs and expenses.  An award rendered by a majority of arbitrators

appointed pursuant to this Agreement shall be final and binding upon the Parties,

and judgment on such award may be entered by either Party in any court having

jurisdiction.

The arbitration provisions of this Paragraph shall have no bearing on the

resolution of disputes and controversies between or among the Parties which do not

involve the enforcement or interpretation of this Agreement.

Any notices or correspondence in connection with this Agreement shall be

sent by email, fax or overnight mail in the first instance with a confirmation copy

sent by certified mail return receipt requested to the following individuals:

- 15 -

CONFIDENTIAL
FILED
UNDER SEAL

For I-R:   John Clary
      Ingersoll-Rand Company
      200 Chestnut Ridge Road
      Woodcliff Lake, NJ 07675-8738

For CENTURY:  Malcolm L. Myers
      ACE USA
      Two Liberty Place
      1601 Chestnut Street TL-ISA
      P.O. Box 7716
      Philadelphia, PA 19101-1484

## 11.   WAIVER OF CONTRIBUTION CLAIMS

CENTURY waives, and shall not assert, any and all claims for contribution or indemnification for all or any part of payments made pursuant to this Agreement, against any insurance carrier that issued an insurance policy to or for the benefit of I-R, unless that other carrier asserts claims against CENTURY.

## 12.   INDEMNIFICATION OF CENTURY

I-R shall hold CENTURY harmless against, and agrees to indemnify CENTURY for, all liability and expense with respect to any and all actions, suits, claims, demands, and/or causes of action at law or in equity, of whatever nature or kind, that any non-Party may now, or in the future, may make or have against CENTURY which in any way arise out of or relate to this Agreement or the Bodily Injury Claims.

Provided it does so in writing, CENTURY may at any time in its sole discretion waive some or all of its indemnification rights under this Agreement. Should CENTURY do so, the Parties agreed that this Agreement shall be deemed never to have contained or provided for the waived indemnification rights.

CONFIDENTIAL
FILED
UNDER SEAL

- 16 -

13.    LIQUIDATION, INSOLVENCY OR BANKRUPTCY

Should there ever be a liquidation, insolvency or bankruptcy of I-R,

CENTURY will continue to abide by the terms of this Agreement, subject to the

limitation that it is understood between the Parties that should I-R go into

bankruptcy, CENTURY will not be obligated to pay more than a combined $8

million for Defense Costs and Indemnity Payments for Bodily Injury Claims in any

one year. In such event, any payments owed for Defense Costs and Indemnity

Payments for Bodily Injury Claims in excess of $8 million will be carried over to the

next calendar year. Nothing in this Paragraph will be deemed by the Parties as

either increasing or decreasing the $37.5 million in limits available under the

Century Excess Policies per the terms of this Agreement.

14.    NO THIRD PARTY RIGHTS

While this Agreement is binding to the Parties and their successors, nothing

contained in this Agreement shall be construed to create or revive an enforceable

right or cause of action in any person or entity not a signatory hereto.

15.    NO CHANGES OR MODIFICATIONS

Subject to Paragraph 12, supra, no change, modification, deletion or addition

to this Agreement shall be valid unless it is made in writing and executed by the

Parties with the same formalities as this Agreement.

16.    ARMS-LENGTH NEGOTIATION

This Agreement is the product of arms-length settlement negotiations

between the Parties regarding a compromise of disputed claims. No Party shall be

deemed to be the drafter of any provision or of the entire Agreement. No part of



CONFIDENTIAL
FILED
UNDER SEAL

- 17 -

this Agreement shall be construed against CENTURY on the basis of CENTURY's

identity as an insurance company or as the drafter of any part of this Agreement.

17.    <u>GOVERNING LAW</u>

This Agreement, including any dispute regarding the applicability or scope of

the arbitration clause in Paragraph 12, shall be controlled by and interpreted to the

laws of the State of New York.

18.    <u>COUNTERPART ORIGINALS AND EXECUTION OF ADDITIONAL
DOCUMENTS</u>

This Agreement may be executed in several counterparts, each of which shall

be deemed an original, but all of which together shall constitute one and the same

instrument. The Parties shall cooperate fully with each other in connection with

any matter arising under or in connection with this Agreement and shall make,

execute and deliver to each other any and all additional or other documents,

instruments or papers required to give full effect to this Agreement.

- 18 -



IN WITNESSETH THEREOF, the Parties have caused this Agreement to be

duly executed as of date first set forth above, and the undersigned represent that

they are authorized to execute and deliver this Agreement on behalf of their

respective Party:

Ingersoll-Rand Company


By: _____


Century Indemnity Company, as Successor
to CCI Insurance Company, as Successor to
Insurance Company of North America


By: _____


2098726

CONFIDENTIAL
FILED
UNDER SEAL

- 19 -

## EXHIBIT A TO CONFIDENTIAL AGREEMENT REGARDING CENTURY EXCESS POLICIES XBC 1904 AND XBC 42188

| HOME UNDERLYING POLICIES | PERCENTAGE ALLOCATION BY TIME PERIOD |
|---|---|
| HEC 9544890 | 1/1/66-1/1/67: 2.94%<br>1/1/67-1/1/68: 2.94%<br>1/1/68-1/1/69: 2.94% |
| HEC 9664310 | 1/1/69-1/1/70: 2.94%<br>1/1/70-1/1/71: 2.94%<br>1/1/71-1/1/72: 2.94% |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of July, 2006, I caused true and correct copies of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America (Century's) Complaint for Declaratory Judgment and Reimbursement/Recoupment, Jury Demand and Designation of Trial Counsel and Certificate of Service to be served on the Clerk of the Civil Court, Bergen County Superior Court via hand delivery and Ingersoll-Rand Company upon its registered agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628-000, via certified mail, return receipt requested, and U.S. mail.

Martin F. Siegal

# EXHIBIT B

`*200607270839 55*`

CENTURY INDEMNITY CO.                          Plaintiff

vs.

INGERSOLL RAND CO.                             Defendant

**Person to be served (Name and Address):**
INGERSOLL RAND CO.
820 BEAR TAVERN ROAD
WEST TRENTON  NJ  08528
By serving:  CORP. TRUST CO.

**Attorney:** SCOTT E. LEVENS, ESQ.

**Papers Served:** CIS, EXHIBITS, SUMMONS AND COMPLAINT, TRACK
ASSIGNMENT NOTICE

**Service Data:**    [X] Served Successfully        [ ] Not Served

Date/Time:    07/27/2006  11:54AM

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age
residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Superior Court Of New Jersey

BERGEN Venue

Docket Number: BER L 005312 06

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

Attempts:    Date/Time: _____
              Date/Time: _____
              Date/Time: _____

Name of Person Served and relationship/title:

MARGE PHILLIPS

FULFILLMENT SPECIALIST

**Description of Person Accepting Service:**

SEX: F__  AGE: 51-65__  HEIGHT: 5'4"-5'8"  WEIGHT: 131-160 LBS.  SKIN: WHITE  HAIR: BLONDE  OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] No response on:        Date/Time: _____
                           Date/Time: _____
                           Date/Time: _____

Other:                              S.P.

**Served Data:**
Subscribed and Sworn to me this

27_____ day of July_____, 2006__

Notary Signature _____
              DANA MARIA FURCHAK
              NOTARY PUBLIC OF NEW JERSEY
              My Commission Expires Sept. 13, 2010
_____
Name of Notary        Commission Expiration

I, JANE NUNN _____
was at the time of service a competent adult
not having a direct interest in the litigation.
I declare under penalty of perjury that the
foregoing is true and correct.

_____ 7/27/2006
Signature of Process Server    Date

Name of Private Server: JANE NUNN   Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (908) 687-0056

DML

# EXHIBIT C

SIEGAL, NAPIERKOWSKI & PARK
Martin F. Siegal, Esq.
533 Fellowship Road, Suite 120
Mt. Laurel, N.J. 08054
Tel:(856) 380-8916
Fax:(856) 380-8917
Attorneys for Plaintiff

OF COUNSEL for Plaintiff:
CROWELL & MORING LLP
Paul W. Kalish, Esq.
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:(202) 624-2500
Fax:(202) 628-5116

| | |
|---|---|
| CENTURY INDEMNITY COMPANY )<br>(as successor to )<br>CCI Insurance Company, )<br>successor to Insurance )<br>Company of North America), )<br>)<br>           Plaintiff, )<br>)<br>      v. )<br>)<br>INGERSOLL-RAND COMPANY, )<br>)<br>Defendant. )<br>)<br>)<br>)<br>) | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>BERGEN COUNTY<br><br>Docket No.<br>  **CIVIL ACTION**<br><br><br>**COMPLAINT FOR DECLARATORY<br>JUDGMENT and<br>REIMBURSEMENT/RECOUPMENT,<br>JURY DEMAND AND<br>DESIGNATION OF TRIAL COUNSEL** |

      Plaintiff, Century Indemnity Company, as successor to CCI

Insurance Company, successor to Insurance Company of North

America ("Century"), sets forth its complaint against the above-

captioned defendant, Ingersoll-Rand Company ("Ingersoll-Rand").

<u>NATURE OF ACTION AND RELIEF SOUGHT</u>

    1.   This is an action for declaratory judgment under

N.J.S.A. 2A:16-50 *et. seq.*  Plaintiff Century seeks a

declaration enforcing the oral settlement agreement that resolved the dispute between Century and Ingersoll-Rand (collectively, the "Parties") over their respective rights and obligations under two excess liability insurance policies issued by Century (the "Century Policies"). In the alternative, and only to the extent the Court does not enforce that oral settlement agreement, Century seeks a determination of the Parties' rights and obligations under the Century Policies, under which Ingersoll-Rand seeks coverage for past, pending and future claims and lawsuits against it by claimants who allege that they suffered bodily injury from certain of Ingersoll-Rand's products (the "Underlying Bodily Injury Claims"). Further, if the Court does not enforce that oral settlement agreement, and if the Court finds that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Century is entitled to reimbursement of any and all payments it made to Ingersoll-Rand in excess of $25 million, plus interest.

## **PARTIES**

2.    Plaintiff Century is a corporation organized under the laws of Pennsylvania, with its principal place of business at 30 S. 17th St, Suite 1810, Philadelphia, PA 19103.  At all times relevant hereto, Century has been licensed to transact insurance

-2-

business in the state of New Jersey. Century is the successor to CCI Insurance Company, which is the successor to Insurance Company of North America.

3.    Upon information and belief, Defendant Ingersoll-Rand is a corporation organized under the laws of New Jersey, with its principal place of business at 200 Chestnut Ridge Road, Woodcliff Lake, Bergen County, New Jersey 07675.

## THE CENTURY POLICIES

4.    Century issued two excess liability insurance policies to Ingersoll-Rand that are the subject of the above-referenced settlement agreement:

      a.    Policy No. XBC 1904, which was in effect for the period January 1, 1966 through January 1, 1969; and

      b.    Policy No. XBC 42188, which was in effect for the period January 1, 1969 through February 15, 1972.

## NEGOTIATION OF THE ORAL SETTLEMENT AGREEMENT

5.    In 2002, Ingersoll-Rand sought coverage from Century for certain Underlying Bodily Injury Claims under the Century Policies.

6.    Ingersoll-Rand's coverage claims raised a number of issues concerning the Parties' respective rights and obligations, if any, under the Century Policies with regard to

-3-

the Underlying Bodily Injury Claims. These issues included without limitation:

     a.   Whether and to what extent Century had any coverage obligations under the Century Policies for Underlying Bodily Injury Claims;

     b.   Whether all preconditions to coverage, as set forth in the Century Policies, had been satisfied, including but not limited to the issue of whether the limits of all underlying insurance had been properly exhausted;

     c.   Whether the total amount of coverage, if any, available for Underlying Bodily Injury Claims under the Century Policies was limited to $25 million, as Century contended;

     d.   Whether Century had any defense cost obligations under the Century Policies and, if so, the extent of those obligations;

     e.   The proper method for allocating indemnity (or defense) payments that Century might be obligated to pay under the Century Policies in connection with the Underlying Bodily Injury Claims;

     f.   The extent to which Century had rights to control the defense of the Underlying Bodily Injury Claims.

- 4 -

7.    By the Spring of 2002, Ingersoll-Rand and Century had discussed possible settlement approaches for the Parties' coverage dispute under which the Century Policies would pay portions of defense costs and indemnity payments associated with the Underlying Bodily Injury Claims.

8.    In 2003, Mr. Malcolm Myers on behalf of Century, and Mr. John Clary and Ms. Ingrid Morscher, on behalf of Ingersoll-Rand, participated in a series of negotiations aimed at reaching a complete and permanent settlement of this coverage dispute.

9.    In or around November 2003, Century and Ingersoll-Rand reached a settlement agreement under which they would permanently and completely resolve their coverage dispute and avoid litigation (the "Oral Settlement Agreement").

10.    As part of the Oral Settlement Agreement, the Parties agreed that the total amount available (for both defense costs and indemnity payments taken together) for Underlying Bodily Injury Claims under the Century Policies are as follows:  (a) $15 million under Policy No. XBC 1904; and (b) $22.5 million under Policy No. XBC 42188, for a combined total of $37.5 million under both Century Policies.

11.    As part of the Oral Settlement Agreement, the Parties also agreed that whenever any one of the annual periods of two underlying policies ("Underlying Policies")became exhausted, Century would pay a 2.94% share of Ingersoll-Rand's defense

-5-

costs and indemnity payments for Underlying Bodily Injury Claims
under the Century Policy that is immediately excess of the
exhausted Underlying Policy, up to a maximum of 8.82% per
Century Policy.  The Parties also agreed that once a Century
Policy is reached, the entire agreed-upon limits (described in
paragraph 10 above) would be available to Ingersoll-Rand for
Underlying Bodily Injury Claims, subject to the 8.82% per policy
cap, under the percentage share formula.

    12.  As part of the Oral Settlement Agreement, Century
agreed to pay certain previously-invoiced defense costs and
indemnity payments for Underlying Bodily Injury Claims in
reliance upon certain Ingersoll-Rand representations concerning
exhaustion.

    13.  As part of the Oral Settlement Agreement, Ingersoll-
Rand agreed to consult Century regarding the selection of
defense counsel, defense strategy, and administration of
Underlying Bodily Injury Claims.

    14.  The Oral Settlement Agreement resolved all other
disputed issues relating to the Parties' respective rights and
obligations under the Century Policies for Underlying Bodily
Injury Claims.

### The Written Settlement Agreement Memorializing
### The Oral Settlement Agreement

15.   On or about December 11, 2003, Mr. Myers sent Ms.
Morscher a written settlement agreement memorializing the Oral
Settlement Agreement (the "Written Settlement Agreement"), which
is attached hereto as Exhibit A and incorporated by reference as
if fully set forth herein.

16.   In subsequent communications, Ms. Morscher confirmed
that the Oral Settlement Agreement had been reached, and that
Ingersoll-Rand had no issues or problems with the substantive
terms as set forth in the Written Settlement Agreement.  Ms.
Morscher told Mr. Myers that Ingersoll-Rand's counsel would
review the Written Settlement Agreement and perhaps suggest
edits to its wording.

17.   To date, Ingersoll-Rand has not provided Century with
any suggested edits to the Written Settlement Agreement.

### Performance of the Parties' Agreement

18.   In or around November 2003, Ms. Morscher provided to
Century a list of previously-invoiced defense costs and
indemnity payments for Underlying Bodily Injury Claims, which
Century had agreed to pay pursuant to the Oral Settlement
Agreement.

-7-

19.  Century paid its share of the defense costs and indemnity payments described in Paragraph 18, and has since been paying defense costs and indemnity payments in accordance with, and in express reliance upon, the terms of the Oral Settlement Agreement.

20.  Since 2003, Century has paid over $25 million to Ingersoll-Rand in accordance with, and in express reliance upon, the terms of the Oral Settlement Agreement.

21.  Ingersoll-Rand has accepted all payments of indemnity and defense costs made by Century in performance of, and in reliance upon, the terms of the Oral Settlement Agreement.

22.  A number of months after the Oral Settlement Agreement was reached, Ingersoll-Rand suggested to Mr. Myers that Ingersoll-Rand was uncertain whether or not it would formalize the Written Settlement Agreement by signing it.

23.  Despite Century's requests that Ingersoll-Rand formalize the Written Settlement Agreement, and notwithstanding Century's performance of that agreement, Ingersoll-Rand has not yet signed it.

### COUNT I

**(Declaratory Relief:  Enforcement of Century's Rights Under the Oral Settlement Agreement)**

24.  Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

-8-

25. Both Century and Ingersoll-Rand mutually assented to the essential terms of the Oral Settlement Agreement.

26. Both Century and Ingersoll-Rand manifested an intent to be contractually bound to the terms of the Oral Settlement Agreement.

27. The terms of the Oral Settlement Agreement are sufficiently definite that the performance to be rendered by each of the Parties can be ascertained with reasonable certainty.

28. The promises made by Century under the Oral Settlement Agreement constitute good and valuable consideration for the promises made by Ingersoll-Rand under the Oral Settlement Agreement.

29. The promises made by Ingersoll-Rand under the Oral Settlement Agreement constitute good and valuable consideration for the promises made by Century under the Oral Settlement Agreement.

30. Century has been performing in accordance with the Oral Settlement Agreement and in reasonable, detrimental reliance upon Ingersoll-Rand's clear and definite promises set forth therein.

31. There is an actual controversy between Century and Ingersoll-Rand concerning the enforcement of the Oral Settlement Agreement.

32.   Under contract law and equitable principles, Century is entitled to a declaration enforcing its rights under the Oral Settlement Agreement.

### COUNT II

**(Declaratory Relief:  Rights and Obligations under the Century Policies)**

33.   Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

34.   Were this Court to decline to enforce the Oral Settlement Agreement, then Ingersoll-Rand's claim for coverage under the Century Policies for Underlying Bodily Injury Claims would again raise a number of coverage issues, including without limitation those described in Paragraph 6.

35.   Were this Court to decline to enforce the Oral Settlement Agreement, then there would be an actual controversy between Century and Ingersoll-Rand concerning whether and to what extent the Century Policies provide coverage for Underlying Bodily Injury Claims.

36.   Were this Court to decline to enforce the Oral Settlement Agreement, then Century is entitled to a declaration of rights and obligations under the Century Policies for Underlying Bodily Injury Claims.

**COUNT III**
**(Recoupment/Reimbursement)**

37.  Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

38.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Ingersoll-Rand would have unjustly received a benefit to which it was not entitled.

39.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then it would be unjust, inequitable, and detrimental to Century to allow Ingersoll-Rand to retain the payments made by Century in excess of $25 million.

40.  Were this Court to decline to enforce the Oral Settlement Agreement and find that the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million, then Century is entitled to full and complete reimbursement of

any and all payments it made to Ingersoll-Rand in excess of $25 million, with interest.

## REQUEST FOR RELIEF

WHEREFORE, Century respectfully requests that this Court enter a judgment in favor of Century declaring:

41. That the Oral Settlement Agreement is enforceable and that Ingersoll-Rand is bound by its terms; and

42. That the terms of the Oral Settlement Agreement are those that are set-forth in the Written Settlement Agreement attached hereto as Exhibit A.

IN THE ALTERNATIVE, Century respectfully requests that this Court:

43. Issue a declaration determining the respective rights and obligations of Century and Ingersoll-Rand concerning defense costs and indemnity payments for Underlying Bodily Injury Claims under the Century Policies, including without limitation:

    a.   Whether and to what extent Century has any coverage obligations under the Century Policies for Underlying Bodily Injury Claims;

    b.   Whether all preconditions to coverage, as set forth in the Century Policies, have been satisfied, including but not limited to the issue of whether the limits of all underlying insurance have been properly exhausted;

- 12 -

c.   Whether the maximum amount of coverage, if any, available for the Underlying Bodily Injury Claims under the Century Policies is limited to $25 million;

d.   Whether Century has any defense cost obligations under the Century Policies, and, if so, the extent of those obligations;

e.   The proper method for allocating any indemnity (or defense) payments that Century might be obligated to make under the Century Policies in connection with the Underlying Bodily Injury Claims; and

f.   Century's rights in connection with the control of the defense of the Underlying Bodily Injury Claims;

44.   Order Ingersoll-Rand to fully and completely reimburse Century for any and all payments made in excess of $25 million, with interest; and

45.   Grant all other relief that the Court may deem just, proper and equitable.

<u>**JURY DEMAND**</u>

Century demands a trial by jury on all issues.

<u>**DESIGNATION OF TRIAL ATTORNEY**</u>

Pursuant to Rule 4:25-4, Plaintiff hereby designates Martin F. Seigal, Esq. as trial counsel.

- 13 -

SIEGAL, NAPIERKOWSKI & PARK
Attorneys for Plaintiff,
Century Indemnity Company, as
successor to CCI Insurance
Company, successor to
Insurance Company of North
America.

By _____
       Martin F. Siegal, Esq.

Dated:  April 27, 2007

### CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to R. 4:5-1, I hereby certify that there is no
other action pending in any Court or arbitration proceeding
concerning the matter in controversy and none is contemplated.
Further, I know of no other party who should be joined in this
action.

_____
       Martin F. Siegal, Esq.

Dated:  April 27, 2007

- 14 -

*EXHIBIT A*

D R A F T
December 10, 2003

## CONFIDENTIAL AGREEMENT REGARDING
## CENTURY EXCESS POLICIES XBC 1904 AND XBC 42188

This CONFIDENTIAL AGREEMENT REGARDING CENTURY EXCESS POLICIES XBC 1904 AND XBC 42188 is made as of December __, 2003, by and between INGERSOLL-RAND COMPANY, whose principal place of business is at 200 Chestnut Ridge Road, Woodcliff Lake, NJ 07675-8738 ("I-R") and CENTURY INDEMNITY COMPANY AS SUCCESSOR TO CCI INSURANCE COMPANY AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA ("CENTURY"), whose principal place of business is at 1601 Chestnut Street, Philadelphia, PA 19101-1484. I-R and Century may hereafter be referred to individually as "Party" and collectively as "Parties."

### WITNESSETH:

WHEREAS, I-R faces claims and lawsuits from plaintiffs who allege that they suffered bodily injury from I-R products that allegedly exposed them to asbestos; and

WHEREAS, I-R and CENTURY, among others, entered into an agreement entitled "Interim Agreement Regarding Asbestos-Related Bodily Injury Cases" made as of January 15, 1993 ("Interim Asbestos Agreement").

WHEREAS, the purpose of the Interim Asbestos Agreement was to adopt a mechanism for allocating the responsibility for Defense Costs and Indemnity

- 2 -

Payments with respect to past, pending and future Asbestos-Related Bodily Injury Claims, as defined therein; and

WHEREAS, the insurance policies issued by CENTURY to I-R to which the Interim Asbestos Agreement applied were primary policies, the limits of which have now been exhausted; and

WHEREAS, CENTURY issued to I-R excess insurance policies XBC 1904 (1/1/66-1/1/69) and XBC 42188 (1/1/69-2/15/72) ("Century Excess Policies"); and

WHEREAS, the Parties to this Agreement believe that the insurance policies issued to I-R by Home Insurance Company ("Home") which underlie the Century Excess Policies ("Home Underlying Policies") either already are or may in the future be exhausted; and

WHEREAS, I-R also now faces claims and lawsuits from plaintiffs who allege that they suffered bodily injury from I-R products that allegedly exposed them back in the 1960's or 1970's to mixed dust, mineral dust, grain dust, silica and/or other deleterious substances, which claims may just be asbestos claims pled differently and/or may actually involve other contaminants either on their own or in combination with asbestos; and

WHEREAS, the Parties to this Agreement have different positions on various issues regarding alleged insurance coverage and their respective rights, duties and obligations, if any, under the Century Excess Policies; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise and accord and without prejudice to or waiver of their respective

- 3 -

positions in other matters, a mechanism for permanently allocating the responsibility for Defense Costs and Indemnity Payments in connection with Bodily Injury Claims under the Century Excess Policies;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises contained herein, and intending to be legally bound hereby, I-R and Century agree as follows:

1. <u>DEFINITIONS FOR PURPOSES OF THIS AGREEMENT ONLY</u>

    (a)    "Bodily Injury Claims" means those claims or lawsuits, or portions of claims or lawsuits, whenever filed, which seek monetary damages or other monetary relief from I-R for bodily injuries, illnesses, ailments, diseases or death therefrom which are alleged to have been caused, in whole or in part, by historic exposure to asbestos (or mixed dust, mineral dust, grain dust, silica, and/or other deleterious substances) for which I-R is allegedly responsible. "Bodily Injury Claims" shall not include, and I-R will not seek to recover from the Century Excess Policies, those portions of such suits and/or claims (or an entire suit and/or claim solely): (i) seeking injunctive, declaratory or other prospective or equitable relief and not seeking compensatory damages; (ii) arising out of a worker's compensation statute or similar statute or law; (iii) seeking recovery because of an alleged conspiracy between I-R and one or more other companies or persons not employed by I-R to suppress information regarding alleged dangers of bodily injury arising out of exposure to asbestos and/or other deleterious substances or other

- 4 -

alleged intentional misconduct; (iv) seeking punitive or exemplary damages, where such damages would not be insurable under the applicable state law; and/or (v) seeking recovery on the basis of an I-R contract to indemnify another entity unless such contract is approved in writing by CENTURY or is otherwise within the coverage of the Century Excess Policies.

If only a portion of a suit or claim falls within the definition of Bodily Injury Claims, then the Defense Costs and Indemnity Payments associated with such suit or claim shall be allocated in a fair and reasonable manner between the portion(s) of the suit or claim that fall within the definition of Bodily Injury Claims and the portion(s) of the suit or claim that fall outside that definition, and I-R will not seek to recover for the portion(s) of the suit or claim that fall outside that definition.

(b)     "Defense Costs" mean all reasonable and necessary expenses incurred in the defense of I-R for Bodily Injury Claims, including, without limitation, reasonable and necessary investigative expenses, attorneys' fees and expenses, court costs, disbursements and expert and other witness fees. "Defense Costs" do not include any fees, costs or expenses incurred by I-R for (i) its employees, consultants, and/or contractors to manage or generally administer the Bodily Injury Claims, (ii) its efforts to identify, secure, enforce, or interpret alleged coverage under

- 5 -

a policy of insurance, and/or (iii) the preparation or negotiation of this Agreement.

(c)    "Indemnity Payments" mean all payments for settlements or judgments payable pursuant to this Agreement, made by or on behalf of I-R to or for the benefit of plaintiffs and/or claimants in connection with Bodily Injury Claims.

(d)    "Effective Date" means the date when both I-R and CENTURY have executed counterpart originals of this Agreement.

(e)    "Home Underlying Policies" mean the Home insurance policies listed on Exhibit "A" annexed hereto.

(f)    "Century Excess Policies" defined above as Century Excess Policies XBC 1904 and XBC 42188 does not include other higher layer ACE USA Companies' policies. Such higher layer policies are not part of this Agreement.

As necessary to effect the purposes of this Agreement, each defined term stated in singular form shall include the plural form, and each defined term stated in plural form shall include the singular form

2.    CENTURY'S DEFENSE COSTS/INDEMNITY PAYMENT OBLIGATIONS

Two Century Excess Policies – XBC 1904 (1/1/66-1/1/69) and XBC 42188 (1/1/69-2/15/72) – are the subject of this agreement. The Parties agree that the first Century Excess Policy, XBC 1904, will pay up to $15 million in limits, and the second Century Excess Policy, XBC 42188, will pay up to $22.5 million in limits,

- 6 -

such that I-R may all together receive up to $37.5 million from those two Century Excess Policies.

Whenever any one of the Home Underlying Policies, listed on Exhibit A becomes exhausted for any one of the six Home time periods set forth in Exhibit A, CENTURY will pay 2.94% of Defense Costs and Indemnity Payments for Bodily Injury Claims thereafter incurred in lieu of the exhausted Home Underlying Policy pursuant to the Century Excess Policy that is excess of such Home Underlying Policy. CENTURY's obligation to make such payments for such exhausted Home time periods under either or both Century Excess Policies shall continue until the agreed limit for the Century Excess Policy involved has been exhausted. In no event, will CENTURY pay more than a combined total of Defense Costs and/or Indemnity Payments of $15 million under XBC 1904 or pay more than a combined total of Defense Costs and/or Indemnity Payments of $22.5 million under XBC 42188.

However, CENTURY agrees that once a Home time period set forth in Exhibit B under one of the Century Excess Policies is exhausted, and I-R allocates the 2.94% of Defense Costs and Indemnity Payments previously paid by that Home policy to the Century Excess Policy that is excess of such Home underlying policy, the entire agreed amount that Century Excess Policy (i.e., $15 million or $22.5 million) is potentially available to be paid to I-R under that Century Excess Policy. Upon exhaustion of either or both of the Century Excess Policies, the obligation to

- 7 -

pay Defense Costs and Indemnity Payments for such time period shall pass to I-R or to another insurance carrier of I-R.

As set forth above, the Parties agree that any payments for Defense Costs will erode the combined $37.5 million in agreed limits available under the Century Excess Policies per this Agreement, and in no event will the payment of Defense Costs be considered to be in excess of the combined $37.5 million in agreed limits available under the Century Excess Policies per the terms of this Agreement.

Under this Agreement, I-R agrees that CENTURY has the right to audit or review from time to time, either at I-R's offices in Woodcliff, New Jersey and/or at the offices of underlying defense counsel firms, any and all documentation in connection with Defense Costs and Indemnity Payments billed to Century under the Century Excess Policies. If such audit or review establishes that CENTURY has made overpayments for amounts that should not have been allocated to it, I-R will upon a written request from Century reimburse CENTURY within 60 days for any overpayments.

I-R has represented that at least one of the six Home time periods set forth in Exhibit A of the Home Underlying Policies (i.e., the time period 1/1/70-1/1/71) has already been exhausted. Whenever I-R believes that such a Home time period has been exhausted, I-R agrees as soon as practicable to provide to CENTURY a written certification to that effect together with written documentation that I-R believes is sufficient to document that exhaustion.

- 8 -

In reliance upon such representations, CENTURY agrees to pay previously invoiced Defense Costs and/or Indemnity Payments for Bodily Injury Claims under the terms of this Agreement for exhausted Home time period(s) within (30) days after the later of the effective date of this Agreement or the date that I-R provides written certification and documentation that I-R believes sufficient to show that a particular time period set forth in Exhibit B of the Home Underlying Policies has been exhausted. (I-R will also use its best efforts to obtain for CENTURY access to pertinent Home files bearing on exhaustion.)

In the event that it is determined that I-R was mistaken regarding the exhaustion of Home Underlying Policies, I-R agrees that CENTURY may stop paying Defense Costs and Indemnity Payments for Bodily Injury Claims for the time period(s) in question until it is, in fact, demonstrated that particular years of the Home Underlying Policies have been exhausted. If CENTURY so requests in writing, I-R will refund to CENTURY within 60 days any CENTURY payments determined not actually to have been owed by CENTURY.

The maximum percentage share allocable to the two Century Excess Policies combined – assuming complete exhaustion of all six Home Underlying Policies time periods – is 17.64% (i.e., six times 2.94%).

3.     PERMANENT AGREEMENT

This Agreement constitutes a final, permanent agreement and release between CENTURY and I-R for Bodily Injury Claims under Century Excess Policies XBC 1904 and XBC 42188. CENTURY's obligation to make payments under each

Century Excess Policy will terminate once I-R has exhausted the $15 million (or $22.5 million) limit available under that policy.

4.     EXHAUSTION OF AGREED LIMITS

The Parties recognize that the $37.5 million in agreed limits available under the Century Excess Policies, per the terms of this Agreement, can be exhausted both by payments made pursuant to this Agreement and by payments for claims outside the scope of this Agreement. Once those $37.5 million limits have been paid out, CENTURY will have no further coverage obligations for either type of claim. If CENTURY should determine that the agreed limits of the Century Excess Policies have been exhausted, CENTURY will promptly notify I-R.

5.     DUTIES OF CENTURY AND I-R IN CONNECTION WITH THE UNDERLYING DEFENSE EFFORT

The defense of Bodily Injury Claims shall be conducted reasonably and in good faith in the best interests of I-R with the objective of minimizing to the extent practicable total payouts for defense and indemnity and settlement payments for unmeritorious claims.

I-R will administer implementation of this Agreement. More specifically, I-R will have its defense counsel at the end of each calendar quarter send itemized billings to CENTURY for its percentage share of Defense Costs. I-R also will have its defense counsel send CENTURY itemized billings for its percentage share of Indemnity Payments on an as needed basis to effectuate settlements.

I-R shall require its defense counsel to submit detailed billings and provide periodic updates and detailed semi-annual status reports. Billings shall be required

- 10 -

to contain a description of each item or service performed, the date it was performed, the identity of the attorney or paralegal performing the service, the time spent upon the service, and the rate or rates charged for the service. Disbursements shall also be itemized. Notwithstanding the above, CENTURY retains the right to distribute billing guidelines to defense counsel, specifying further requirements and limitations on payments for services and disbursements. I-R and Century will consult with each other from time to time on whether the billing and reporting processes set forth above should be modified or improved in light of their practical experience with them.

I-R shall have settlement authority not to exceed $1 million for any one claimant or block of claimants, provided that the settlement amount is within underlying defense counsel's recommended case value(s). For authorization in excess of this amount, I-R shall obtain consent from CENTURY. If a disagreement or question should arise as to whether a settlement in excess of the above amounts should be entered into, the Parties will use their best efforts to reach a prompt and reasonable resolution of such disagreement or question.

Except in exigent circumstances, such as developments at an ongoing mediation or at trial, I-R shall, before reaching a settlement within its authority, (1) attempt to keep CENTURY informed of decisions to be made regarding settlement and of information received from defense counsel bearing upon whether settlement within certain ranges would or would not be advisable and (2) solicit the views and perspectives of CENTURY with respect to settlements that are being considered.

- 11 -

I-R shall also solicit the advice of CENTURY regarding the choice of defense counsel. I-R may replace defense counsel only with the approval of CENTURY. If a disagreement or question should arise as to decisions regarding the retention of defense counsel, the Parties will use their best efforts to reach a prompt and reasonable resolution of such disagreement or question.

I-R shall arrange for copies of the billings of defense counsel to be provided to CENTURY. If CENTURY objects to any part of any billing by defense counsel, it shall communicate such objection to I-R. I-R will then commence negotiations with defense counsel to try to reach a resolution of the objection. If CENTURY does not believe that I-R has reached a satisfactory resolution of its objection or if I-R declines to enter into negotiations with defense counsel, CENTURY shall be entitled to audit the billings, negotiate with defense counsel, and adjust disputed billing amounts. Any recoveries made from defense counsel shall be shared proportionately between CENTURY and I-R, and other funding carriers, if any, after deduction by CENTURY for its reasonable costs and expenses in accomplishing such recovery (not including salaries of its full-time employees).

6.    NO EVIDENCE; NO ADMISSION

This Agreement is a compromise mechanism for resolving issues related to defense and indemnity for Bodily Injury Claims. Except to the extent each Party is bound by this Agreement, each Party fully reserves, and does not waive, all of its rights and all of its defenses under and in connection with the Policies.

Nothing contained in this Agreement shall be deemed or construed to be an admission or concession by any Party that any claim or defense asserted or position

- 12 -

taken under any Policy is valid or correct, and, except to the extent that each Party is bound by this Agreement, neither this Agreement nor any provision hereof shall be deemed to be a waiver of any legal position which any Party may assert under the Century Excess Policies or under any other policies.

This Agreement and the fact that payments were made pursuant to this Agreement shall not be admissible in evidence in any suit, action or other proceeding, except as may be necessary to enforce the terms and provisions of this Agreement.

This Agreement shall not be construed as an admission of the validity of any claims, rights or defenses under any Policy.

7.    **BREACH CLAIMS**

Subject to the foregoing, and in addition to any waivers or modifications of rights provided herein, I-R waives and forever relinquishes any claim, demand, right and cause of action it may have against CENTURY for breach of contract, bad faith or punitive or treble damages related to the matters resolved by this Agreement. Both parties waive and forever relinquish any claim, demand, right and cause of action it may have against each other for any other contractual, tort or statutory liability predicated on the matters resolved by this Agreement.

8.    **CONFIDENTIALITY**

This Agreement is made as a result of on-going settlement negotiations and as a compromise and resolution of controversy between the Parties. This Agreement and its implementation are confidential and, without the prior written consent of both Parties or court order, may not be disclosed to anyone EXCEPT (a)

- 13 -

accountants, affiliates, attorneys, auditors, consultants, directors, employees, lenders, officers and underwriters of the Parties, (b) other carriers of I-R, and reinsurers (including reinsurers' agents, attorneys, auditors, employees, retrocessionaires and any persons, arbitrators and judges, federal or state, who may be involved in the reinsurance collection process or issues relating to the collection of reinsurance of CENTURY, and (c) regulators and governmental entities charged with licensing and/or regulation of the Parties, PROVIDED that any such disclosure shall be made, to the extent practical, subject to the same confidentiality as contemplated by this Agreement.

The Parties shall cooperate in protecting the confidentiality of this Agreement. If demand is made upon either Party by anyone to disclose the terms of this Agreement, such Party shall immediately notify the other Party of such demand. Either Party that wishes to resist disclosure of this Agreement, or any of its terms, may do so at its own expense, and the other Party will cooperate in connection therewith, including but not limited to joining in the filing of papers in opposition, supporting efforts to intervene and, in the event of an adverse judicial determination, joining in an appeal or effort to obtain permission to file an interlocutory appeal, provided that, unless a Party requesting cooperation is willing to pay a cooperating Party's reasonable and necessary attorneys' fees, a cooperating Party shall not be required to become involved to the extent of incurring more than incidental amounts of legal fees. Subject to the overall requirement to fully and

- 14 -

genuinely support protecting the confidentiality of this Agreement, no Party shall

be required to adopt specific supporting arguments that it does not accept.

9.    ENTIRE AGREEMENT

This Agreement constitutes the entire Agreement among the Parties

concerning the matters addressed herein and supersedes any and all prior

agreements, oral or written, between the Parties concerning the administration,

defense or indemnity of Bodily Injury Claims in connection with the Century Excess

Policies.

10.    SUBMISSION TO ARBITRATION

Both Parties shall have the right to resolve disputes arising under this

Agreement by arbitration before three arbitrators pursuant to the rules, procedures

and practices of the American Arbitration Association.  Any such arbitration

proceeding shall be held in New York, New York.  Each Party shall bear its own

arbitration costs and expenses.  An award rendered by a majority of arbitrators

appointed pursuant to this Agreement shall be final and binding upon the Parties,

and judgment on such award may be entered by either Party in any court having

jurisdiction.

The arbitration provisions of this Paragraph shall have no bearing on the

resolution of disputes and controversies between or among the Parties which do not

involve the enforcement or interpretation of this Agreement.

Any notices or correspondence in connection with this Agreement shall be

sent by email, fax or overnight mail in the first instance with a confirmation copy

sent by certified mail return receipt requested to the following individuals:

- 15 -

For I-R:        John Clary
                Ingersoll-Rand Company
                200 Chestnut Ridge Road
                Woodcliff Lake, NJ 07675-8738

For CENTURY:    Malcolm L. Myers
                ACE USA
                Two Liberty Place
                1601 Chestnut Street TL-ISA
                P.O. Box 7716
                Philadelphia, PA 19101-1484

## 11.   WAIVER OF CONTRIBUTION CLAIMS

CENTURY waives, and shall not assert, any and all claims for contribution

or indemnification for all or any part of payments made pursuant to this

Agreement, against any insurance carrier that issued an insurance policy to or for

the benefit of I-R, unless that other carrier asserts claims against CENTURY.

## 12.   INDEMNIFICATION OF CENTURY

I-R shall hold CENTURY harmless against, and agrees to indemnify

CENTURY for, all liability and expense with respect to any and all actions, suits,

claims, demands, and/or causes of action at law or in equity, of whatever nature or

kind, that any non-Party may now, or in the future, may make or have against

CENTURY which in any way arise out of or relate to this Agreement or the Bodily

Injury Claims.

Provided it does so in writing, CENTURY may at any time in its sole

discretion waive some or all of its indemnification rights under this Agreement.

Should CENTURY do so, the Parties agreed that this Agreement shall be deemed

never to have contained or provided for the waived indemnification rights.

- 16 -

13. LIQUIDATION, INSOLVENCY OR BANKRUPTCY

Should there ever be a liquidation, insolvency or bankruptcy of I-R, CENTURY will continue to abide by the terms of this Agreement, subject to the limitation that it is understood between the Parties that should I-R go into bankruptcy, CENTURY will not be obligated to pay more than a combined $8 million for Defense Costs and Indemnity Payments for Bodily Injury Claims in any one year. In such event, any payments owed for Defense Costs and Indemnity Payments for Bodily Injury Claims in excess of $8 million will be carried over to the next calendar year. Nothing in this Paragraph will be deemed by the Parties as either increasing or decreasing the $37.5 million in limits available under the Century Excess Policies per the terms of this Agreement.

14. NO THIRD PARTY RIGHTS

While this Agreement is binding to the Parties and their successors, nothing contained in this Agreement shall be construed to create or revive an enforceable right or cause of action in any person or entity not a signatory hereto.

15. NO CHANGES OR MODIFICATIONS

Subject to Paragraph 12, supra, no change, modification, deletion or addition to this Agreement shall be valid unless it is made in writing and executed by the Parties with the same formalities as this Agreement.

16. ARMS-LENGTH NEGOTIATION

This Agreement is the product of arms-length settlement negotiations between the Parties regarding a compromise of disputed claims. No Party shall be deemed to be the drafter of any provision or of the entire Agreement. No part of

- 17 -

this Agreement shall be construed against CENTURY on the basis of CENTURY's

identity as an insurance company or as the drafter of any part of this Agreement.

17. GOVERNING LAW

This Agreement, including any dispute regarding the applicability or scope of

the arbitration clause in Paragraph 12, shall be controlled by and interpreted to the

laws of the State of New York.

18. COUNTERPART ORIGINALS AND EXECUTION OF ADDITIONAL
DOCUMENTS

This Agreement may be executed in several counterparts, each of which shall

be deemed an original, but all of which together shall constitute one and the same

instrument. The Parties shall cooperate fully with each other in connection with

any matter arising under or in connection with this Agreement and shall make,

execute and deliver to each other any and all additional or other documents,

instruments or papers required to give full effect to this Agreement.

- 18 -

IN WITNESSETH THEREOF, the Parties have caused this Agreement to be duly executed as of date first set forth above, and the undersigned represent that they are authorized to execute and deliver this Agreement on behalf of their respective Party:

Ingersoll-Rand Company

By: _____

Century Indemnity Company, as Successor to CCI Insurance Company, as Successor to Insurance Company of North America

By: _____

2098726

- 19 -

### EXHIBIT A TO CONFIDENTIAL AGREEMENT REGARDING CENTURY
### EXCESS POLICIES XBC 1904 AND XBC 42188

| HOYT UNDERLYING POLICIES | PERCENTAGE ALLOCATION BY TIME PERIOD |
|---|---|
| HEC 9544890 | 1/1/66-1/1/67: 2.94%<br>1/1/67-1/1/68: 2.94%<br>1/1/68-1/1/69: 2.94% |
| HEC 9664310 | 1/1/69-1/1/70: 2.94%<br>1/1/70-1/1/71: 2.94%<br>1/1/71-1/1/72: 2.94% |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of April 2007, I caused true and correct copies of

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance

Company of North America (Century's) Complaint, Jury Demand, Designation of Trial Counsel,

Case Information Statement, and Certificate of Service to be served on the Clerk of the Civil

Court, Bergen County Superior Court via hand delivery.


Martin F. Siegal

# Civil Case Information Statement
## (CIS)

Use for initial Law Division - Civil Part pleadings (not Motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE:    CK    CG    CA | |
| CHG/CK NO: | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| | |
|---|---|
| Attorney Name/Pro Se Name<br>Martin F. Siegal, Esq. | Telephone Number<br>(856) 380-8900 |

| Firm Name (If Applicable)<br>Siegal Napierkowski & Park | County of Venue<br>**Bergen County** |
|---|---|

| Office Address    533 Fellowship Road, Suite 120<br>Mt. Laurel, New Jersey  08054<br>Fax Number    (856) 380-8901 | Docket Number (When available) |
|---|---|
| | Document Type<br>**Complaint** |
| | Jury Demand [ ] [X] Yes [ ] No |

| Name of Party (e.g. John Doe, Plaintiff)<br>**Plaintiff, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America** | CAPTION<br>Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America v. Ingersoll-Rand Company |
|---|---|

| Case Type Number<br>(see reverse side for listing)    508, 156 | IS THIS IS A PROFESSIONAL MALPRACTICE CASE? [ ]YES [ X ] NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A.2A-53A-27AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|
| Related Cases<br>Pending? [ ] Yes [X] No | If yes, List Docket<br>Numbers |
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? [ ] Yes [X] No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>[ ] NONE    [ ] UNKNOWN    N/A |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A.    DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP    [ ] YES [X] NO | IF YES, IS THAT RELATIONSHIP    [ ] EMPLOYER-EMPLOYEE    [ ] FRIEND/NEIGHBOR<br>[ ] FAMILIAL [ ] BUSINESS  OTHER (explain) _____ |
|---|---|

B.    DOES THE STATUE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?    [ ] YES    [X] NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITIES ACCOMMODATIONS?    [ ] YES    [X] NO    IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:_____

WILL AN INTERPRETER BE NEEDED? [ ] YES    [ X ] NO    IF YES, FOR WHAT LANGUAGE _____

ATTORNEY SIGNATURE

REVISED EFFECTIVE 3/1/04

**SIDE 2**     CIVIL CASE INFORMATION STATEMENT
(CIS)
Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES**     (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track 1 - 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 503 | COMMERCIAL TRANSACTION |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM OR UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 599 | CONTRACT |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |

**Track II – 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT -OTHER |

**Track III – 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV – Active Case Management by Individual Judge/450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL COVERAGE LITIGATION |
| 234 | FRT PLYWOOD LITIGATION |
| 245 | ACTIONS UNDER FEDERAL Y2K CT |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

**Mass Tort (Tract IV)**
| | |
|---|---|
| 240 | DIET DRUG |
| 241 | TOBACCO |
| 243 | LATEX |
| 246 | REZULIN |
| 247 | PROPULSID |
| 248 | CIBA GEIGY |
| 264 | PPA |
| 601 | ASBESTOS |
| 612 | BLOOD-CLOTTING SERUM |
| 702 | LEAD PAINT |

999    OTHER (Briefly describe nature of action) _____

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."