# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INGERSOLL-RAND COMPANY

                         Plaintiff,

              v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America)

                     Defendants.

Index No. 602770/06

**SUMMONS**

Plaintiff designated New York
County as the Place of trial.

The basis of the venue
is CPLR503(a).

TO THE ABOVE NAMED DEFENDANTS:

    You are hereby summoned to answer the complaint of plaintiff, Ingersoll-Rand
Company, in the above-captioned matter and to serve copies of your answer upon the
undersigned within twenty (20) days after the service of this summons and complaint, exclusive
of the day of service (or within thirty (30) days after the service of this summons and complaint
if not personally served upon you within the State of New York). In the event of your failure to
answer the complaint herein, judgment will be taken against you, by default, for the relief
demanded herein.

Dated: New York, New York.
      August 8, 2006

                              Yours, etc.,

                              McCarter & English, LLP

                     By:
                              Steven H. Weisman
                              Attorneys for Plaintiff
                              Ingersoll-Rand Company
                              245 Park Avenue, 27th Floor
                              New York, NY 10167-0001

NEW YORK
COUNTY CLERK'S OFFICE

AUG 8 2006

NOT COMPARED
WITH COPY FILED

MEI\5780115.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

INGERSOLL-RAND COMPANY

                         Plaintiff,

            v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America)

                         Defendant.

Index No. 602770/06

**COMPLAINT FOR
DECLARATORY
JUDGMENT AND
FURTHER RELIEF**

---

      Plaintiff Ingersoll-Rand Company ("Ingersoll-Rand"), as and for its Complaint against defendant, Century Indemnity Company (as successor to CCI Insurance Company, successor to Insurance Company of North America) ("Century"), alleges:

## NATURE OF ACTION

    1.    Ingersoll-Rand brings this civil action, pursuant to Section 3001 of the Civil Practice Law and Rules, for a declaration (a) that mere oral communications between the parties concerning certain insurance coverage matters is not tantamount to a settlement agreement; and (b) as to Century's obligation, under excess liability insurance policies sold to Ingersoll-Rand, to reimburse Ingersoll-Rand for defense costs incurred and/or indemnify Ingersoll-Rand in connection with certain underlying claims, and for damages arising from Century's breach of the insurance policies sold to Ingersoll-Rand.

NEW YORK
COUNTY CLERK'S OFFICE

AUG 8 2006

NOT COMPARED
WITH COPY FILED

## THE PARTIES

2.     Ingersoll-Rand is incorporated under the laws of New Jersey and maintains its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey.  Ingersoll-Rand transacts business in various states, including New York.

3.     Until 1972, which includes the years during which the subject insurance policies were sold to Ingersoll-Rand, Ingersoll-Rand had its principal place of business at 11 Broadway, New York, New York.

4.     On information and belief, defendant Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century") is incorporated under the laws of Pennsylvania and maintains its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania.

5.     On information and belief, at all times relevant hereto, Century has been licensed to transact insurance business in the State of New York.

## JURISDICTION AND VENUE

6.     This Court possesses personal jurisdiction over defendant pursuant to Section 302 of the Civil Practice Law and Rules, and pursuant to other statutory, procedural and common law grounds.

7.     Venue properly lies in this county under Section 503(a) and/or 503(c) of the Civil Practice Law and Rules.

8.     This Court possesses subject matter jurisdiction over this declaratory judgment action under Section 3001 of the Civil Practice Law and Rules.

-2-

## UNDERLYING ASBESTOS CLAIMS AGAINST INGERSOLL-RAND

9.      Ingersoll-Rand has been named as a defendant in asbestos-related liability claims in New York County and elsewhere ("Asbestos Claims"), in which Ingersoll-Rand has incurred defense and/or indemnity costs that Century has not reimbursed and/or for which it has otherwise refused to provide insurance coverage in accordance with its contractual obligations.

10.     Ingersoll-Rand has incurred damages as a result of settlements of certain Asbestos Claims. Additionally, Ingersoll-Rand has incurred, and is likely to incur in the future, defense costs, including but not limited to, counsel fees and other litigation costs in connection with the Asbestos Claims. Ingersoll-Rand also has incurred, and may continue to incur in the future, indemnity costs in connection with the Asbestos Claims.

11.     Each of the Asbestos Claims alleges or allegedly involves third-party bodily injury caused by an "accident" or caused by or resulting from an "occurrence" within the meaning of the excess liability policies Century sold to Ingersoll-Rand.

12.     Each of the Asbestos Claims alleges or allegedly involves third-party bodily injury taking place during one or more of the policy periods set forth in the excess liability policies Century sold to Ingersoll-Rand.

13.     Century is liable to reimburse Ingersoll-Rand for defense costs and to indemnify Ingersoll-Rand under the subject excess liability policies for the Asbestos Claims.

14.     Ingersoll-Rand has given notice to Century of the Asbestos Claims in accordance with its notice obligations under the subject excess liability policies and has otherwise complied with all conditions precedent to coverage therein.

15.     Coverage for the Asbestos Claims is not barred under the subject excess liability policies by any policy exclusion or condition.

16.     Century has failed to recognize or has otherwise disputed its obligations to pay Ingersoll-Rand's defense costs in connection with the Asbestos Claims; and/or has failed to recognize or otherwise disputed its obligations to fully indemnify Ingersoll-Rand for its liabilities in connection with the Asbestos Claims; and/or has failed to perform its obligations up to the total occurrence and/or aggregate limits of liability set forth in the subject excess liability policies.

17.     Each Asbestos Claim against Ingersoll-Rand is a separate occurrence pursuant to governing law.

18.     No single Asbestos Claim has resulted in combined defense and indemnity costs of $10 million or more.

## THE INSURANCE POLICIES

19.     Century sold to Ingersoll-Rand two multi-year excess liability insurance policies:

    a.     Policy No. XBC 1904 for the period January 1, 1966 through January 1, 1969 ("1966 Excess Policy");

    and

    b.     Policy No. XBC 42188 for the period January 1, 1969 through January 1, 1972. This policy was subsequently extended for an additional period from January 1, 1972 to February 15, 1972 (collectively, the "1969 Excess Policy") (together with the "1966 Excess Policy", the "Excess Policies").

20.     The Excess Policies were sold to Ingersoll-Rand through a New York insurance broker formerly known as Marsh & McLennan, Inc.

21.     The Excess Policies require Century to provide coverage for Ingersoll-Rand's defense costs and/or indemnity obligations arising from the Asbestos Claims.

-4-

22.    The 1966 Excess Policy provides that the occurrence and product hazard aggregate liability limits apply separately for each year of the multi-year policy period:

> [I]n no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000 (Ten Million Dollars) on account of any one occurrence or accident.
>
> There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

1966 Excess Policy, Endorsement No. 3.

23.    The 1966 Excess Policy provides Ingersoll-Rand with limits of $10 million each occurrence and in the aggregate for product hazard claims for each policy year or a total of $30 million in limits for product hazard claims for the entire 1966 Excess Policy period.

24.    The 1969 Excess Policy provides that the occurrence and product hazard aggregate limits apply separately for each year of the multi-year policy period:

> [I]n no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000 (Ten Million Dollars) on account of any one occurrence or accident.
>
> There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

1969 Excess Policy, Endorsement No. 3.

25.    Subsequent to the issue date of the 1969 Excess Policy, Century issued a new Endorsement No. 3 (dated August 28, 1969), which increased the policy's limits from $10

-5-

million to $15 million for each occurrence and in the aggregate for product hazard claims for each policy year, effective July 10, 1969 ("August Endorsement").

26.    The August Endorsement, therefore, creates a short term period of January 1, 1969 through July 10, 1969 during which time the limits of $10 million for each occurrence and in the aggregate for product hazard claims were in effect.

27.    The August Endorsement provides Ingersoll-Rand with limits of $15 million for each occurrence and in the aggregate for product hazard claims for each policy year, or a total of $45 million in limits for product hazard claims from July 15, 1969 through January 1, 1972.

28.    Century also issued a certificate, effective January 1, 1972, that extended the 1969 Excess Policy through February 15, 1972:

> In consideration of an additional premium of $1066.00 it is agreed that the expiration date of the policy is amended to read: 2/15/72.
>
> Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

29.    The short term period created by Century's certificate provides Ingersoll-Rand with additional limits of $15 million each occurrence and in the aggregate for product hazard claims.

30.    The Excess Policies provide a total of $100 million in limits for each occurrence and in the aggregate for product hazard claims.

## THE PARTIES' COVERAGE DISPUTE

31.    The Excess Policies obligate Century to provide coverage for defense and indemnity costs arising from the Asbestos Claims.

-6-

32.     Since on or about January 30, 2004, Century has been reimbursing Ingersoll-Rand under the Excess Policies for the defense and indemnity costs it has incurred in connection with the Asbestos Claims.

33.     The Home Insurance Company sold to Ingersoll-Rand two multi-year excess liability policies that directly underlie the Century Excess Policies ("Home Policies"). Each Home Policy period was three (3) years that correspond to the 1966 Excess Policy and the 1969 Excess Policy periods; *i.e.*, January 1, 1966 through January 1, 1969 and January 1, 1969 through January 1, 1972. Consistent with the Century Excess Policies, the Home Policies also annualize the per occurrence and aggregate liability limits, *i.e.*, they provide liability limits of $5 million for each occurrence and $5 million in the aggregate for each annual period.

34.     Century, therefore, required Ingersoll-Rand to exhaust $5 million in each annual period before Century would begin to pay the share of defense and/or indemnity costs for the Asbestos Claims allocated to that annual period. In other words, Century required Ingersoll-Rand to exhaust a total of $30 million of limits under the Home Policies before it would pay 100% of the share of defense and indemnity costs allocated to the entire six (6) year Century Excess Policy period. Century, nevertheless, refuses to satisfy its obligation to provide Ingersoll-Rand with annualized policy limits that the Excess Policies provide for the Asbestos Claims.

35.     The calculation of Century's reimbursement payments to Ingersoll-Rand is based on the allocation percentages set forth in the confidential January 15, 1993 Interim Agreement Regarding Asbestos-Related Bodily Injury Claims to which Ingersoll-Rand and Century are parties and Century was the lead insurer.

36.    Ingersoll-Rand maintains that Century is obligated to pay up to $100 million under the Excess Policies toward Ingersoll-Rand's defense and/or indemnity costs incurred in connection with the Asbestos Claims.

37.    Century disputes it is obligated to pay more than $25 million under the Excess Policies toward Ingersoll-Rand's defense and/or indemnity costs incurred in connection with the Asbestos Claims.

38.    Century previously claimed that it was willing to compromise the dispute. Indeed, Century claims that the parties reached a meeting of the minds and agreements on the essential terms and conditions of a resolution to the dispute.  Upon information and belief, Century claims that the parties reached this alleged resolution at a November 13, 2003 meeting between Century's Assistant Vice President of Claims ("Century's Claims Handler") and one of Ingersoll-Rand's consultants.

39.    Having worked with Ingersoll-Rand for approximately fifteen (15) years, Century's Claims Handler, on information and belief, was under no illusions and had full knowledge of who at Ingersoll-Rand had authority to accept any settlement offer.

40.    During the meeting, Century's Claims Handler proposed a dollar amount for Ingersoll-Rand to consider as a resolution of the parties' dispute over the liability limits available under the Excess Policies for the Asbestos Claims.  There was no proposed resolution of any other essential terms or conditions of the purported settlement.  Before the end of the meeting, Ingersoll-Rand's Risk Manager joined the discussion and asked Century's Claims Handler to put his proposal in writing so that Ingersoll-Rand could consider it.

-8-

41.    On or about December 11, 2003, Century's Claims Handler sent to Ingersoll-Rand's consultant a written proposal together with a proposed draft settlement agreement to which comments were requested (together, "Settlement Proposal").

42.    Shortly thereafter, in or about late-December, 2003, Ingersoll-Rand's consultant spoke with Century's Claims Handler and advised that Ingersoll-Rand would not agree to Century's Settlement Proposal.

43.    At the March 24, 2004 meeting concerning the Asbestos Claims, Ingersoll-Rand's counsel spoke with Century's Claims Handler and again confirmed that Ingersoll-Rand had not, and would not agree to Century's Settlement Proposal.

44.    On or about October 28, 2004, Century's Claims Handler had dinner with Ingersoll-Rand's Vice President of Tax and Legislative Affairs and Ingersoll-Rand's Risk Manager at which time Ingersoll-Rand again confirmed that Century's Settlement Proposal was unacceptable.

45.    Century, thereafter, continued to reimburse Ingersoll-Rand for its allocable share of the defense and indemnity costs incurred in the Asbestos Claims.

46.    During this two and one-half (2-1/2) year period, Century never asked Ingersoll-Rand to execute the proposed settlement agreement or provide any comments to the proposed settlement agreement.

47.    On information and belief, Century has no basis to believe it reached an oral agreement with Ingersoll-Rand to resolve the parties' dispute over the total limits available under the Excess Policies for the Asbestos Claims.

48.    On information and belief, Century does not dispute that the Excess Policies obligate Century to pay for defense costs and/or indemnity costs incurred with respect to the Asbestos Claims.

49.    On information and belief, Century does not dispute that it is obligated to pay at least $25 million under the Excess Policies for the Asbestos Claims.

50.    On information and belief, Century has not paid more than $25 million for the Asbestos Claims.

51.    On information and belief, Century has paid, or shortly will pay, Ingersoll-Rand $25 million toward its defense and indemnity costs incurred under the Asbestos Claims.

52.    On information and belief, Century could not have been misled and have detrimentally relied upon this purported oral agreement to pay to date what it claims is its total obligation under the Excess Policies for the Asbestos Claims.

### FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT – NO SETTLEMENT AGREEMENT)

53.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 52.

54.    Plaintiff seeks a judicial determination that the parties did not reach any settlement agreement with respect to Century's obligations under the Excess Policies for the Asbestos Claims.

55.    An actual and justiciable controversy presently exists between the parties concerning the proper construction of their settlement discussions concerning the scope of the parties' rights and obligations under the Excess Policies with respect to the Asbestos Claims. This Court's determination is necessary and proper at this time so the parties can ascertain their

respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action, moreover, presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

56.    The issuance of relief by this Court will resolve the existing controversy between the parties.

57.    In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

### SECOND CAUSE OF ACTION
### (DECLARATORY JUDGMENT – RIGHTS AND OBLIGATIONS UNDER THE EXCESS POLICIES)

58.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 57.

59.    Plaintiff seeks a judicial determination of the parties' rights and obligations with regard to an actual controversy arising out of the Excess Policies and the Asbestos Claims.

60.    An actual and justiciable controversy presently exists between the parties concerning the proper construction of the Excess Policies and the scope of the parties' rights and obligations under the Excess Policies with respect to the Asbestos Claims. This Court's determination is necessary and proper at this time so the parties can ascertain their respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action, moreover, presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

61.    The issuance of relief by this Court will resolve the existing controversy between the parties.

-11-

62.    In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

63.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 62.

64.    Century breached its contractual obligations under the Excess Policies by refusing wrongfully to reimburse Ingersoll-Rand for all defense and indemnity costs and damages arising from the Asbestos Claims.

65.    As a direct and proximate result of Century's breach of contract, Ingersoll-Rand has incurred and will incur substantial actual costs and compensatory and consequential damages, and such costs and damages continue.

WHEREFORE, plaintiff respectfully prays judgment as follows:

### WITH RESPECT TO THE FIRST AND SECOND CAUSES OF ACTION

1.    That this Court, pursuant to Section 3017(b) of the Civil Practice Law and Rules, enter a judgment declaring that the parties' did not reach a settlement agreement with respect to any rights and obligations of the parties under the Excess Policies for the Asbestos Claims and directing Century to comply fully with its defense and indemnity obligations under the Excess Policies.

### WITH RESPECT TO THE THIRD CAUSE OF ACTION

2.    That this Court enter a judgment awarding compensatory and consequential damages to Ingersoll-Rand as a result of Century's breach of its contractual obligation to provide coverage for Ingersoll-Rand's defense and indemnity costs arising from the Asbestos Claims.

-12-

**WITH RESPECT TO ALL CAUSES OF ACTION**

3.     For such orders, including injunctive relief, necessary to preserve the Court's jurisdiction over the parties and the issues herein; for pre-judgment and post-judgment interest according to law; for attorneys' fees, filing fees, and costs of this suit; and for such other and further relief as the Court deems equitable and proper.

Dated: August 8, 2006

MCCARTER & ENGLISH, LLP

By: _Steven H. Weisman_

Steven H. Weisman, Esq.
245 Park Avenue
27th Floor
New York, NY 10167-0001
(212) 609-6800
(212) 609-6921 (f)
Attorneys for Plaintiff

-13-

MEI\5780745.1

# EXHIBIT E

# AFFIDAVIT OF SERVICE

State of New York                    County of New York

Supreme Court

Index Number: 602770/06
Date Filed: _____

Plaintiff:
**Ingersoll-Rand Company**
vs.
Defendant:
**Century Indemnity Company**

For:
Steven Weisman, Esq
McCarter & English
245 Park Avenue, 27th Floor
New York, NY 10167q

Received by TALONE & ASSOCIATES on the 9th day of August, 2006 at 2:25 pm to be served on **CENTURY INDEMNITY COMPANY - 436 Walnut Street - Philadelphia, PA 19106.**

I, George Oster, being duly sworn, depose and say that on the **9th day of August, 2006 at 3:20 pm, I:**

Served the within named Corporation by delivering a true copy of the **Summons & Complaint** to Eleanor Betz as Legal Assistant of the within named corporation, in compliance with state statutes.

**Additional Information pertaining to this Service:**
Served on Eleanor Betz as legal assistant. She was very cooperative, signed and gave phone# 215-640-2616.

**Description of Person Served:** Age: 51, Sex: F, Race/Skin Color: White, Height: 5' 4, Weight: 115, Hair: Blonde, Glasses: N

I am over the age of 18 and have no interest in the above action.

George Oster
Process Server

Subscribed and Sworn to before me on the 9th day of
August, 2006 by the affiant who is personally known to
me.

NOTARY PUBLIC

TALONE & ASSOCIATES
423 South 15th Street
Philadelphia, PA 19146-1637
(215) 546-6080

Our Job Serial Number: 2006002182

NOTARIAL SEAL
MICHAEL D. TALONE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 12, 2007

Copyright © 1992-2003 Database Services, Inc. - Process Server's Toolbox V5.5q

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

INGERSOLL-RAND COMPANY

Plaintiff,

v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America)

Defendants.

---

Index No. 601653/07

**SUMMONS**

Plaintiff designated New York
County as the Place of trial.

The basis of the venue
is CPLR503(a).

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned to answer the complaint of plaintiff, Ingersoll-Rand
Company, in the above-captioned matter and to serve copies of your answer upon the
undersigned within twenty (20) days after the service of this summons and complaint, exclusive
of the day of service (or within thirty (30) days after the service of this summons and complaint
if not personally served upon you within the State of New York). In the event of your failure to
answer the complaint herein, judgment will be taken against you, by default, for the relief
demanded herein.

Dated: New York, New York
       May 11, 2007

Yours, etc.,

McCarter & English, LLP

By: _____
    Steven H. Weisman
    Attorneys for Plaintiff
    Ingersoll-Rand Company
    245 Park Avenue, 27th Floor
    New York, NY 10167-0001

MEI 5780115v.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

INGERSOLL-RAND COMPANY

                Plaintiff,

          v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America)

                Defendant.

Index No. _____

**COMPLAINT FOR
DECLARATORY
JUDGMENT AND
FURTHER RELIEF**

---

Plaintiff Ingersoll-Rand Company ("Ingersoll-Rand"), as and for its Complaint against

defendant, Century Indemnity Company (as successor to CCI Insurance Company, successor to

Insurance Company of North America) ("Century"), alleges:

## NATURE OF ACTION

1.    Ingersoll-Rand brings this civil action, pursuant to Section 3001 of the Civil

Practice Law and Rules, for a declaration (a) that mere oral communications between the parties

concerning certain insurance coverage matters is not tantamount to a settlement agreement; and

(b) as to Century's obligation, under excess liability insurance policies sold to Ingersoll-Rand, to

reimburse Ingersoll-Rand for defense costs incurred and/or indemnify Ingersoll-Rand in

connection with certain underlying claims, and for damages arising from Century's breach of the

insurance policies sold to Ingersoll-Rand.

MEI 5780745v.1

## THE PARTIES

2.      Ingersoll-Rand is incorporated under the laws of New Jersey and maintains its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey. Ingersoll-Rand transacts business in various states, including New York.

3.      Until 1972, which includes the years during which the subject insurance policies were sold to Ingersoll-Rand, Ingersoll-Rand had its principal place of business at 11 Broadway, New York, New York.

4.      On information and belief, defendant Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century") is incorporated under the laws of Pennsylvania and maintains its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania.

5.      On information and belief, at all times relevant hereto, Century has been licensed to transact insurance business in the State of New York.

## JURISDICTION AND VENUE

6.      This Court possesses personal jurisdiction over defendant pursuant to Section 302 of the Civil Practice Law and Rules, and pursuant to other statutory, procedural and common law grounds.

7.      Venue properly lies in this county under Section 503(a) and/or 503(c) of the Civil Practice Law and Rules.

8.      This Court possesses subject matter jurisdiction over this declaratory judgment action under Section 3001 of the Civil Practice Law and Rules.

MEI 5780745v.1

## UNDERLYING ASBESTOS CLAIMS AGAINST INGERSOLL-RAND

9.    Ingersoll-Rand has been named as a defendant in asbestos-related liability claims in New York County and elsewhere ("Asbestos Claims"), in which Ingersoll-Rand has incurred defense and/or indemnity costs that Century has not reimbursed and/or for which it has otherwise refused to provide insurance coverage in accordance with its contractual obligations.

10.    Ingersoll-Rand has incurred damages as a result of settlements of certain Asbestos Claims.  Additionally, Ingersoll-Rand has incurred, and is likely to incur in the future, defense costs, including but not limited to, counsel fees and other litigation costs in connection with the Asbestos Claims.  Ingersoll-Rand also has incurred, and may continue to incur in the future, indemnity costs in connection with the Asbestos Claims.

11.    Each of the Asbestos Claims alleges or allegedly involves third-party bodily injury caused by an "accident" or caused by or resulting from an "occurrence" within the meaning of the excess liability policies Century sold to Ingersoll-Rand.

12.    Each of the Asbestos Claims alleges or allegedly involves third-party bodily injury taking place during one or more of the policy periods set forth in the excess liability policies Century sold to Ingersoll-Rand.

13.    Century is liable to reimburse Ingersoll-Rand for defense costs and to indemnify Ingersoll-Rand under the subject excess liability policies for the Asbestos Claims.

14.    Ingersoll-Rand has given notice to Century of the Asbestos Claims in accordance with its notice obligations under the subject excess liability policies and has otherwise complied with all conditions precedent to coverage therein.

15.    Coverage for the Asbestos Claims is not barred under the subject excess liability policies by any policy exclusion or condition.

-3-

16.    Century has failed to recognize or has otherwise disputed its obligations to pay Ingersoll-Rand's defense costs in connection with the Asbestos Claims; and/or has failed to recognize or otherwise disputed its obligations to fully indemnify Ingersoll-Rand for its liabilities in connection with the Asbestos Claims; and/or has failed to perform its obligations up to the total occurrence and/or aggregate limits of liability set forth in the subject excess liability policies.

17.    Each Asbestos Claim against Ingersoll-Rand is a separate occurrence pursuant to governing law.

18.    No single Asbestos Claim has resulted in combined defense and indemnity costs of $10 million or more.

### THE INSURANCE POLICIES

19.    Century sold to Ingersoll-Rand two multi-year excess liability insurance policies:

a.    Policy No. XBC 1904 for the period January 1, 1966 through January 1, 1969 ("1966 Excess Policy");

and

b.    Policy No. XBC 42188 for the period January 1, 1969 through January 1, 1972. This policy was subsequently extended for an additional period from January 1, 1972 to February 15, 1972 (collectively, the "1969 Excess Policy") (together with the "1966 Excess Policy", the "Excess Policies").

20.    The Excess Policies were sold to Ingersoll-Rand through a New York insurance broker formerly known as Marsh & McLennan, Inc.

21.    The Excess Policies require Century to provide coverage for Ingersoll-Rand's defense costs and/or indemnity obligations arising from the Asbestos Claims.

-4-

MEI 5780745v.1

22. The 1966 Excess Policy provides that the occurrence and product hazard aggregate liability limits apply separately for each year of the multi-year policy period:

> [I]n no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000 (Ten Million Dollars) on account of any one occurrence or accident.

> There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

1966 Excess Policy, Endorsement No. 3.

23. The 1966 Excess Policy provides Ingersoll-Rand with limits of $10 million each occurrence and in the aggregate for product hazard claims for each policy year or a total of $30 million in limits for product hazard claims for the entire 1966 Excess Policy period.

24. The 1969 Excess Policy provides that the occurrence and product hazard aggregate limits apply separately for each year of the multi-year policy period:

> [I]n no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000 (Ten Million Dollars) on account of any one occurrence or accident.

> There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

1969 Excess Policy, Endorsement No. 3.

25. Subsequent to the issue date of the 1969 Excess Policy, Century issued a new Endorsement No. 3 (dated August 28, 1969), which increased the policy's limits from $10

-5-

MEI 5780745v.1

million to $15 million for each occurrence and in the aggregate for product hazard claims for each policy year, effective July 10, 1969 ("August Endorsement").

26.    The August Endorsement, therefore, creates a short term period of January 1, 1969 through July 10, 1969 during which time the limits of $10 million for each occurrence and in the aggregate for product hazard claims were in effect.

27.    The August Endorsement provides Ingersoll-Rand with limits of $15 million for each occurrence and in the aggregate for product hazard claims for each policy year, or a total of $45 million in limits for product hazard claims from July 15, 1969 through January 1, 1972.

28.    Century also issued a certificate, effective January 1, 1972, that extended the 1969 Excess Policy through February 15, 1972:

> In consideration of an additional premium of $1066.00 it is agreed that the expiration date of the policy is amended to read: 2/15/72.
>
> Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

29.    The short term period created by Century's certificate provides Ingersoll-Rand with additional limits of $15 million each occurrence and in the aggregate for product hazard claims.

30.    The Excess Policies provide a total of $100 million in limits for each occurrence and in the aggregate for product hazard claims.

## THE PARTIES' COVERAGE DISPUTE

31.    The Excess Policies obligate Century to provide coverage for defense and indemnity costs arising from the Asbestos Claims.

32.     Since on or about January 30, 2004, Century has been reimbursing Ingersoll-Rand under the Excess Policies for the defense and indemnity costs it has incurred in connection with the Asbestos Claims.

33.     The Home Insurance Company sold to Ingersoll-Rand two multi-year excess liability policies that directly underlie the Century Excess Policies ("Home Policies"). Each Home Policy period was three (3) years that correspond to the 1966 Excess Policy and the 1969 Excess Policy periods; *i.e.*, January 1, 1966 through January 1, 1969 and January 1, 1969 through January 1, 1972. Consistent with the Century Excess Policies, the Home Policies also annualize the per occurrence and aggregate liability limits, *i.e.*, they provide liability limits of $5 million for each occurrence and $5 million in the aggregate for each annual period.

34.     Century, therefore, required Ingersoll-Rand to exhaust $5 million in each annual period before Century would begin to pay the share of defense and/or indemnity costs for the Asbestos Claims allocated to that annual period. In other words, Century required Ingersoll-Rand to exhaust a total of $30 million of limits under the Home Policies before it would pay 100% of the share of defense and indemnity costs allocated to the entire six (6) year Century Excess Policy period. Century, nevertheless, refuses to satisfy its obligation to provide Ingersoll-Rand with annualized policy limits that the Excess Policies provide for the Asbestos Claims.

35.     The calculation of Century's reimbursement payments to Ingersoll-Rand is based on the allocation percentages set forth in the confidential January 15, 1993 Interim Agreement Regarding Asbestos-Related Bodily Injury Claims to which Ingersoll-Rand and Century are parties and Century was the lead insurer.

-7-

36.    Ingersoll-Rand maintains that Century is obligated to pay up to $100 million under the Excess Policies toward Ingersoll-Rand's defense and/or indemnity costs incurred in connection with the Asbestos Claims.

37.    Century disputes it is obligated to pay more than $25 million under the Excess Policies toward Ingersoll-Rand's defense and/or indemnity costs incurred in connection with the Asbestos Claims.

38.    Century previously claimed that it was willing to compromise the dispute. Indeed, Century claims that the parties reached a meeting of the minds and agreements on the essential terms and conditions of a resolution to the dispute.  Upon information and belief, Century claims that the parties reached this alleged resolution at a November 13, 2003 meeting between Century's Assistant Vice President of Claims ("Century's Claims Handler") and one of Ingersoll-Rand's consultants.

39.    Having worked with Ingersoll-Rand for approximately fifteen (15) years, Century's Claims Handler, on information and belief, was under no illusions and had full knowledge of who at Ingersoll-Rand had authority to accept any settlement offer.

40.    During the meeting, Century's Claims Handler proposed a dollar amount for Ingersoll-Rand to consider as a resolution of the parties' dispute over the liability limits available under the Excess Policies for the Asbestos Claims.  There was no proposed resolution of any other essential terms or conditions of the purported settlement.  Before the end of the meeting, Ingersoll-Rand's Risk Manager joined the discussion and asked Century's Claims Handler to put his proposal in writing so that Ingersoll-Rand could consider it.

MEI 5780745v.1

41.     On or about December 11, 2003, Century's Claims Handler sent to Ingersoll-Rand's consultant a written proposal together with a proposed draft settlement agreement to which comments were requested (together, "Settlement Proposal").

42.     Shortly thereafter, in or about late-December, 2003, Ingersoll-Rand's consultant spoke with Century's Claims Handler and advised that Ingersoll-Rand would not agree to Century's Settlement Proposal.

43.     At the March 24, 2004 meeting concerning the Asbestos Claims, Ingersoll-Rand's counsel spoke with Century's Claims Handler and again confirmed that Ingersoll-Rand had not, and would not agree to Century's Settlement Proposal.

44.     On or about October 28, 2004, Century's Claims Handler had dinner with Ingersoll-Rand's Vice President of Tax and Legislative Affairs and Ingersoll-Rand's Risk Manager at which time Ingersoll-Rand again confirmed that Century's Settlement Proposal was unacceptable.

45.     Century, thereafter, continued to reimburse Ingersoll-Rand for its allocable share of the defense and indemnity costs incurred in the Asbestos Claims.

46.     During this two and one-half (2-1/2) year period, Century never asked Ingersoll-Rand to execute the proposed settlement agreement or provide any comments to the proposed settlement agreement.

47.     On information and belief, Century has no basis to believe it reached an oral agreement with Ingersoll-Rand to resolve the parties' dispute over the total limits available under the Excess Policies for the Asbestos Claims.

-9-

48.    On information and belief, Century does not dispute that the Excess Policies obligate Century to pay for defense costs and/or indemnity costs incurred with respect to the Asbestos Claims.

49.    On information and belief, Century does not dispute that it is obligated to pay at least $25 million under the Excess Policies for the Asbestos Claims.

50.    On information and belief, Century has not paid more than $25 million for the Asbestos Claims.

51.    On information and belief, Century has paid, or shortly will pay, Ingersoll-Rand $25 million toward its defense and indemnity costs incurred under the Asbestos Claims.

52.    On information and belief, Century could not have been misled and have detrimentally relied upon this purported oral agreement to pay to date what it claims is its total obligation under the Excess Policies for the Asbestos Claims.

### FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT – NO SETTLEMENT AGREEMENT)

53.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 52.

54.    Plaintiff seeks a judicial determination that the parties did not reach any settlement agreement with respect to Century's obligations under the Excess Policies for the Asbestos Claims.

55.    An actual and justiciable controversy presently exists between the parties concerning the proper construction of their settlement discussions concerning the scope of the parties' rights and obligations under the Excess Policies with respect to the Asbestos Claims. This Court's determination is necessary and proper at this time so the parties can ascertain their

-10-

respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action, moreover, presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

56.    The issuance of relief by this Court will resolve the existing controversy between the parties.

57.    In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

### SECOND CAUSE OF ACTION
### (DECLARATORY JUDGMENT – RIGHTS AND OBLIGATIONS UNDER THE EXCESS POLICIES)

58.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 57.

59.    Plaintiff seeks a judicial determination of the parties' rights and obligations with regard to an actual controversy arising out of the Excess Policies and the Asbestos Claims.

60.    An actual and justiciable controversy presently exists between the parties concerning the proper construction of the Excess Policies and the scope of the parties' rights and obligations under the Excess Policies with respect to the Asbestos Claims. This Court's determination is necessary and proper at this time so the parties can ascertain their respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action, moreover, presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

61.    The issuance of relief by this Court will resolve the existing controversy between the parties.

-11-

62.    In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

63.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 62.

64.    Century breached its contractual obligations under the Excess Policies by refusing wrongfully to reimburse Ingersoll-Rand for all defense and indemnity costs and damages arising from the Asbestos Claims.

65.    As a direct and proximate result of Century's breach of contract, Ingersoll-Rand has incurred and will incur substantial actual costs and compensatory and consequential damages, and such costs and damages continue.

WHEREFORE, plaintiff respectfully prays judgment as follows:

### WITH RESPECT TO THE FIRST AND SECOND CAUSES OF ACTION

1.    That this Court, pursuant to Section 3017(b) of the Civil Practice Law and Rules, enter a judgment declaring that the parties' did not reach a settlement agreement with respect to any rights and obligations of the parties under the Excess Policies for the Asbestos Claims and directing Century to comply fully with its defense and indemnity obligations under the Excess Policies.

### WITH RESPECT TO THE THIRD CAUSE OF ACTION

2.    That this Court enter a judgment awarding compensatory and consequential damages to Ingersoll-Rand as a result of Century's breach of its contractual obligation to provide coverage for Ingersoll-Rand's defense and indemnity costs arising from the Asbestos Claims.

-12-

## WITH RESPECT TO ALL CAUSES OF ACTION

3.      For such orders, including injunctive relief, necessary to preserve the Court's

jurisdiction over the parties and the issues herein; for pre-judgment and post-judgment interest

according to law; for attorneys' fees, filing fees, and costs of this suit; and for such other and

further relief as the Court deems equitable and proper.

Dated:  May 11, 2007

MCCARTER & ENGLISH, LLP

By: _Steven Weisman_

Steven H. Weisman, Esq.
245 Park Avenue
27th Floor
New York, NY 10167-0001
(212) 609-6800
(212) 609-6921 (f)
Attorneys for Plaintiff

-13-

*Index No.* _____    *Year 20*____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INGERSOLL-RAND COMPANY

Plaintiff(s)

v.

CENTURY INDEMNITY COMPANY (as successor to CCI Insurance Company,
successor to Insurance Company of North America)

Defendants.

**SUMMONS: COMPLAINT FOR DECLARATORY JUDGEMENT AND FURTHER RELIEF**

**McCARTER & ENGLISH, LLP**
Plaintiff, Ingersoll-Rand Company.

*Attorneys for*

245 PARK AVENUE
NEW YORK, NEW YORK 10167
(212) 609-6800

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York
State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the
annexed document are not frivolous.*

*Dated:* _____    Signature _____

Print Signer's Name _____

*Service of a copy of the within* _____    *is hereby admitted.*

*Dated:* _____

_____
*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐  *that the within is a (certified) true copy of a*
NOTICE OF  *entered in the office of the clerk of the within named Court on*    20___
ENTRY

☐  *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF  *Hon.*                                    *one of the judges of the within named Court,*
SETTLEMENT  *at*
          *on*                    20___    *, at*            *M.*

*Dated:*

    ME1 6399834v.1

                                        **McCARTER & ENGLISH, LLP**

                                *Attorneys for*

                                        245 PARK AVENUE
                                        NEW YORK, NEW YORK 10167
                                        (212) 609-6800

*To:*

*Attorney(s) for*

# EXHIBIT G

STATE OF NEW YORK
INSURANCE DEPARTMENT
One Commerce Plaza
Albany, NY 12257

STATE OF NEW YORK
Supreme Court, County of New York

..................................................................................................................

Ingersoll-Rand Company                                                                                601653/07

                                    against                          Plaintiff(s)

Century Indemnity Company

                                                                         Defendant(s)

..................................................................................................................

RE :  Century Indemnity Company

Attorney for Plaintiff(s) and Defendant  please take notice as follows:

Sirs :
Attorney for Plaintiff(s) is hereby advised of acknowledgement of service upon me of
Summons and Complaint in the above entitled action on May 18, 2007 at New York,
New York. The $40 fee is also acknowledged.

Original to Attorney for Plaintiff(s) :

      McCarter & English, LLP
      245 Park Avenue, 27th Floor
      New York,  New York 10167
Pursuant to the requirement of section 1212 of the Insurance Law, Defendant is hereby
notified of service as effected above. A copy of the paper is enclosed.

Duplicate to  Defendant :

      Saverio M. Rocca, Esq.
      Century Indemnity Company
      ACE USA Corp. Disputes, TL35M
      1601 Chestnut Street
      Philadelphia,  Pennsylvania 19103

                              *Salvatore Castiglione*

                              by Salvatore Castiglione
                              Assistant Deputy Superintendent & Chief

Dated Albany, New York, May 21, 2007
413380          C.A.#185217

# EXHIBIT H

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

## INGERSOLL-RAND COMPANY

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE COMMITTEE ON OPINIONS

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. BER-L-37910-89

INGERSOLL-RAND COMPANY,

Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

Defendants.

---X

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. BER-L-39310-89

INGERSOLL-RAND COMPANY,

Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, et al.,

Defendants.

---X

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. BER-L-05918-90

INGERSOLL-RAND COMPANY,

Plaintiff,

v.

COMMERCIAL UNION INSURANCE
COMPANY, et al.,

Defendants.

---X

**OPINION**

DECIDED: November 16, 1995

Karim G. Kaspar for plaintiff Ingersoll-Rand
Company (Lowenstein, Sandler, Kohl, Fisher &
Boylan, attorneys)

Robert B. Flynn for defendant Allstate
Insurance Company (Cuyler, Burk, attorneys)

FITZPATRICK, J.S.C.

This matter comes before the court by way of cross-motions for summary judgment filed by Ingersoll-Rand ("I-R") and General Reinsurance ("General Re"). I-R is seeking summary judgment on its request for a declaration that General Re is liable for eight million dollars, plus defense costs, attorneys' fees and pre-judgment interest, pursuant to an excess policy, Policy No. X-2420 ("Policy X-2420"), and endorsements issued to I-R extending coverage from August 4, 1954 to January 1, 1961.

In addition, I-R is seeking a declaration that it is obligated to pay only one self-insurance retention ("SIR") before the insurers would have to provide coverage. General Re has opposed I-R's motion and has filed a cross-motion seeking a declaration that its limit of liability is one million dollars and that it does not have to reimburse I-R for defense costs in excess of the one million dollar per occurrence limit. Because discovery in this matter is incomplete and there are factual issues which must be resolved before resolving General Re's potential liability, I-R's motion for summary judgment for a declaration that it is entitled to eight million dollars in indemnity is denied. However, the court will address the issues regarding the interpretation of Policy X-2420 at this stage in order to facilitate an orderly resolution of the issues that remain to be decided.

2

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

With regard to I-R's claim that the maximum potential liability of General Re under Policy X-2420 is $8 million dollars, the court's analysis of the competing claims must necessarily begin with the policy of insurance issued by General Re. It is undisputed that General Re issued Policy X-2420 and subsequent endorsements providing coverage to I-R from August 5, 1954 through January 1, 1961. In addition, it is clear that General Re collected a premium from I-R for each period of coverage afforded under Policy X-2420. See Endorsements 2 - 10 attached to plaintiff's initial brief submitted on November 1, 1994. Accordingly, I-R argues that it is entitled to summary judgment, declaring that General Re's total exposure under Policy X-2420 is $8 million. The court agrees.

In opposition to plaintiff's motion and in support of its cross-motion, General Re argues that the entire loss arising out of asbestos claims constitutes one single occurrence, therefore, assuming coverage is established, the maximum available is $1 million. In addition, General Re relies on the language of Endorsement #10 which states as follows: "Item 3 of the Declarations of this contract is amended to read as follows: 'Item 3 contract period -- from April 1, 1960 to January 1, 1961, 12:01 a.m.'"

Moreover, General Re argues that the interpretation sought by I-R is contrary to New York law as interpreted and applied by New Jersey's Appellate Division in *Diamond Shamrock Chemicals v. Aetna*, 258 *N.J.Super*, 167, at 225-26 (App. Div. 1992), *certif. denied*, 134

*N.J.*, 481 (1993). In *Diamond Shamrock*, several carriers, including General Re, underwrote three-year policies of insurance with a per occurrence limit, during the 1960's. Diamond, like I-R, argued that the per occurrence limit renewed each year, thus subjecting the insurers to liability for the policy limits multiplied by the number of years that the policies were in force. The court held that a single application of each policy's per occurrence limit was applicable to the single occurrence, notwithstanding the multi-year policies. *Id.*, at 225.

In addition to the three-year policies, the court addressed the merits of Diamond Shamrock's claim that a policy issued by American Re-Insurance for a term of one month created an additional policy period and an additional occurrence limit of liability. The court stated:

[T]his brief extension was simply to provide an additional 30 day period of coverage, extending the same per occurrence limit for the additional month. This was an extension of an existing policy, not the issuance of a new one. The extension was intended to permit Diamond to obtain coverage elsewhere. The binder makes it clear that no new policy was issued. The effect of the extension was to continue the policy in force, not to increase coverage.

*Diamond Shamrock Chemicals v. Aetna*, 258 *N.J.Super*, 167, at 225-26]

In contrast to the brief extension of coverage of one month in *Diamond Shamrock*, the policy of insurance in this case was extended to cover six separate periods, varying in duration, for which I-R paid premiums. Neither the policy language, nor the endorsements subsequently issued expressly answers this question. Absent clear

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

and unambiguous policy language in Policy X-2420 evidencing an intent of General Re to limit its liability for losses incurred to $1 million, Policy X-2420 should be interpreted in accordance with the reasonable expectation of I-R. Accordingly, the court finds that the maximum potential exposure of General Re under Policy X-2420 and its endorsements is $8,000,000. A.B.S. Clothing Collection, Inc. v. Home Ins. Co., 34 Cal.Rptr.2d 166 (Court of Appeals, Second District Division 7, 1995).

Next, the court will address the competing claims of the parties with regard to the applicable SIR. I-R argues that notwithstanding the fact that eight occurrences have occurred for purposes of determining General Re's $8 million in total limits, it need only pay one $50,000 SIR because Policy X-2420 is a single policy responding to one occurrence for determining its SIR. This position is contradictory. Accordingly, the court finds that each separate $1 million policy period is subject to a separate corresponding $50,000 SIR.

Finally, the court will address the issue of whether and to what extent the eight separate $1 million policy limits are implicated by the claims made by I-R. Initially, it should be noted that this court's choice of law with respect to the point at which coverage is deemed to be triggered under each policy is at issue.

In support of the contention that New York law should apply, General Re argues that this court is faced with a choice of law problem because the courts of New York and New Jersey have rendered

conflicting opinions regarding the point at which coverage is triggered for purposes of Policy X-2420. General Re notes, and I-R concurs, that New Jersey courts endorse the continuous trigger theory as set forth in Owens-Illinois, Inc. v. United Ins. Co., et al., 138 N.J. 437 (1994). General Re relies upon a federal court decision adopting the injury in fact trigger, American Home Prods. Corp. v. Liberty Mutual Ins. Co., 565 F.Supp. 1485 (S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984), as representing New York law on the trigger-of-coverage issue. Because Policy X-2420 was negotiated, issued and delivered in New York, General Re argues that pertinent New Jersey case law mandates application of New York law to interpret the insurance policy at issue.

Conversely, I-R argues that there is no real conflict of laws because the New York Court of Appeals, in an opinion decided six years after American Home Products, left the issue of trigger of coverage unresolved, noting that such issue has not been decided by a New York Appellate Court. Continental Cas. Co. v. Rapid American Corp., 609 N.E.2d 506 (N.Y. 1993). Since there is no true conflict, I-R argues that this court should apply New Jersey law. In the alternative, even if there were a conflict of laws, I-R argues that Policy X-2420 should be interpreted under New Jersey law because New Jersey has a more significant interest in this litigation under Section 6 of the Restatement Second.

It is apparent to the court that the laws of New York and New Jersey appear to conflict on the trigger-of-coverage issue. As a result, the court will analyze the parties' competing claims

6

5

A-3

# MEALEY'S LITIGATION REPORTS
## INSURANCE

under Section 6 of the Restatement (Second) which states that the court is to consider the following factors in making a choice of law determination:

(a) The needs of the interstate and international systems;

(b) The relevant policies of the forum;

(c) The relevant policies of other interested states in determining the particular issue;

(d) The protection of the justified expectations;

(e) The basic policies underlying the particular field of law;

(f) Certainty, predictability and uniformity of result; and

(g) Ease in the determination and application of the law to be applied.

In addition, the Restatement further states that the following contacts should be taken into account:

(a) The place of contracting;

(b) The place of negotiating the contract;

(c) The place of performance;

(d) The location of the subject matter of the contract; and

(e) The domicile, nationality, place of incorporation and place of business of the parties.

After considering the factors set forth in the Restatement, it is apparent to the court that the majority of factors weigh in

7

favor of applying New York law to the trigger-of-coverage issue presently in controversy.

As set forth in General Re's brief, the pertinent contacts that this insurance contract has with New York is that it was negotiated, issued and delivered in New York. At the time of contracting, both General Re and I-R were headquartered in New York. Moreover, both of I-R's insurance brokers during the relevant time period were located in New York. In addition, it does not appear that the asbestos claims made that underlie this insurance coverage action bear any special relationship to any particular jurisdiction. Furthermore, the choice of New York law in this action furthers the justified expectations of and certainty and predictability to the parties to the insurance policy at issue. Accordingly, the court finds that I-R must establish injury in fact to trigger coverage under Policy X-2420.

Because this court has decided that the injury-in-fact approach to trigger of coverage, as set forth in American Home, applies to Policy X-2420, I-R's request for summary judgment is denied. The court will address the discovery and other disputes pertinent to this issue and other issues not addressed in this letter opinion at a status conference to be set by the court. The court is particularly interested in determining the parties' respective positions as to whether a special Discovery Master would be helpful in light of the requirement that actual injury must be proven as determined by applying New Jersey choice of law principles. It appears that nothing in the New York cases prevents

8

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

this court from referring this matter to a Special Master for

purposes of determining a fair allocation.

Counsel for plaintiff shall prepare an Order consistent with

these findings.

Dated: November _16_, 1995.

Patrick F.X. Fitzpatrick, JSC

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CENTURY INDEMNITY COMPANY,

2006 Civ. No. 0424 (SAS
date filed 1/20/06

**Plaintiff,**

**COMPLAINT**

-v-

**JURY TRIAL DEMANDED**

CLEARWATER INSURANCE COMPANY,

Defendant.

-------------------------------------------------------------x

Plaintiff Century Indemnity Company, by its attorneys, Mound Cotton Wollan & Greengrass, as and for its complaint, alleges:

## NATURE OF THE ACTION

1.      This is a diversity action wherein plaintiff seeks to recover damages for money due and owing to it pursuant to a contract of reinsurance between the parties.

## THE PARTIES

2.      Plaintiff Century Indemnity Company ("Century") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania. Century is licensed to do business in the State of New York.

3.      Defendant Clearwater Insurance Company ("Clearwater") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut. Clearwater is licensed to do business in the State of New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

5.      This is an action instituted in part pursuant to 28 U.S.C. § 2201 and Rule 57of the Federal Rules of Civil Procedure seeking declaratory relief in a case of actual controversy to determine the respective rights and liabilities of the parties pursuant to a contract of reinsurance.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) and § 1391(c).

## FACTUAL BACKGROUND

7.      Insurance Company of North America ("INA"), predecessor-in-interest to Century, issued excess policy number XPL 90 86 to its insured, Pfizer, Inc. ("Pfizer"), effective February 1, 1967 to October 1, 1969 (the "Policy"). Pfizer's principal place of business is in New York.

8.      Upon information and belief the Policy was facultatively reinsured.

9.      Reinsurance is a contractual arrangement under which one insurer, termed the "cedent" or reinsured," transfers or cedes to another insurer, termed the "reinsurer," part or all of one or more risks that the cedent has assumed under one or more insurance policies.   In facultative reinsurance, the ceding insurer purchases reinsurance for part of, or all of, a single insurance policy.

10.      Upon information and belief, Prudential Insurance Company of Great Britain ("Prudential"), predecessor-in-interest to Clearwater, formerly Odyssey Reinsurance Corporation, issued a facultative certificate to INA reinsuring INA's exposure under the Policy.

2

11. Upon information and belief, Prudential reinsures the Policy for "all losses under XPL with INA retaining 2% of ea *[sic]* and every loss and reinsurer contributing 98% of ea *[sic]* and every loss."

12. Upon information and belief, in exchange for Prudential's facultative reinsurance, premium was paid to Prudential by INA.

**COUNT I**

**BREACH OF CONTRACT**

13. As a result of claims against Pfizer, Century has made certain payments in connection with the Policy.

14. Century has billed Clearwater $2,940,000, representing Clearwater's share of Century's payments to Pfizer.

15. Clearwater has failed and refused to pay its share of the Pfizer claims as demanded by Century.

16. Clearwater is in breach of its reinsurance obligations by failing and refusing to indemnify Century.

17. By reason of the foregoing, Century has been damaged in the sum of $2,940,000.

**COUNT II**

**DECLARATORY JUDGMENT**

18. Century repeats and realleges the allegations set forth in paragraphs 16 through 20 as though fully set forth herein.

19. Due to Clearwater's refusal to pay its share of the Pfizer claims, Century believes that Clearwater will deny its contractual obligation to pay future amounts billed in connection with the Policy.

3

20.    Century is therefore entitled to a declaration pursuant to 28 U.S.C. § 2201 that Clearwater is contractually obligated to make timely payments to Century for amounts that become due in the future.

WHEREFORE, Century demands judgment:

1.    On Count I in favor of Century for the amount of $2,940,000 plus interest;

2.    On Count II for a declaration that Clearwater is contractually obligated to make timely payments to Century for amounts that become due in the future;

3.    For the costs and disbursements of this action; and

4.    For such other and further relief as this Court deems just and proper.

Dated: January 19, 2006
       New York, New York

Respectfully submitted,

_____
Lawrence S. Greengrass (LG 7199)
Wayne R. Glaubinger (WG 0454)
David W. Kenna (DK 1400)
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for Plaintiff
Century Indemnity Company

4

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



CENTURY INDEMNITY COMPANY,
as successor to CCI Insurance Company, as
successor to Insurance Company of North America
1601 Chestnut Street
Two Liberty Place
Philadelphia, PA 19103

05 CV 9393

               Plaintiff,

CIVIL ACTION NO.

**COMPLAINT**

        V.

GENERAL REINSURANCE CORPORATION,
695 East Main Street
Stamford, CT 06904

JURY TRIAL DEMANDED

RECEIVED
NOV 0 4 2005
U.S.D.C. S.D.N.Y.
CASHIERS

             Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff Century Indemnity Company, as successor to CCI Insurance Company, as

successor to Insurance Company of North America ("Century Indemnity"), by way of its

Complaint against Defendant General Reinsurance Corporation ("Gen Re"), avers as follows:

## NATURE OF THE ACTION

1.     This is a breach of contract action in which Century Indemnity is seeking money

damages from Gen Re under a reinsurance contract.  An actual controversy exists between the

parties as more fully described below.

## PARTIES

2.     Century Indemnity is a corporation duly organized under the laws of the

Commonwealth of Pennsylvania, with its principal place of business in Philadelphia,

Pennsylvania. Century Indemnity is the successor to Insurance Company of North America ("INA").

3.    On information and belief, Gen Re is a corporation organized under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

## JURISDICTION AND VENUE

4.    This Honorable Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), as the matter involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c).

## STATEMENT OF FACTS

6.    Century Indemnity's predecessor, INA, issued a Blanket Liability and Automobile Policy, Policy No. LAB 1-92-07, to, *inter alia*, Norris Industries, Inc. (n/k/a TriMas Corporation), covering the period August 1, 1965 to August 1, 1968 (the "Norris Policy").

7.    The Norris Policy had a single $10 million limit covering bodily injury and property damage liability for the three year period.

8.    Century Indemnity facultatively reinsured the Norris Policy with Gen Re.

9.    Facultative reinsurance is a transaction whereby the reinsurer (here, Gen Re), indemnifies the reinsured company (here, Century Indemnity) against all or part of the loss that the reinsured company may sustain under one or more of its insurance policies that the reinsured company has issued to its insureds. In return, the reinsurer receives a portion of the premium that was paid to the reinsured by its insured(s) under the underlying insurance policy(ies).

10.    Upon information and belief, Gen Re reinsured the Norris Policy for 100% of the $10 million policy limit, less a retention of $100,000 for property damage and $300,000 for bodily injury.

11.    Norris Industries has been involved in three lawsuits related to environmental contamination at the Stringfellow site in California. Two of the suits were private actions and the third was an Environmental Protection Agency cost recovery action.

12.    Century Indemnity and Norris Industries engaged in protracted settlement negotiations, and eventually agreed to a settlement with respect to insurance coverage for the environmental pollution claims at, *inter alia*, the Stringfellow site.

13.    On November 5, 2001, Century Indemnity billed Gen Re for $1,814,339 under the facultative reinsurance. That amount is Gen Re's share of loss and expense under the Norris Policy for Century Indemnity's settlement with Norris Industries with respect to the Stringfellow site.

14.    Gen Re has refused to pay the amount owed to Century Indemnity under the facultative reinsurance contract reinsuring the Norris Policy.

## CAUSE OF ACTION – BREACH OF CONTRACT

15.    Century Indemnity incorporates by reference the allegations set forth above in paragraphs one through fourteen as though fully set forth herein.

16.    By written contract and/or agreement, and for certain valuable consideration, Gen Re reinsured Century Indemnity with respect to the Norris Policy.

17.    Gen Re breached said contractual obligation by failing to pay the amount billed under the facultative reinsurance contract with respect to the Stringfellow site.

-3-

18.    As a direct and proximate result of Defendant Gen Re's breach of contract,

Century Indemnity suffered damages in an amount of $1,814,339, plus interest as provided by

law.

**WHEREFORE**, Plaintiff Century Indemnity hereby demands:

(1)    Judgment against Defendant Gen Re in the amount of $1,814,339; and

(2)    An award of prejudgment interest as provided by law; costs of this action,
including attorneys' fees; and any such other and further relief as this Court deems just and
proper.

<u>**JURY DEMAND**</u>

Plaintiff Century Indemnity hereby demands a trial by jury as to all issues so triable.

Dated: November 4, 2005

Respectfully submitted,

**WHITE AND WILLIAMS LLP**
*Attorneys for Plaintiff,*
*Century Indemnity Company*

By: _____
Rafael Vergara (RV-4098)
One Penn Plaza
35th Floor, Suite 3508
New York, NY 10019
Phone: (212) 244-9500
Fax: (212) 631-4436
e-mail: vergarar@whiteandwilliams.com

<u>OF COUNSEL:</u>
Thomas A. Allen
Edward T. Fisher
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA  19103
Attorneys for Plaintiff,
Century Indemnity Company
(215) 864-7001/6310

DOCS_PH 1808976v.2