UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INGERSOLL-RAND COMPANY,

                      Plaintiff,

        v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America),

                    Defendant.

Case No. 07-CV-4825 (LTS)(THK)

**AFFIDAVIT OF DANIEL L. WEIKER IN OPPOSITION TO DEFENDANT'S DISMISSAL MOTION**

State of New Jersey    )
                        )   ss:
County of Bergen     )

Daniel L. Weiker, being duly sworn, deposes and says:

    1.    I am the Complex Claims Manager at Ingersoll-Rand Company ("Ingersoll Rand"). My responsibilities include coordinating with Ingersoll Rand's insurers the payment and/or reimbursement of defense and indemnity costs arising from asbestos-related claims against Ingersoll Rand ("Asbestos Claims"). I am fully familiar with the facts set forth herein.

    2.    I submit this Affidavit in support of Ingersoll Rand's opposition to Century Indemnity Company's ("Century") motion to stay or dismiss this action in favor of Century's action pending in the Superior Court of New Jersey, Bergen County.

    3.    Attached hereto as Exhibit A is a true copy of Century's 1966 excess liability policy, policy number XBC 1904, issued for the periods from January 1, 1966 to January 1, 1969 ("1966 Century Policy").

    4.    Attached hereto as Exhibit B is a true copy of Century's 1969 excess liability policy, policy number XBC 42188, issued for the periods from January 1, 1969 to January 1,

1972, subsequently extended for an additional period from January 1, 1972 to February 15, 1972 ("1969 Century Policy," and together with the 1966 Century Policy, the "Century Policies").

5.     At the time Century sold the Century Policies, Ingersoll-Rand maintained its principal place of business at 11 Broadway, New York, New York. *See, e.g.,* Exh. C.

6.     Ingersoll Rand purchased the Century Policies through the New York insurance producer formerly known as Marsh & McLennan, Inc. *See* Exhs. A and B.

7.     The Bergen County courts handle no Asbestos Claims, and no Bergen County resident acts as an Asbestos Claims plaintiff.

8.     Attached hereto as Exhibit D is a true copy of Ingersoll-Rand's Asbestos Claims Monthly Report for May 2007.

9.     Ingersoll Rand litigates a total of 102,310 Asbestos Claims, of which Ingersoll Rand litigates 19,458 (approximately 20%) in New York and only 305 (3/10 of 1%) in New Jersey. *See* Exhibit D.

10.     Ingersoll Rand has incurred millions of dollars of indemnity and defense costs arising from the Asbestos Claims. Ingersoll Rand's New York Asbestos Claims, to date, give rise to 24% of Ingersoll-Rand's asbestos-related indemnity costs, while Ingersoll Rand's New Jersey Asbestos Claims, to date, give rise to only 1% of Ingersoll Rand's asbestos-related indemnity costs.

11.     Century refuses to reimburse Ingersoll Rand for asbestos-related indemnity and defense costs exceeding approximately $25 million. Century, therefore, refuses to reimburse Ingersoll Rand for any post-July 2006 indemnity costs.

12.     At a July 17, 2006 New York dinner among Century representative Malcolm Myers and Ingersoll Rand representatives John Clary (Director, Products Liability), John

Fromholtz (Director of Risk Management) and myself, Ingersoll Rand again rejected the Century settlement proposal allegedly memorialized in the draft settlement agreement attached to Century's Complaint. *See* Exhibit A to Century's Memorandum of Law in Support of Its Motion to Dismiss. Mr..Myers acknowledged Ingersoll Rand's position and concluded the discussion by stating he hoped to resolve the dispute amicably.

13.    As of July 19, 2006 -- the date Century initially filed the Complaint in its New Jersey state court action -- Century had paid less than $23 million, under the Century Policies, in indemnity and defense costs arising from the Asbestos Claims. Century paid such costs between, at the earliest, 60 and 90 days after receiving Ingersoll Rand's bills. Century, therefore, would not have paid $25 million, the minimum liability limits available under the Century Policies for the Asbestos Claims, until October or November 2006.

_____
Daniel L. Weiker

Sworn and Subscribed to
before me this ⎽5⎽ day of July, 2007

_____
NOTARY PUBLIC

DEBORAH HESSLER-WELCH
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 10/7/2008

MEI 6554979v.1

# EXHIBIT A



# Insurance Company of North America

PHILADELPHIA, PENNSYLVANIA S.O.—New York – 505
Marsh & McLennan, Inc.

**DUPLICATE**     CERTIFICATE OF EXCESS INSURANCE NO. 380094-0   XBC-1904

Certificate of excess insurance issued by **INSURANCE COMPANY OF NORTH AMERICA** (herein called the company) to:

{ Name:   Ingersoll-Rand Company
{ Address: 11 Broadway, New York City, New York     (herein called the insured).

A. WHEREAS, See Endorsement No. 2 attached     (herein called the primary carrier(s)) has/have issued to the insured a policy(ies) of insurance being identified as:

| Type of Policy | Policy Number | Policy Period |
|---|---|---|

See Endorsement No. 2 attached

(which policy(ies), including renewals or replacements thereof on the same basis, is/are herein called the primary insurance) and providing coverage described in Column I of the Description of Coverage below:

### Description of Coverage

| COLUMN I | COLUMN II | COLUMN III |
|---|---|---|
| Primary Insurance | Limits & Application | Excess Limits | Total Limits |

See Endorsement Nos. 2 and 3 attached

(With respect to each coverage, the bodily injury limit applicable per accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder, provided such accidents occur during the term of this certificate, except as provided by aggregate limits which, when inserted in Column II, apply to all accidents during each certificate year.)

B. NOW, this certificate is further to indemnify the insured, in accordance with the applicable insuring agreements of the primary insurance, against excess loss as specified in Column II above, as fully and to all intents and purposes as though the primary insurance, including any endorsements issued to form a part thereof, had been issued for the limits set forth in Column III above, and as though the company had assumed and insured the upper limits of the primary insurance, to wit: the amounts specified in Column II which apply in excess of the amounts specified in Column I.

C. The premium due the company upon acceptance of this certificate shall be $ ~~1200.00~~ computed as follows: 12,000

Flat Charge for Policy Period

Minimum Annual Premium $                                    Minimum Premium $ 500.00.

(Fixed premiums, subject to applicable minimum premiums, shall not be subject to adjustment except in the event of cancelation of this certificate. Copies of audits of premiums earned under the primary insurance shall also be given to the company insofar as such audits relate to the premium for this certificate.)

D. Notwithstanding anything in this certificate or the primary insurance to the contrary, it is agreed that:

(1) The following endorsement(s) is/are attached hereto and made a part hereof at inception:

(a) No. 1 – Nuclear Energy Liability Exclusion Endorsement (Form LC-346).
No. 2 – Schedule of Underlying Policies
No. 3 – Limit of Liability Endorsement

E. It is agreed that:

(1) The insurance afforded by this certificate shall, except as herein stated, follow that of the primary insurance in all respects, including (a) changes by endorsement which in any manner affect this excess insurance, (b) notice of accident, if in the insured's opinion such accident is likely to involve liability on the part of the company and (c) adjustment and settlement or defense of claims, suits or proceedings. Anything in this certificate or in the primary insurance to the contrary notwithstanding, the company shall not be called upon to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the insured but the company shall have the right and shall be given the opportunity to associate with the insured in the defense or control of any claim, suit, or proceeding relative to an accident where the claim, suit or proceeding involves, or appears reasonably likely to involve, the company in which event the insured and the company shall cooperate in all things in the defense of such claim, suit or proceeding. Should any claim, suit or proceeding arise, appearing likely to involve the company, no obligation shall be incurred on behalf of the company without its consent being first obtained.

(2) The insurance afforded by this certificate shall not apply to expense for which insurance is provided in the primary insurance.

(3) The company shall be furnished with copies of the primary insurance and shall be furnished from time to time with copies of all endorsements thereto which in any manner affect this excess insurance as soon as practicable following the issuance of such endorsements.

(4) This certificate may be canceled by the insured by surrender thereof to the company or any of its authorized agents, or by mailing to the company written notice stating when thereafter such cancelation shall be effective, it being agreed, however, that in the event of cancelation or termination of the primary insurance, this certificate, to the extent of such cancelation or termination, shall cease to apply at the same time without notice to the insured. This certificate may be canceled by the company by mailing to the first named insured at the address shown in this certificate written notice stating when, not less than    Ten    (10) days thereafter, such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancelation stated in the notice shall become the end of the term of this certificate. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing.

(5) The term of this certificate, unless otherwise canceled or terminated, shall be from    January 1, 1966    to    January 1, 1969 , 12:01 A.M., standard time, at the address of the insured as stated herein.

IN WITNESS WHEREOF, INSURANCE COMPANY OF NORTH AMERICA has caused this certificate to be signed by its president and secretary at Philadelphia, Pennsylvania, and countersigned by a duly authorized agent of the company.

_Secretary_                                    _President_

Countersigned:

LC-358a    4-23-62   Printed in U.S.A.        Authorized Agent.

 **INSURANCE COMPANY OF NORTH AMERICA**

ENDORSEMENT NO. 2

In consideration of the premium charged, it is agreed that the schedule of prior excess policies and limits, including renewals thereof, is as follows:

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| Home Ins. Co. HEC-954-48-90 1/1/66 – 1/1/69 | Excess Umbrella Liability | $ 5,000,000. Bodily Injury Liability and Property Damage Liability or both combined, Per Occurrence, Excess of Primary Underliers |

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | Jan. 1, 1966 | at the hour specified in the policy. | Part of Policy No. XBC-1904 |
|---|---|---|---|
| Issued to | Ingersoll-Rand Company | | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

*H. Richard Heilman*
President.



**INSURANCE COMPANY OF NORTH AMERICA**

## ENDORSEMENT NO. 3

### LIMIT OF LIABILITY ENDORSEMENT

This certificate shall further indemnify the "Insured" against loss in excess of the limits afforded by the "Primary" policies set forth on Endorsement No. 2 during the term of this certificate which the "Insured" may sustain because of Bodily Injury to or the death of any person or persons, and injury to or destruction of property in accordance with the applicable Insuring Agreement of the "Primary" policies, but in no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000. (Ten Million Dollars) on account of any one occurrence or accident.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| Jan. 1, 1966 | at the hour specified in the policy. | XBC-1904 |
| Issued to | Ingersoll-Rand Company | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1661

*H. Richard Heilman*
President.

# EXHIBIT B

# Insurance Company of North America

3/4/jk

PHILADELPHIA. PENNSYLVANIA, S.O. New York – 505
Marsh & McLennan, Inc. 380094 (

CERTIFICATE OF EXCESS INSURANCE NO. XBC 42188
Renewing XBC 190

Certificate of excess insurance issued by **INSURANCE COMPANY OF NORTH AMERICA** (herein called the company) to: { Name: **Ingersoll-Rand Company**
Address: **11 Broadway, New York City, New York** (herein called the insured).

A. WHEREAS, **See Endorsement No. 2 attached** (herein called the primary carrier(s)) has/hav issued to the insured a policy(ies) of insurance being identified as:

| Type of Policy | Policy Number | Policy Period |
|---|---|---|
| | **See Endorsement No. 2 attached** | |

(which policy(ies), including renewals or replacements thereof on the same basis, is/are herein called the primary insurance) and providing coverage described in Column I of the Description of Coverage below:

### Description of Coverage

| COLUMN I | COLUMN II | COLUMN III |
|---|---|---|
| Primary Insurance | Excess Limits | Total Limits |
| Limits & Application | | |

**See Endorsement Nos. 2 and 3 attached**

(With respect to each coverage, the bodily injury limit applicable per accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder, provided such accidents occur during the term of this certificate, except as provided by aggregate limits which, when inserted in Column II, apply to all accidents during each certificate year.)

B. NOW, this certificate is further to indemnify the insured, in accordance with the applicable insuring agreements of the primary insurance, against excess loss as specified in Column II above, as fully and to all intents and purposes as though the primary insurance, including any endorsements issued to form a part thereof, had been issued for the limits set forth in Column III above, and as though the company had assumed and insured the upper limits of the primary insurance, to wit: the amounts specified in Column II which apply in excess of the amounts specified in Column I.

C. The premium due the company upon acceptance of this certificate shall be $ **15,000.00** computed as follows:

**Flat Charge For Policy Period**

Minimum Annual Premium $

Minimum Premium $ **500.00**

(Fixed premiums, subject to applicable minimum premiums, shall not be subject to adjustment except in the event of cancelation of this certificate. Copies of audits of premiums earned under the primary insurance shall also be given to the company insofar as such audits relate to the premium for this certificate.)

D. Notwithstanding anything in this certificate or the primary insurance to the contrary, it is agreed that:

(b)No.2–Schedule of Underlying Policies
(c)No.3–Limit of Liability Endorsement

E. It is agreed that:

(1) The insurance afforded by this certificate shall, except as herein stated, follow that of the primary insurance in all respects, including (a) changes by endorsement which in any manner affect this excess insurance, (b) notice of accident, if in the insured's opinion such accident is likely to involve liability on the part of the company and (c) adjustment and settlement or defense of claims, suits or proceedings. Anything in this certificate or in the primary insurance to the contrary notwithstanding, the company shall not be called upon to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the insured but the company shall have the right and shall be given the opportunity to associate with the insured in the defense or control of any claim, suit, or proceeding relative to an accident where the claim, suit or proceeding involves, or appears reasonably likely to involve, the company in which event the insured and the company shall co-operate in all things in the defense of such claim, suit or proceeding. Should any claim, suit or proceeding arise, appearing likely to involve the company, no obligation shall be incurred on behalf of the company without its consent being first obtained.

(2) The insurance afforded by this certificate shall not apply to expense for which insurance is provided in the primary insurance.

(3) The company shall be furnished with copies of the primary insurance and shall be furnished from time to time with copies of all endorsements thereto which in any manner affect this excess insurance as soon as practicable following the issuance of such endorsements.

(4) This certificate may be canceled by the insured by surrender thereof to the company or any of its authorized agents, or by mailing to the company written notice stating when thereafter such cancelation shall be effective, it being agreed, however, that in the event of cancelation or termination of the primary insurance, this certificate, to the extent of such cancelation or termination, shall cease to apply at the same time without notice to the insured. This certificate may be canceled by the company by mailing to the first named insured at the address shown in this certificate written notice stating when, not less than **ten (10)** days thereafter, such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancelation stated in the notice shall become the end of the term of this certificate. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing.

(5) The term of this certificate, unless otherwise canceled or terminated, shall be from **January 1, 1969** to **January 1, 1972**, 12:01 A.M., standard time, at the address of the insured as stated herein.

IN WITNESS WHEREOF, INSURANCE COMPANY OF NORTH AMERICA has caused this certificate to be signed by its president and secretary at Philadelphia, Pennsylvania, and countersigned by a duly authorized agent of the company.

*J. K. Eisenberg*    *Secretary*

                                    *President*

Countersigned:

........................................................................

LC-358a    4-23-62   Printed in U.S.A.        **Authorized Agent.**

 INSURANCE COMPANY OF NORTH AMERICA

A.P. $1066.00

In consideration of an additional premium of $1066.00
it is agreed that the expiration date of the policy
is amended to read:    2/15/72.

---

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above state...

| Effective Date | | Part of Policy No. |
|---|---|---|
| **1/1/72** | at the hour specified in the policy. | **XBC 42188** |

Issued to

**Ingersoll-Rand Company**

3/30 lr
Marsh & McLennan, Inc.
505 Comm. 10%

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

T762A 175M 5/71 Prd. in U.S.A.

*Charles K. C...*
Prod...

AGENT'S COPY



INSURANCE COMPANY OF NORTH AMERICA

## ENDORSEMENT NO. 3

### LIMIT OF LIABILITY ENDORSEMENT

This certificate shall further indemnify the "Insured" against loss in excess of the limits afforded by the "Primary" policies set forth on Endorsement No. 2 during the term of this certificate which the "Insured" may sustain because of Bodily Injury to or the death of any person or persons, and injury to or destruction of property in accordance with the applicable Insuring Agreements of the "Primary" policies, but in no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $10,000,000. (Ten Million Dollars) on account of any one occurrence or accident.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $10,000,000.

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above st...

| Effective Date | | Part of Policy No. |
|---|---|---|
| **January 1, 1969** at the hour specified in the policy. | | XBC 42188 |
| Issued to    Ingersoll-Rand Company | | |

Authorized Agent

*Charles K. Co*

Pres...

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1661

100M 11-4-47 Ptd. in U.S...



INSURANCE COMPANY OF NORTH AMERICA

## ENDORSEMENT NO. 2

In consideration of the premium charged, it is agreed
that the schedule of prior excess policies and limits,
including renewals thereof, is as follows:

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits of Liability |
|---|---|---|
| Home Insurance Co. HEC-954-48-90 1/1/66 to 1/1/69 | Excess Umbrella Liability | $5,000,000. Bodily Injury Liability and Property Damage Liability or both combined, Per Occurrence, Excess of Primary Underliers |

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| **January 1, 1969** at the hour specified in the policy. | | XBC 42188. |
| Issued to | **Ingersoll-Rand Company** | |

_____
Authorized Agent

*Charles K. Cox*
Presid...

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1661

100M 11-4-67 Ptd. in U.S.A.

COUNTERSIGNATURE ENDORSEMENT

FOR THE STATE OF __New Jersey__

This is to certify that the policy of insurance to which this endorsement is attached represents business in the above State transacted through the below named resident agent licensed by the Insurance Department of said State, and that such agent, whose name is signed below this certificate, is duly licensed to act as such for this Company in said State.

INSURANCE COMPANY OF NORTH AMERICA

*H Richard Heilman*
President

I hereby certify that I am a resident agent, licensed by the State of _____ New Jersey

to act for the above named Company in said State, and that I sign this endorsement at __Newark__
City

__New Jersey_____, on the _____ 1st _____ day of __January__, 19 69
State

Attached to Policy No. __XBC 42188__, issued to __Ingersoll-Rand Company__
Name of Assured

_____
Authorized Agent

2106     3-30-61

 INSURANCE COMPANY OF NORTH AMERICA

In consideration of the premium charged Endorsement No. 2 is amended to read as follows:

| Carrier Policy Number & Period | Type of Policy | Applicable Limits of Liability |
|---|---|---|
| Home Insurance Co.<br>HEC 9664310<br>1-1-69 to 1-1-72 | Excess<br>umbrella<br>Liability | $5,000,000.00 Bodily Injury Liability and Property Damage Liability or both combined, Per Occurrence, Excess of Primary underliers |

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| 1-1-69 | at the hour specified in the policy. | XBC 42138 |
| Issued to | | |
| Ingersoll-Rand Company | | |

vf 5-6-69

INA     INSURANCE COMPANY OF NORTH AMERICA

In consideration of an additional premium of $3000.00
it is agreed that the policy is extended to include the follo
entity as  named insured:

The Torrington Company
Torrington, Connecticut

Nothing herein contained shall vary, alter, or extend any provision or condition of the policy other than as above stated

| Effective Date | | at the hour specified in the policy. | Part of Policy No. |
|---|---|---|---|
| | 1-1-69 | | XBC 42155 |
| Issued to | | | |
| | Ingersoll-Rand Company | | |
| | vt 5-6-69 | | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1762 100M 10-9-67 Ptd. in U.S.A.

*Charles K. Cox*
President

 **INSURANCE COMPANY OF NORTH AMERICA**

In consideration of the increased exposures resulting from the acquistion of the Torrington Company an additional premium of $3,000.00 is charged hereunder.

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | 1/1/69 | at the hour specified in the policy. | Part of Policy No. XBC 42188 |
|---|---|---|---|
| Issued to | Ingersoll-Rand Company | | 6/23/69 HB |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
**INSURANCE COMPANY OF NORTH AMERICA**

C-4762 100M 10-23-68 Ptd. in U.S.A.

*Charles K. Cox*
President

**EXTRA COPY**



**INSURANCE COMPANY OF NORTH AMERICA**

In consideration of an additional premium of $6,472.00, it is agreed that endorsement No. 3 is amended to read as follows:

### Endorsement No. 3
### Limit of Liability Endorsement

This certificate shall further indemnify the "Insured" against loss in excess of the limits afforded by the "primary" policies set forth on Endorsement No. 2 during the term of this certificate which the "Insured" may sustain because of Bodily Injury to or the death of any person or persons, and injury to or destruction of property in accordance with the applicable Insuring Agreements of the "Primary" policies, but in no event shall the "Company's" Limit of Liability under this certificate for loss because of such Bodily Injury to or the death of any person or persons, or injury to or destruction of property, or both combined, exceed $15,000,000 (Fifteen Million Dollars) on account of any one occurrence or accident.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed $15,000,000 (Fifteen Million Dollars)

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above sta...

| Effective Date | | Part of Policy No. |
|---|---|---|
| 7-10-69 | at the hour specified in the policy. | XBC 42188 |
| Issued to | | |
| Ingersoll-Rand Company, et al | | |

8-28-69   TR

Authorized Agent

*Charles K. Cox*
President.

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1661

100M 11-4-47 Ptd. in U.S.

# EXHIBIT C

# SECURITIES AND EXCHANGE COMMISSION

Washington, D. C. 20549

## F O R M   1 0 - K

RECD-S.E.C.

MAY 2 - 1969

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 1968 Commission file number

## I N G E R S O L L  -  R A N D   C O M P A N Y

### (Incorporated in New Jersey)

I.R.S. Employer Identification No. - 13-5156640

11 Broadway, New York, N.Y. 10004

Securities registered pursuant to Section 12 (b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Preferred stock of $100 par value (6% cumulative) | New York Stock |
| Preference stock without par value ($2.35 convertible) | New York Stock |
| Common stock of $2 par value | New York Stock |





RECEIVED
MAY 21 1969
INFO. PROD. DIV.

Common
32,298

Item 2.    Increases and decreases in outstanding equity
           securities for the year ended December 31, 1968:

| | Preference | Common Stock | | |
| --- | --- | --- | --- | --- |
| | Stock Shares | Number of shares issued | Less Shares held in Treasury | Number of shares Outstanding |
| Beginning of year | | 13,569,556 | 104,456 | 13,464,700 |
| October 24-Issuance of treasury shares to effect pooling of interests with the Gleaner Corporation | | | 14,546 | 14,546 |
| Various dates-shares exercised under stock option plan | | 103,052 | | 103,052 |
| Pro forma issuance of previously unissued shares to effect pooling of interests with the Torrington Company (Note 2) | 3,271,895 | 1,308,758 | | 1,308,758 |
| End of year | 3,271,895 | 14,981,366 | 90,310 | 14,891,056 |

Item 3.   Subsidiaries of registrant:

Ingersoll-Rand Company (New Jersey) - registrant and
   parent company

Subsidiaries of registrant: -
   The following is a list of subsidiaries of the registrant all
   of which are 100% owned, directly or indirectly, and whose
   financial statements are included in the consolidated state-
   ments:
   247 Equipment Company, Inc. (Delaware)
   Athens Foundry Corporation (Pennsylvania)
   The Henry H. Meyer Co., Inc. (Delaware)
   The Improved Machinery, Inc. (Delaware)
      IMPCO Plastic Machinery Limited (Canada)
      Sherbrooke Machineries, Limited (Canada)
   I-R Equipment Corporation (Delaware)
   Ingersoll-Rand Research, Inc. (Delaware)
   Lawrence Manufacturing Company (Delaware)
   Lee-Norse Company (Delaware)
   Loggers & Contractors Machinery Company (Oregon)
   McCartney Manufacturing Company, Inc. (Kansas)
   Millers Falls Company (Massachusetts)
      Millers Falls of Canada Ltd. (Canada)
      Union Tool Company (Massachusetts)
   Pendleton Tool Industries, Inc. (Delaware)
      Vlchek Plastics Company (Ohio)
      Proto Tools of Canada, Ltd. (Canada)
   Southwest Industries, Inc. (Delaware)
      Southwest Industries of Texas, Inc. (Oklahoma)
      Southwest International Corp. (Texas)
      Southwest Engineers of Texas, Inc. (Texas)
   Thalman Equipment Corporation (New York)
   The Gleaner Corporation (New York)
      Air Equipment Service, Inc. (New York)
   Ingersoll-Rand Western Hemisphere Trade Corporation (Delaware)
   The Torrington Company (Maine)
      The Torrington Company (Massachusetts)
      The Torrington Company (Pennsylvania)
      The Torrington Company, Inc. (New York)

The Torrington Company Limited (England)
Torrington GmbH (Germany)
Torrington S.p.A. (Italy)
Torrington Sales Limited (Switzerland)
   Engico, S.A. (Belgium)
Torrington Espanola, S.A. (Spain)
Torrington France S.A.R.L. (France)
Torrington Portuguesa S.A.R.L. (Portugal)
Canadian Ingersoll-Rand Company, Limited (Canada)
   Sherbrooke Pneumatic Tool Co. Limited (Canada)
Ingersoll-Rand World Trade Limited (Bermuda)
Ingersoll-Rand Aktiebolag (Sweden)
Ingersoll-Rand Italiana S.p.A. (Italy)
Ingersoll-Rand Ges.m.b.H., Vienna (Austria)
   (30% owned by Athens Foundry Corporation)
Ingersoll-Rand S.A., Fribourg (Switzerland)
Ingersoll-Rand G.m.b.H. (Germany)
Ingersoll-Rand (Australia) Proprietary Limited (Australia)
   Ingersoll-Rand Malaysia Limited (Malaysia)
Ingersoll-Rand Benelux S.A. (Belgium)
Ingersoll-Rand A/S - Copenhagen (Denmark)
Ingersoll-Rand Company Limited (England)
   Ingersoll-Rand Hire Limited (England)
   Ingersoll-Rand Company (Ireland) Limited (Ireland)
   Ingersoll-Rand (NZ) Limited (New Zealand)
Compagnie Ingersoll-Rand S.A. - Paris (France)
Ingersoll-Rand (India) Private Limited (India)
Ingersoll-Rand Japan, Ltd. (Japan)
Ingersoll-Rand de Mexico, S.A. (Mexico)
Ingersoll-Rand Company of Peru S.A. (Peru)
Ingersoll-Rand Philippines, Inc. (Philippines)
Ingersoll-Rand de Puerto Rico, Inc. (Puerto Rico)
Ingersoll-Rand Limitada (Portugal)
Compania Ingersoll-Rand S.A. - Madrid (Spain)
Ingersoll-Rand Company South Africa (Proprietary) Limited
   (South Africa)
Ingersoll-Rand de Venezuela, S.A. (Venezuela)
Ingersoll-Rand Limited (Zambia)

Note - There are omitted from the foregoing list the names of
six domestic and foreign subsidiaries not included in the
consolidated financial statements.  The six subsidiaries, con-
sidered in the aggregate as a single subsidiary, do not con-
stitute a significant subsidiary.

Item 10.  Financial statements and exhibits:

   (a) Financial statements.  See index included with accompanying
       financial statements.

   (b) Exhibits.  None.

SIGNATURE

     Pursuant to the requirements of the Securities Exchange Act
of 1934, the registrant has duly caused this annual report to be signed
on its behalf by the undersigned thereunto duly authorized.

                   INGERSOLL-RAND COMPANY

                   (Registrant)

DATE  *Apr. 23, 1969*     BY

                         W. J. Mc Fadden
                         Comptroller

PRICE WATERHOUSE & CO.

60 BROAD STREET

NEW YORK 10004

February 27, 1969

## OPINION OF INDEPENDENT ACCOUNTANTS

To the Shareowners of
  Ingersoll-Rand Company

In our opinion, the statements listed in the accompanying index of this report present fairly the financial position of Ingersoll-Rand Company and its consolidated subsidiaries at December 31, 1968 and the results of their operations for the year, in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year. Our examination of these statements was made in accordance with generally accepted auditing standards and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

PRICE WATERHOUSE & CO.

INDEX TO FINANCIAL STATEMENTS

Ingersoll-Rand Company and consolidated subsidiaries: -
  Consolidated balance sheet, December 31, 1968

  Consolidated statement of income for the year ended
    December 31, 1968

  Consolidated statement of retained earnings for the year
    ended December 31, 1968

  Consolidated statement of changes in common stock and capital
    in excess of par value

  Notes to consolidated financial statements, December 31, 1968

  Schedules:
    V - Property, plant and equipment
    VI - Reserves for depreciation and amortization

Omitted schedules and statements and reasons for omission:
  All other schedules have been omitted because they are not
    applicable or the required information is shown in the
    financial statements or the notes thereto.

  Individual financial statements of the registrant have been
    omitted because the registrant is primarily an operating
    company and all subsidiaries included in the consolidated
    financial statements are deemed to be totally held
    subsidiaries.  Long term debt of subsidiaries amounting to
    $12,379,000 not guaranteed by the registrant amounts to
    2.0% of the total consolidated assets.

  Separate financial statements of nonconsolidated subsidiaries,
    have been omitted since, considered in the aggregate as a
    single subsidiary, they do not constitute a significant sub-
    sidiary.



## Assets

Current Assets:
| | | |
|---|---|---|
| Cash | | $ 11,316,000 |
| Marketable securities, at cost which approximates market value | | 17,973,000 |
| Trade receivable | $133,827,000 | |
| Trade notes receivable | 31,956,000 | |
| Sundry accounts receivable | 3,538,000 | |
| | 169,321,000 | |
| Less - Allowance for doubtful accounts (Note 4) | 2,559,000 | 166,762,000 |
| Inventories, at the lower of cost or market (Note 3) | | 252,544,000 |
| Total current assets | | 448,595,000 |

Investments:
| | | |
|---|---|---|
| Securities of subsidiaries not consolidated (Note 1) | 6,341,000 | |
| Due from subsidiaries not consolidated | 715,000 | |
| Other, at cost, including 90,310 treasury shares acquired for specific purpose | 5,688,000 | |
| | | 12,744,000 |

Property, plant and equipment, at cost (Schedules V and VI):
| | | |
|---|---|---|
| Buildings and distribution systems | 68,435,000 | |
| Machinery, equipment, etc. | 206,186,000 | |
| | 274,621,000 | |
| Less - Accumulated depreciation (Note 5) | 137,716,000 | |
| | 136,905,000 | |
| Land | 7,832,000 | |
| | | 144,737,000 |
| Deferred charges | | 5,870,000 |
| | | $611,946,000 |

## Liabilities

Current Liabilities:
| | | |
|---|---|---|
| Loans payable, banks | $ 39,411,000 | |
| Notes payable, trade | 1,097,000 | |
| Accounts payable, trade | 28,963,000 | |
| Accrued payrolls | 10,226,000 | |
| U.S. federal and foreign taxes on income | 21,271,000 | |
| Accrued taxes, other than income | 6,869,000 | |
| Dividend on preferred stock payable January 3, 1969 | 76,000 | |
| Customers' advance payments on orders | 10,338,000 | |
| Other current liabilities | 17,572,000 | |
| Total current liabilities | | $135,823,000 |
| Long-term debt (Note 9) | | 81,265,000 |
| Pension reserves of subsidiaries (Note 7) | | 3,615,000 |

Capital stock: - (Note 2)
| | | |
|---|---|---|
| Preferred stock (6% cumulative): Authorized and issued-25,255 shares $100 par value | 2,525,000 | |
| Preference stock Authorized-10,000,000 shares, without par value Issued-3,271,895 shares, $2.35 Convertible Series | 5,562,000 | |
| Common stock Authorized-30,000,000 shares $2 par value Issued-14,981,366 shares | 29,963,000 | |
| | | 38,050,000 |
| Capital in excess of par value per annexed statement | | 25,552,000 |
| Earnings retained for use in the business, per annexed statement | | 327,641,000 |
| | | $611,946,000 |

FOR THE YEAR ENDED DECEMBER 31, 1968

| | |
|---|---|
| Net Sales | $ 641,2? |
| Cost of Goods sold (Note 3) | 399,2? |
| Administrative and service engineering expenses | 115,9? |
| Operating income | 126,0? |
| Other income, including interest income of approximately $4,000,000 | 5,9? |
| Other charges, substantially all interest expense | 5,8? |
| Earnings before income taxes | 126,1? |
| Provision for income taxes: | |
| Domestic | 51,3? |
| Foreign and other | 11,4? |
| Net earnings for the year | 63,3? |
| Net earnings per share of common stock | $ |

CONSOLIDATED STATEMENT OF RETAINED EARNINGS

FOR THE YEAR ENDED DECEMBER 31, 1968

| | |
|---|---|
| Earnings retained for use in the business at beginning of year as previously reported | $ 225,4? |
| Adjustments resulting from accounting for 1968 poolings of interests | 75,1? |
| Earnings retained for use in the business at beginning of year as restated | 300,5? |
| Net earnings for the year | 63,3? |
| | 363,9? |
| Cash dividends paid: | |
| Preferred stock, $6 per share | 1? |
| Common stock, $2 per share | 27,0? |
| By acquired company prior to pooling | 5,2? |
| Cancellation of treasury stock by acquired compan? prior to pooling | 1? |
| Earnings, less dividends of pooled companies for portion of fiscal year included in 1968 and 1967 | 3,7? |
| | 36,3? |
| Earnings retained for use in the business at end of year | $ 327,6? |



## CHANGES IN COMMON STOCK AND CAPITAL
### IN EXCESS OF PAR VALUE

| | Common Stock Issued, at par value | | Capital in Excess of Par Value |
| --- | --- | --- | --- |
| | Shares | Amount | Amount |
| Beginning of year as previously reported | 13,569,556 | $27,139,000 | $19,862,000 |
| Adjustments resulting from accounting for 1968 poolings of interests | 1,310,758 | 2,622,000 | 1,975,000 |
| Beginning of year as restated | 14,880,314 | 29,761,000 | 21,837,000 |
| Cancellation of treasury stock by acquired company prior to pooling | (2,000) | (4,000) | - |
| Sales under stock option plan | 103,052 | 206,000 | 3,715,000 |
| End of year | 14,981,366 | $29,963,000 | $25,552,000 |

DECEMBER 31, 1968

NOTE 1:  On December 30, 1968 the shareowners authorized the merger of Torrington Company into Ingersoll-Rand Company.  Consequently, when the Agreement of Merger was filed in the appropriate State offices on January 2, 1969, the outstanding capital stock of The Torrington Company was cc into 1,308,758 shares of authorized but previously unissued common stoc 3,271,895 shares of newly authorized preference stock, $2.35 convertibl This transaction has been accounted for as a pooling of interests.  Acc the accompanying consolidated financial statements include the accounts Torrington for the year 1968.

During the year 1968, 14,546 shares of treasury stock (common) were issued to acquire the business of two small distributors in poolings of interests.

The consolidated financial statements include the accounts of all In Rand's domestic and foreign subsidiaries except three small domestic subsidiaries and Ingersoll-Rand Financial Corporation (the investments these four subsidiaries are carried at underlying book values) and two subsidiaries in Brazil and Colombia.

NOTE 2:  In approving the Agreement of Merger with The Torrington Compa which became effective January 2, 1969 the shareowners approved an amen to the company's certificate of incorporation which (a) decreased the authorized preferred stock, $100 par value, from 50,000 to 25,255 share (b) increased the authorized common stock, $2 par value, from 1,000,00 30,000,000 shares; (c) authorized 10,000,000 shares of a new class of preference stock, without par value, issuable in series; and (d) create series of such preference stock, consisting of 3,271,895 shares designa "preference stock, $2.35 convertible series".

The holders of $2.35 preference stock are entitled to receive divide when and as declared at the rate of $2.35 per year per share payable qu and cumulative from and after January 10, 1969 and upon any liquidation entitled to $47.50 per share if it is voluntary and $20.00 per share ($65,438,000 in the aggregate) if it is involuntary together, in either with any accrued and unpaid dividends.  The shares of $2.35 preference are redeemable after January 2, 1974 at a redemption price of $47.50 pe together with any accrued and unpaid dividends and each share may be co at any time into 6/10ths of a share of common stock, without adjustment dividends.  As of December 31, 1968 the equivalent of 3,271,895 shares $2.35 preference stock were deemed to have been outstanding on a pro-fo basis.

The Company's equity at December 31, 1968 in the net assets of its consolidated subsidiary companies was $42,477,000 greater than the carr value of its investments therein.  In consolidation $44,628,000 was add to retained earnings and $2,151,000 was added to property, plant and equipment.

NOTE 3:  The inventories at December 31, 1968 and December 31, 1967 use in the computation of cost of goods sold are summarized as follows:

|  | December 31, | |
| --- | --- | --- |
|  | 1968 | |
| Raw materials and supplies | $ 24,385,000 | $ 23,78 |
| Work in process | 71,378,000 | 65,25 |
| Finished goods | 156,781,000 | 133,97 |
|  | $252,544,000 | $223,00 |

Inventories are valued at the lower of cost less allowances for obsolescence, principally on the first-in, first-out basis, or market.



follows the sum of the years-digits method for assets acquired subsequent to December 31, 1953 and the straight-line method for other assets. Also, for those assets which qualify, the Company uses for both book and income tax purposes the "guideline" procedures prescribed by the Internal Revenue Service. The Company's foreign subsidiaries generally follow the straight-line method; however, other methods which provide higher charges in early years of asset life are used by some of these companies. In almost all instances, depreciation provided by charges to income is credited to reserves although, to a minor extent, depreciation is credited directly to the related asset account.

In view of the variations of useful lives of fixed assets in the countries where the companies operate it is not considered practicable to list all of the numerous individual rates of depreciation herein. The rates used in the United States where the majority of the properties are located are based on the use of the following estimated lives: buildings, 30 to 40 years; machinery and equipment, 12 years; furniture and fixtures, 10 years.

Except as explained below, as properties are retired or otherwise disposed of, property, plant and equipment accounts and the related reserve accounts are relieved of the cost and accumulated depreciation thereon, respectively. The resulting profit or loss after any salvage or other realization is charged or credited to income. No gain or loss is recognized for assets traded in on the purchase of new assets; in lieu thereof the cost basis of the acquired asset is adjusted. Fully depreciated property, plant and equipment is retired from both the asset and reserve accounts, although such items have not necessarily been removed from operation. The policy with respect to retirements of furniture and fixtures is to make no entries in the accounts until the assets have completed their estimated useful life, when they are eliminated from both the asset and related reserve accounts.

Ordinary repairs and maintenance are charged to income. Renewals and betterments, insofar as they represent replacements of assets written off, are charged as additions to capital assets.

**NOTE 6:** No additional options may be granted under the Companys 1958 stock option plan approved by the shareowners in April 1958. The directors have adopted a new plan which has been submitted to the shareowners of approval Under the 1958 plan options could have been granted to executives to purchase no more than 540,000 shares of common stock in the aggregate at a price not less than 95% of the fair market value on the date the option is granted; such price was amended to 100% of the fair market value on options granted subsequent to December 31, 1963. The options granted prior to December 31, 1963 must be exercised within ten years after the date of grant and those granted subsequent to December 31, 1963 must be exercised within five years of grant. Options are exercisable after eighteen months from date of grant. No options became exercisable during 1968.

Options outstanding at December 31, 1968 to purchase 202,300 shares of common stock, together with option price and fair market value at date of grant, are shown below:

| Date granted | Number of shares | Option Price Per share | Total | Fair Market Value Per Share | Total |
|---|---|---|---|---|---|
| July 9, 1959 | 11,000 | $47.50 | $ 522,500 | $50.00 | $ 550,000 |
| January 20, 1964 | 4,800 | 40.75 | 195,600 | 40.75 | 195,600 |
| April 1, 1966 | 27,000 | 48.50 | 1,309,500 | 48.50 | 1,309,500 |
| December 6, 1967 | 159,500 | 42.75 | 6,818,625 | 42.75 | 6,818,625 |
| | 202,300 | | $8,846,225 | | $8,873,725 |

($825,750) were cancelled during the year.

During the year, $3,715,000 representing the excess of proceeds ov[er] par value of common stock issued upon the exercise of options, was cr[edited to] capital in excess of par value. No charge to income was made upon th[e] exercise of stock options.

NOTE 7: The Company and several of its subsidiaries have pension pla[ns] covering substantially all of their employees, including some employee[s] foreign countries. It is the policy of the Company and certain of it[s] subsidiaries to fund current costs and prior service costs (amortized [over] periods not exceeding 25 years) as accrued. In 1968 total pension co[sts] accrued amounted to $6,040,000. The estimated liability, as determin[ed by] independent consulting actuary, for unfunded past service benefits un[der] trusteed plans approximated $22,500,000 at December 31, 1968

NOTE 8: Supplementary profit and loss information:

|  | Cost of goods sold | O[ther] |
|---|---|---|
| Maintenance and repairs (1) | $12,400,000 | $ |
| Depreciation and amortization charges | $19,749,000 | $2, |
| Taxes (other than U.S. federal and foreign income taxes): |  |  |
| Employees' social security taxes | $ 7,312,000 | $3, |
| Real estate taxes | 2,724,000 |  |
| Franchise taxes |  |  |
| Miscellaneous | 758,000 |  |
|  | $10,794,000 | $4, |
| Rents and royalties | $ 936,000 | $2, |

(header: Charged direct[ly] [to] p[r]ofit and lo[ss])

(1) The companies' accounting systems do not, in most cases, provide separate accounts for maintenance and repairs in all departments; the above amounts are, therefore, based upon estimates.

NOTE 9: Long-term debt includes $50,000,000 of 4.75% notes of the company due 1973-1991, $10,000,000 of 6.5% notes of a pooled company [due] 1970-1979 and the sterling equivalent of $12,000,000 of 8% notes of a [United] Kingdom subsidiary due in 1993. The remaining balance of long-term d[ebt] consists of loans and notes of subsidiaries maturing in various amoun[ts to] 1979. In 1968 other charges are substantially interest expense.



BLANK PAGE

SCHEDULE V

| Additions at cost | Retirements or sales | Fully depreciated assets | Depreciation credited to assets | Balance at close of year |
|---|---|---|---|---|
| 1,187,622 | 76,880 | – | – | 7,831,920 |
| 29,778,643 | 139,789 | 26,835 | 16,741 | 68,435,456 |
| 68,433,298 | 4,346,206 | 1,190,410 | 78,973 | 186,877,268 |
| 1,307,707 | 129,690 | 30,237 | 15,009 | 11,359,064 |
| 2,617,146 | 1,751,346 | – | 4,734 | 7,889,592 |
| 7,036 | 2,889 | – | – | 60,056 |
| 6,331,452 | $ 6,446,800 | $ 1,247,482 | $ 115,457 | $ 282,453,356 |

| Charged to profit and loss | Deductions from reserves | | Balance at close of year |
|---|---|---|---|
| | Retirements or sales | Fully depreciated assets | |
| 2,572,651 | 168,241 | 26,835 | 23,570,348 |
| 16,618,536 | 3,713,776 | 1,190,410 | 103,091,545 |
| 947,377 | 88,562 | 30,237 | 6,556,111 |
| 1,676,204 | 1,235,444 | - | 4,455,319 |
| 5,267 | 1,107 | - | 42,945 |
| $ 21,820,035 (A) | $ 5,207,130 | $ 1,247,482 | $ 137,716,268 |
| $ 21,820,035 | | | |
| 115,457 | | | |
| $ 21,935,492 | | | |

SCHEDULE VI

# 1969



# DISCLOSURE

## LEASCO SYSTEMS & RESEARCH CORPORATION

### 4833 RUGBY AVE. BETHESDA, MARYLAND

RECD - S.E.C.

MAY - 1 1970

# FORM 10-K

## ANNUAL REPORT PURSUANT TO SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 1969 Commission file number 1-9

## INGERSOLL - RAND COMPANY

### (Incorporated in New Jersey)

I. R. S. Employer Identification No. 13-5156640

11 Broadway, New York, N.Y. 10004

Securities registered pursuant to Section 12 (b) of the Act:

| Title of each class | Name of each exchange on which registered |
| --- | --- |
| Preferred stock of $100 par value (6% cumulative) | Unlisted |
| Preference stock without par value ($2. 35 convertible) | New York Stock Exchange |
| Common stock of $2 par value | New York Stock Exchange |

MAY 11 1970

Note: there are approximately 12,000 stockholders owning
both preference and common stock.

Item 2.    Increases and decreases in outstanding equity
           securities for the year ended December 31, 1969:

|  | Preference | Common Stock | | |
|---|---|---|---|---|
|  | Stock Shares | Number of Shares Issued | Less Shares Held in Treasury | Number of Shares Outstanding |
| Beginning of year | 3,271,895 | 14,981,366 | 90,310 | 14,891,056 |
| January-Shares exercised under stock option plan |  | 1,000 |  | 1,000 |
| October-Issuance of treasury shares to effect pooling of interests with the Jenmar Estates |  |  | (69,319) | 69,319 |
| October-Issuance of previously unissued shares to effect pooling of interests with the FM Hill Machine Company |  | 40,000 |  | 40,000 |
| June and December-Conversion of preference shares to common shares | (530) | 318 |  | 318 |
| End of year | 3,271,365 | 15,022,684 | 20,991 | 15,001,693 |

Item 3.    Subsidiaries of registrant:

Ingersoll-Rand Company (New Jersey)    registrant and parent company

Subsidiaries of registrant:-
    The following is a list of subsidiaries of the registrant all of which are deemed
    to be 100% owned, directly or indirectly, and whose financial statements
    are included in the consolidated statements:
    Athens Foundry Corporation (Pennsylvania)
    Improved Machinery, Inc. (Delaware)
        Frank M. Hill Machine Company (Massachusetts)
        IMPCO Plastic Machinery Limited (Canada)
        Sherbrooke Machineries, Limited (Canada)
    I-R Equipment Corporation (Delaware)
    Ingersoll-Rand Research, Inc. (Delaware)
    Ingersoll-Rand Western Hemisphere Trade Corporation (Delaware)
    Jenmar Estates, Inc.
    Lawrence Manufacturing Company (Delaware)
    Lee-Norse Company (Delaware)
    McCartney Manufacturing Company, Inc. (Kansas)
    Millers Falls Company (Massachusetts)
        Millers Falls of Canada Ltd. (Canada)
        Union Tool Company (Massachusetts)

The Torrington Company (Pennsylvania)
The Torrington Company, Inc. (New York)
The Torrington Company (North Carolina)
The Torrington Company (Michigan)
The Torrington Company (Missouri)
The Torrington Company (California)
The Torrington Company of Connecticut (Connecticut)
Thomaston Special Products, Inc. (Connecticut)
The Torrington Company Limited (Canada)
 Torrington - Magus, S. A. (Brasil)
The Torrington Company Limited (England)
Torrington GmbH (Germany)
Torrington S. p. A. (Italy)
Torrington Sales Limited (Switzerland)
 Engico, S. A. (Belgium)
Torrington Espanola, S. A. (Spain)
Torrington France S. A. R. L. (France)
Torrington Portuguesa S. A. R. L. (Portugal)
Canadian Ingersoll-Rand Company, Limited (Canada)
 Sherbrooke Pneumatic Tool Co. Limited (Canada)
 Ingersoll-Rand World Trade Limited (Bermuda)
 Ingersoll-Rand Aktiebolag (Sweden)
 Ingersoll-Rand Italina S. p. A. (Italy)
Ingersoll-Rand de Colombia S. A. (Colombia)
Ingersoll-Rand Ges. m. b. H., Vienna (Austria)
 (30% owned by Athens Foundry Corporation)
Ingersoll-Rand S. A., Fribourg (Switzerland)
 Ingersoll-Rand G. m. b. H. (Germany)
Ingersoll-Rand S. A. Industria E Comercio (Brasil)
Ingersoll-Rand (Australia) Proprietary Limited (Australia)
 Ingersoll-Rand Malaysia Limited (Malaysia)
Ingersoll-Rand Benelux S. A. (Belgium)
Ingersoll-Rand A/S - Copenhagen (Denmark)
Ingersoll-Rand Company Limited (England)
 Ingersoll-Rand Hire Limited (England)
 Ingersoll-Rand Company (Ireland) Limited (Ireland)
 Ingersoll-Rand (NZ) Limited (New Zealand)
Compagnie Ingersoll-Rand S. A. - Paris (France)
Ingersoll-Rand (India) Private Limited (India)
Ingersoll-Rand Japan, Ltd. (Japan)
Ingersoll-Rand de Mexico, S. A. (Mexico)
Ingersoll-Rand Company of Peru S. A. (Peru)
Ingersoll-Rand Philippines, Inc. (Philippines)
Ingersoll-Rand de Puerto Rico, Inc. (Puerto Rico)
Ingersoll-Rand Limitada (Portugal
Compania Ingersoll-Rand S. A. - Madrid (Spain)
Ingersoll-Rand Company South Africa (Proprietary) Limited
 (South Africa)
Ingersoll-Rand de Venezuela, S. A. (Venezuela)
Ingersoll-Rand Limited (Zambia)

Note: There are omitted from the foregoing list of names four domestic
subsidiaries not included in the consolidated financial statements.
The four subsidiaries, considered in the aggregate as a single sub-
sidiary, do not constitute a significant subsidiary.

Item 10.  Financial statements and exhibits:

    (a)  Financial statements.  See index included with accompanying financial statements.

    (b) Exhibits.  None.

### SIGNATURE

    Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this annual report to be signed on its behalf by the undersigned thereunto duly authorised.

INGERSOLL–RAND COMPANY

(Registrant)

Date _April 28, 1970_      By _____

                                   F. J. McFadden
                                   Comptroller

## OPINION OF INDEPENDENT ACCOUNTANTS

To the Shareowners of
Ingersoll-Rand Company

In our opinion, the statements listed in the accompanying index of this report present fairly the financial position of Ingersoll-Rand Company and its consolidated subsidiaries at December 31, 1969 and the results of their operations for the year, in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year. Our examination of these statements was made in accordance with generally accepted auditing standards and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

PRICE WATERHOUSE & CO.

Consolidate balance sheet, December 31, 1969

Consolidated statement of income for the year ended
  December 31, 1969

Consolidated statement of retained earnings for the year
  ended December 31, 1969

Consolidated statement of changes in common stock and
  capital in excess of par value for the year ended
  December 31, 1969

Notes to consolidated financial statements, December 31, 1969

Schedules:
  V - Property, plant and equipment
  VI - Reserves for depreciation and amortization

Omitted Schedules and statements and reasons for omission:

All other schedules have been omitted because they are not
  applicable or the required information is shown in the
  financial statements or the notes thereto.

Individual financial statements of the registrant have been
  omitted because the registrant is primarily an operating
  company and all subsidiaries included in the consolidated
  financial statements are deemed to be totally held
  subsidiaries. Long-term debt of subsidiaries amounting
  to $13,621,000 not guaranteed by the registrant amounts
  to 2.0% of the total consolidated assets.

Separate financial statements of nonconsolidated subsidiaries,
  have been omitted since, considered in the aggregate as a
  single subsidiary, they do not constitute a significant sub-
  sidiary.

Marketable securities, at cost
which approximates market
value                                                                        4,014,000
Trade accounts receivable                    $ 164,792,000
Trade notes receivable                           34,356,000
Sundry accounts receivable                        5,383,000
                                                204,531,000
    Less - Allowance for doubtful
        accounts (Note 4)                         3,151,000        201,380,000
Inventories, at the lower of cost
    or market (Note 3)                                            286,640,000

        Total current assets                                                  $ 509,20

Investments:
    Securities of subsidiaries not consolidated (Note 1)           1,917,000
    Due from subsidiaries not consolidated                           503,000
    Other, at cost, including 20,991 treasury
        shares acquired for specific purpose                        3,013,000

                                                                              5,43

Property, plant and equipment, at cost
    (Schedules V and VI):
    Buildings and distribution systems                             78,961,000
    Machinery, equipment, etc.                                    231,512,000
                                                                  310,473,000
        Less - Accumulated depreciation (Note 5)                  151,073,000
                                                                  159,400,000
    Land                                                            8,760,000

Deferred charges                                                              168,16
                                                                               7,16
                                                                            $ 689,96

                            Liabilities

Current Liabilities:
    Loans payable, banks                                        $ 61,021,000
    Accounts payable, trade                                       42,635,000
    Notes payable, trade                                             932,000
    Customers' advance payments on orders                         5,715,000
    U.S. federal and foreign taxes on income                     28,579,000
    Accrued taxes other than income                               8,721,000
    Accrued payrolls                                              9,328,000
    Dividend on preferred stock payable January 2, 1970              76,000
    Dividend on preference stock payable January 12, 1970         1,922,000
    Other current liabilities                                    24,711,000
        Total current liabilities                                            $ 183,640
Long-term debt (Note 9)                                                        84,054
Pension reserves of subsidiaries (Note 7)                                      4,054
Capital stock: -
    Preferred stock (6% cumulative):
        Authorized and issued-25,255 shares $100 par value         2,525,000
    Preference stock (Note 2)
        Authorized-10,000,000 shares, without par value
        Issued-3,271,365 shares, $2.35 Convertible Series           5,561,000
    Common stock (Note 6)
        Authorized-30,000,000 shares $2 par value
        Issued-15,022,684 shares                                   30,046,000

Capital in excess of par value per annexed statement                          38,132
Earnings retained for use in the business,
    per annexed statement                                                     25,591

                                                                             354,491
                                                                           $ 689,962

| | |
|---|---:|
| Net Sales | $ 711,193,000 |
| Cost of Goods sold (Note 3) | 447,115,000 |
| Administrative and service engineering expenses | 123,579,000 |
| Operating income | 140,499,000 |
| Other income, including interest income of approximately $2,900,000 | 2,901,000 |
| Other charges, - interest expense | 8,966,000 |
| Earnings before income taxes | 134,434,000 |
| Provision for income taxes: | |
| U. S. Federal | 53,458,000 |
| Foreign and other | 14,542,000 |
| Net earnings for the year | $  66,434,000 |
| Net earnings per share of common stock (Note 10) | $3.91 |

## CONSOLIDATED STATEMENT OF RETAINED EARNINGS

### FOR THE YEAR ENDED DECEMBER 31, 1969

| | |
|---|---:|
| Earnings retained for use in the business at beginning of year as previously reported | $ 327,641,000 |
| Adjustments resulting from accounting for 1969 poolings of interests | (1,871,000) |
| Earnings retained for use in the business at beginning of year as restated | 325,770,000 |
| Net earnings for the year | 66,434,000 |
| | 392,204,000 |
| Cash dividends paid: | |
| Preferred stock, $6  per share | 152,000 |
| Preference stock, $2.35 per share | 7,688,000 |
| Common stock, $2 per share | 29,839,000 |
| By acquired company prior to pooling | 34,000 |
| | 37,713,000 |
| Earnings retained for use in the business at end of year | $354,491,000 |

For the Year Ended December 31, 1969

| | Common Stock Issued, at par value | | Capital Exce of Par V |
|---|---|---|---|
| | Shares | Amount | Am |
| Beginning of year as previously reported | 14,981,366 | $ 29,963,000 | $ 25,55 |
| Adjustments resulting from accounting for 1969 poolings of interests | 40,000 | 80,000 | - |
| Beginning of year as restated | 15,021,366 | 30,043,000 | 25,55 |
| Conversion of 530 preference shares to common shares | 318 | 1,000 | - |
| Sales under stock option plan | 1,000 | 2,000 | 3 |
| End of year | 15,022,684 | $ 30,046,000 | $ 25,59 |

NOTE 1 - The consolidated financial statements include the accounts of all Ingersoll-Rand's subsidiaries except four small domestic ones, in which the investments are carried at underlying book values. The accounts of two small foreign subsidiaries, previously not consolidated, are included in the consolidated financial statements.

During the year 1969, 40,000 shares of authorized but previously unissued common stock and 69,319 shares of treasury stock (common) were issued to acquire the business of two small companies in poolings of interests.

Foreign currencies have been generally translated into U.S. dollars at the respective end-of-period rates of exchange for net current assets, average rates for income and expense, and at rates of exchange prevailing at dates of acquisition for noncurrent assets and depreciation.

The Company's equity at December 31, 1969 in the net assets of its consolidated subsidiary companies was $53,802,000 greater than the carrying value of its investments therein. In consolidation $56,415,000 was added to retained earnings and $2,613,000 was added to property, plant and equipment.

NOTE 2 - The holders of $2.35 preference stock are entitled to receive dividends when and as declared at the rate of $2.35 per year per share payable quarterly that are cumulative and upon any liquidation are entitled to $47.50 per share if it is voluntary and $20.00 per share ($65,427,000 in the aggregate) if it is involuntary together, in either case, with any accrued and unpaid dividends. The shares of $2.35 preference stock are redeemable after January 2, 1974 at a redemption price of $47.50 per share together with any accrued and unpaid dividends and each share may be converted at any time into 6/10ths of a share of common stock, without adjustment for accrued dividends. The aggregate preference on involuntary liquidation of $65,427,000 is $59,866,000 in excess of the stated value of $5,561,000, which excess represents a restriction on retained earnings.

NOTE 3 - The inventories at December 31, 1969 and December 31, 1968 used in the computation of cost of goods sold are summarized as follows:

|  | December 31, 1969 | 1968 |
|---|---|---|
| Raw materials and supplies | $ 27,962,000 | $ 24,385,000 |
| Work in process | 82,742,000 | 71,378,000 |
| Finished goods | 175,936,000 | 157,622,000 |
|  | $286,640,000 | $253,385,000 |

Inventories are valued at the lower of cost less allowances for obsolescence, principally on the first-in, first-out basis, or market

NOTE 4 - The allowance for doubtful accounts was increased during 1969 by $585,000 representing the excess of the provision of $1,638,000 over $1,053,000 uncollectible accounts written off during the year.

provided by charges to income is credited to expense and to that extent, depreciation is credited directly to the related asset account.

In view of the variations of useful lives of fixed assets in the countries where the companies operate it is not considered practicable to list all of the numerous individual rates of depreciation herein. The rates used in the United States where the majority of the properties are located are based on the use of the following estimated lives: buildings, 30 to 40 years; machinery and equipment, 12 years; furniture and fixtures, 10 years.

Except as explained below, as properties are retired or otherwise disposed of, property, plant and equipment accounts and the related reserve accounts are relieved of the cost and accumulated depreciation thereon, respectively. The resulting profit or loss after any salvage or other realization is charged or credited to income. No gain or loss is recognized for assets traded in on the purchase of new assets; in lieu thereof the cost basis of the acquired asset is adjusted. Fully depreciated property, plant and equipment is retired from both the asset and reserve accounts, although such items have not necessarily been removed from operation. The policy with respect to retirements of furniture and fixtures is to make no entries in the accounts until the assets have completed their estimated useful life, when they are eliminated from both the asset and related reserve accounts.

Ordinary repairs and maintenance are charged to income. Renewals and betterments, insofar as they represent replacements of assets written off, are charged as additions to capital assets.

NOTE 6 – Under the company's 1958 stock option plan, outstanding options are exercisable after eighteen months from date of grant and may not be exercised later than five years from date of grant; no more options may be granted under this plan. Of the 202,300 shares under option at the beginning of the year, 1,000 shares were issued upon exercise at an aggregate option price of $40,750 of which $38,750 was credited to capital in excess of par value and options for 16,800 shares were cancelled. The remaining 184,500 options outstanding at December 31 1969 are exercisable at prices ranging from $42.75 to $48.50 per share.

Under the 1969 plan, approved by shareowners April 24, 1969, options may be granted to purchase no more than 400,000 shares of common stock at a price not less than fair market value on the date the option is granted. The options granted under this plan are exercisable one year from date of grant and may not be exercised later than five years from date of grant. In June 1969, options on 104,000 shares were granted at an option price of $45.50 per share. An option for 3,000 of these shares was cancelled during the year leaving options for 101,000 shares outstanding at December 31, 1969.

Options which became exercisable under the 1958 plan during the year, together with option price at date granted and fair market value at date exercisable, are as follows:

| Date granted | Number of shares | Option price | | Fair market value | |
|---|---|---|---|---|---|
| | | Per Share | Total | Per Share | Total |
| Dec. 6, 1967 | 157,500 | $42.75 | $6,733,125 | $44.875 | $7,067,813 |

Options outstanding at December 31, 1969 together with option price and fair market value at date of grant, are shown as follows:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| Dec. 1967 | 57,500 | 42.75 | 6,733,125 | 42.75 | 6,733,125 |
|  | 184,500 |  | $8,042,625 |  | $8,042,625 |

**1969 Plan**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| June 1969 | 101,000 | 45.50 | 4,595,500 | 45.50 | 4,595,500 |
| Total | 285,500 |  | $12,638,125 |  | $12,638,125 |

The option exercised during the year for 1,000 shares was granted in January 1964 at an option price of $40.75 per share ($40,750) and had a fair market value of $51.375 per share ($51,375) on the date exercised.

Options on 16,800 shares under the 1958 plan having an option price of $40.75 to $47.50 ($762,850) and 3,000 shares under the 1969 plan having an option price of $45.50 ($136,500) were cancelled during the year.

**NOTE 7** – The Company and several of its subsidiaries have pension plans covering substantially all of their employees, including some employees in foreign countries. It is the policy of the Company and certain of its subsidiaries to fund current costs and prior service costs (amortized over periods not exceeding 25 years) as accrued. In 1969 total pension costs accrued amounted to $5,550,000. The estimated liability, as determined by an independent consulting actuary, for unfunded past service benefits under the trusteed plans approximated $19,900,000 at December 31, 1969.

**NOTE 8** – Supplementary profit and loss information:

|  | Charged directly to profit and loss | |
|---|---|---|
|  | Cost of goods sold | Other |
| Maintenance and repairs | $ 10,658,000 | $ 581,000 |
| Depreciation and amortization charges | $ 21,902,000 | $ 2,364,000 |
| Taxes other than income taxes: |  |  |
|     Employees' social security taxes | $ 9,207,000 | $ 3,610,000 |
|     Real estate & personal property taxes | 2,599,000 | 910,000 |
|     Franchise taxes | - | 476,000 |
|     Miscellaneous | 528,000 | 413,000 |
|  | $ 12,334,000 | $ 5,409,000 |
| Rents and royalties | $ 800,000 | $3,201,000 |

The indebtedness on the 4.75% notes of the parent company and 6.5% notes of a domestic subsidiary, to be retired by payments within five years subsequent to December 31, 1969 amounts to $1,000,000 per year 1971 and 1972 and $3,000,000 in 1973 to 1975 inclusive.

NOTE 10 - Net earnings per share of common stock are based on the average number of common shares outstanding during each year, after retroactive adjustmentr for companies acquired in 1969 and treated as poolings of interests, after recognition of the preferred stock dividend ($6.00 per share) and after recognition of the annual dividend requirements ($2.35 per share) of preference stock, $2.35 convertible series. Earnings per share of common stock on a diluted basis, recognizing the convertibility of the preference stock and employee stock options outstanding, would be unchanged from those reported on a primary basis

**BLANK PAGE**

AND COMPANY
...ED SUBSIDIARIES
NT AND EQUIPMENT
...ED DECEMBER 31, 1969

| ADDITIONS AT COST | RETIREMENTS OR SALES | DEPRECIATION CREDITED TO ASSETS | BALANCE AT CLOSE OF YEAR |
|---|---|---|---|
| $ 572,000 | $ 222,000 | $ 16,000 | $ 8,760,000 |
| 11,950,000 | 1,695,000 | | 78,960,000 |
| 51,146,000 | 9,422,000 | 79,000 | 209,829,000 |
| 12,168,000 | 284,000 | 15,000 | 13,303,000 |
| 2,038,000 | 1,666,000 | 5,000 | 8,328,000 |
| - | 7,000 | - | 53,000 |
| $77,874,000 | $13,296,000 | $115,000 | $319,233,000 |

SCHEDULE V

RAND COMPANY

DATED SUBSIDIARIES

ECIATION AND AMORTIZATION

NDED DECEMBER 31, 1969

| CHARGED TO PROFIT AND LOSS | RETIREMENTS OR SALES | BALANCE AT CLOSE OF YEAR |
|---|---|---|
| $ 3,529,000 | $1,300,000 | $ 25,917,000 |
| 17,808,000 | 8,930,000 | 112,692,000 |
| 1,082,000 | 267,000 | 7,412,000 |
| 1,730,000 | 1,202,000 | 5,008,000 |
| 2,000 | 1,000 | 44,000 |
| $ 24,151,000 (A) | $11,700,000 | $151,073,000 |
| 115,000 | | |
| $ 24,266,000 | | |

**END**

SCHEDULE VI

# EXHIBIT D

# INGERSOLL-RAND

## ASBESTOS CLAIMS
### MONTHLY REPORT
### MAY 2007

| | Pending on 12/31/06 | For Month of MAY 2007 | | Year to Date in 2007 | | PENDING AT END OF MONTH |
|---|---|---|---|---|---|---|
| | | NEW | RESOLVED | TOTAL NEW | TOTAL RESOLVED | |
| AL | 920 | 0 | 0 | 28 | 29 | 919 |
| AR | 1,564 | 0 | 0 | 120 | 24 | 1,660 |
| AZ | 31 | 0 | 0 | 0 | 0 | 31 |
| CA | 441 | 40 | 44 | 133 | 150 | 424 |
| CT | 113 | 0 | 0 | 15 | 6 | 122 |
| DE | 167 | 22 | 2 | 232 | 35 | 364 |
| FL | 6,112 | 94 | 100 | 554 | 602 | 6,064 |
| GA | 1,158 | 0 | 0 | 76 | 11 | 1,223 |
| HI | 18 | 0 | 1 | 11 | 12 | 17 |
| IA | 3 | 0 | 0 | 0 | 0 | 3 |
| IL | 1,200 | 36 | 27 | 227 | 369 | 1,058 |
| IN | 235 | 1 | 2 | 16 | 11 | 240 |
| KS | 1 | 0 | 0 | 0 | 0 | 1 |
| KY | 4 | 0 | 0 | 0 | 0 | 4 |
| LA | 5,057 | 3 | 9 | 16 | 88 | 4,985 |
| MD | 1,982 | 23 | 1 | 255 | 29 | 2,208 |
| MA/NH/RI/ME | 737 | 5 | 8 | 91 | 45 | 783 |
| MI | 2,284 | 54 | 22 | 344 | 322 | 2,306 |
| MN | 33 | 1 | 1 | 2 | 1 | 34 |
| MS | 28,621 | 1 | 0 | 25 | 1 | 28,645 |
| MO | 434 | 12 | 5 | 36 | 99 | 371 |
| MT & ID | 60 | 0 | 0 | 5 | 0 | 65 |
| NV | 5 | 0 | 0 | 0 | 0 | 5 |
| NJ | 284 | 12 | 1 | 53 | 32 | 305 |
| NM | 4 | 0 | 0 | 1 | 0 | 5 |
| NY | 19,309 | 32 | 3 | 188 | 39 | 19,458 |
| NC | 84 | 0 | 0 | 14 | 0 | 98 |
| ND | 225 | 0 | 61 | 5 | 61 | 169 |
| OH | 6,517 | 7 | 3 | 98 | 43 | 6,572 |
| OK | 166 | 0 | 1 | 1 | 2 | 165 |
| OR | 8 | 0 | 0 | 1 | 0 | 9 |
| PA | 464 | 7 | 1 | 91 | 22 | 533 |
| PR | 0 | 0 | 0 | 0 | 0 | 0 |
| SC | 104 | 1 | 0 | 11 | 1 | 114 |
| SD | 5 | 0 | 2 | 0 | 2 | 3 |
| TN | 38 | 0 | 0 | 2 | 1 | 39 |
| TX | 22,173 | 198 | 86 | 374 | 475 | 22,072 |
| UT | 35 | 0 | 0 | 0 | 0 | 35 |
| VA | 23 | 4 | 1 | 14 | 6 | 31 |
| VI | 17 | 0 | 0 | 5 | 0 | 22 |
| WA | 123 | 2 | 1 | 27 | 37 | 113 |
| WV | 1,227 | 0 | 2 | 21 | 11 | 1,237 |
| WI | 1 | 0 | 0 | 0 | 0 | 1 |
| Total | 101,987 | 555 | 384 | 3,092 | 2,566 | 102,513 |