UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

INGERSOLL-RAND COMPANY,

                Plaintiff,

        v.

CENTURY INDEMNITY COMPANY (as
successor to CCI Insurance Company,
successor to Insurance Company of North
America),

                Defendant.

---------------------------------------

Civil Action No. 07-CV-04825 (LTS) (THK)

**REPLY MEMORANDUM OF LAW OF CENTURY INDEMNITY COMPANY ("CENTURY") IN SUPPORT OF ITS MOTION TO STAY OR DISMISS THIS ACTION**

Attorneys for Defendant

# TABLE OF CONTENTS

I.    Ingersoll-Rand's Abstention-Related Arguments Are Flawed ................................................... 2

    A.    The *Brillhart* Abstention Standard Applies Here ........................................................... 2

    B.    At A Minimum, *Brillhart* Applies to the Declaratory Counts ...................................... 3

    C.    Abstention Is Appropriate Under the *Brillhart* Standard .............................................. 3

    D.    Abstention Is Appropriate Even Under the *Colorado River* Standard ......................... 5

II.   Ingersoll-Rand's First-Filed Arguments Should Be Rejected ................................................... 7

    A.    The First-Filed Doctrine Supports A Stay Or Dismissal Here ...................................... 8

    B.    Century's Action Is Not An Improper Anticipatory Filing ........................................... 8

III.  *Forum Non Conveniens* Also Favors Dismissal of this Action ............................................... 9

The simple issue before this Court is whether the dispute between Century and Ingersoll-Rand should be heard in New Jersey (in the very county where Ingersoll-Rand is headquartered) or New York. Century brought its first-filed action in New Jersey, the state in which: Ingersoll-Rand has been headquartered since 1972 and incorporated since 1905;[1] Ingersoll-Rand brought prior asbestos-related insurance litigation against Century's predecessors and other carriers; the 2003 Settlement Agreement at the heart of this dispute was negotiated; the products at issue in the underlying asbestos litigation were primarily manufactured; Century paid, and Ingersoll-Rand accepted, over $25 million under the 2003 Settlement Agreement; the key, non-party witnesses to that Agreement reside; and potentially relevant documents are located. Despite these overwhelming New Jersey connections and the waste of judicial resources and risk of inconsistent results posed by such duplicative litigation, Ingersoll-Rand seeks to litigate before this Court the exact issues already before the New Jersey state court.[2]

The 2003 Settlement Agreement is just one of the settlements that Century and Ingersoll-Rand successfully negotiated over the course of the parties' decade-long relationship. In fact, the two key negotiators of the 2003 Agreement on behalf of Century and Ingersoll-Rand had, in the past, successfully negotiated other settlement agreements. This successful track record is in part why the parties were able to reach the 2003 Agreement. Under that Agreement, Century agreed to put aside coverage and other defenses and pay a specified percentage of Ingersoll-Rand's losses and expenses for asbestos and other claims. Despite billing Century according to the specific percentages set forth in the Agreement and receiving payment for those bills, Ingersoll-Rand reneged on the Agreement in 2006 – after Century had already paid tens of millions of dollars under the Agreement.

---

[1] Indeed, in the most recent 10-Q filed on behalf of Ingersoll-Rand Company Limited, here-defendant Ingersoll-Rand Company, which handles asbestos claims and litigation, is referred to as "IR-New Jersey." (Ingersoll-Rand Company Limited Form 10-Q (Exh. A) at 12.)

[2] In its Opposition Brief, Ingersoll-Rand rushes to manufacture New York ties to the negotiations of the 2003 Agreement and points to meetings that occurred *after* 2003, all of which are immaterial for present purposes. (*See* Clary Aff. to I-R Opp'n Br., pointing to a 2004 and a 2006 meeting.)

## ARGUMENT

**I.    Ingersoll-Rand's Abstention-Related Arguments Are Flawed**

This Court should stay or dismiss this action on abstention grounds. The factors considered by the federal courts in deciding whether to abstain – including whether the federal and state actions are duplicative, whether the claims can be adequately adjudicated in the state action, whether the dispute involves state law issues only as opposed to a novel issue of federal law, and the order of filing – weigh heavily in favor of a stay or dismissal here. *See, e.g., Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001).

**A.    The *Brillhart* Abstention Standard Applies Here**

At its core, this case is a declaratory judgment action. Indeed, the request for damages in Ingersoll-Rand's Count III is purely contingent, *i.e.*, it is reached *only if* the 2003 Agreement that is the subject of Count I is declared unenforceable. (Count II also requests declaratory relief.) Despite this, Ingersoll-Rand argues that its inclusion of a speculative damages count means that the *Colorado River* abstention standard applies instead of the *Brillhart* standard.[3] (*See* I-R Opp'n Br. at 7, citing *Village of Westfield, N.Y. v. Welch's*, 170 F.3d 116 (2d Cir. 1998).) Although this case easily meets the *Colorado River* standard (see *infra* at part I.D.), Ingersoll-Rand is incorrect that that standard applies here.

This Court has recognized that the footnote in *Westfield* – stating that *Colorado River* applies when a case involves both declaratory and damages counts – has been called into question by *Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17 (2d Cir. 1998). *Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, 2002 WL 850012, *5 (S.D.N.Y. May 3, 2002). More importantly, this Court

---

[3] Ingersoll-Rand also argues that Century cannot "legitimately" make an abstention argument because Century removed this action from state to federal court. Ingersoll-Rand cites absolutely no case law for this proposition. In any event, it has always been Century's position that the proper forum for this dispute is the New Jersey state court in which Century's action is pending.

stated in *General Star* that where "the damages sought by plaintiff is [sic] *contingent upon* a threshold finding that the [contracts] at issue are void," the *Brillhart* abstention standard may apply. *Id.* (emphasis added.) This Court stated that it "believes that it is entitled to exercise a greater level of discretion by virtue of the fact that virtually all claims stem from the underlying request for declaratory relief." *Id.* (This Court went on to analyze the case under *Colorado River* because if abstention was appropriate under that test, it would also be appropriate under *Brillhart*.) As in *General Star*, this case centers on requests for declaratory relief and involves a damages count that is purely contingent. Thus, this case should be governed by *Brillhart*.[4]

## B.   At A Minimum, *Brillhart* Applies to the Declaratory Counts

Assuming, *arguendo*, that *Brillhart* does not apply to this entire action, *Brillhart* should, at a minimum, apply to the declaratory counts (Counts I and II). In cases involving both declaratory and live damages counts, this Court has applied *Brillhart* to the declaratory count and *Colorado River* to the damages count. *See, e.g., Manna v. Greenburgh #11 Sch. Dist.*, 2 F. Supp. 2d 461 (S.D.N.Y. 1998); *Caisse Nationale de Credit Agricole v. Bank of Tokyo-Mitsubishi Trust*, 1997 WL 345216 (S.D.N.Y. June 20, 1997).

## C.   Abstention Is Appropriate Under the *Brillhart* Standard

Instead of addressing the *Brillhart* factors, Ingersoll-Rand simply argues – citing to the number of New York asbestos claims and the fact that Ingersoll-Rand maintained a New York place of business when it purchased the Century Policies, which it did through a New York broker – that *Brillhart* does not support abstention here because New York's interest in resolving Century's

---

[4]   Only two of the cases Ingersoll-Rand cites to support its argument that *Colorado River* should apply to this entire case were decided by courts within the Second Circuit. In *Westfield*, the Second Circuit applied *Colorado River* to the action before it, which included both declaratory and non-declaratory counts, but did not explain its decision and said nothing about whether *Brillhart* would apply to an action containing a non-declaratory claim that is merely contingent upon the outcome of primary, declaratory claims. 170 F.3d at 120-21. Thus, and as discussed *supra* in connection with *General Star*, *Westfield* is not here applicable. In *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006), this Court applied *Colorado River* to a mixed-claim action. There, however, and in contrast to this case, it appears that the majority of claims were non-declaratory and would be reached regardless of the outcome of the declaratory claims. *Id.* at 268, 272-273, n.26-27.

obligations for the asbestos claims is greater than New Jersey's. (I-R Opp'n Br. at 9-10.) First, even if

the number of asbestos claims were relevant (which it is not), that argument is misleading because

thousands of asbestos claims sit idle on New York's inactive docket. (*See In re: New York City Asbestos*

*Litig.*, No. 40000/88, Order (N.Y. Sup. Ct. Dec. 19, 2002) (Exh. B).) If one takes that into account

and focuses instead on the claims actually resolved in both states, the number of New York and New

Jersey claims are similar. In 2007, Ingersoll-Rand resolved 32 New Jersey claims compared to 39 New

York claims. (*See* Weiker Aff. to I-R Opp'n Br. at Exh. D.) Furthermore, claims are pending in

virtually every state, and New York is not even the state where the greatest number of claims have

been filed. (*Id.*) But more to the point, the facts relating to the underlying asbestos claims have

absolutely nothing to do with whether the 2003 Agreement is enforceable.[5]

    Second, Ingersoll-Rand is incorrect that New York law applies to this dispute. Under New

York's grouping of contacts choice-of-law approach, the traditional contracting factors are given the

most weight. *See, e.g., Brink's Ltd. v. S. Afr. Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996) (under New

York's center of gravity test, "traditional choice of law factors, the places of contracting and

performance are given the heaviest weight"); *Parenteau v. Kim*, 1998 WL 740778, *2 (S.D.N.Y. Oct. 22,

1998) (same).[6] Here, those contracting factors took place in New Jersey, not New York. The 2003

---

[5] Ingersoll-Rand cites two cases for the proposition that the location of underlying claims bears on which
forum has the greatest interest in resolving this dispute. (I-R Opp'n Br. at 10, citing *Borg-Warner Corp. v. Ins. Co.
of N. Am.*, 577 N.Y.S.2d 953 (App. Div. 1992) and *Flintkote Co. v. Am. Mut. Liab. Ins. Co.*, 480 N.Y.S.2d 742
(App. Div. 1984).) Neither case, however, involved the validity of an agreement; both were pure coverage
actions. Furthermore, *Borg-Warner* was an environmental action, in which the location of relevant waste sites
has been held to have particular importance, and in *Flintkote*, the state with the greatest interest there was both
the principal place of the insured risk and where the overwhelming majority of underlying claims were pending.
Here, the insured risk and the asbestos claims are spread throughout the country.

[6] Ingersoll-Rand cites the Appellate Division decision in *Foster Wheeler* to support its choice-of-law argument,
leaving out the fact (and citation to subsequent history) that the case is currently pending before the Court of
Appeals on the very issue upon which Ingersoll-Rand relies. Ingersoll-Rand also argues that New Jersey
choice-of-law rules would lead to application of New York law here. To the contrary, New Jersey choice-of-
law rules likely would lead to application of New Jersey law to the issue of the validity of the 2003 Agreement.
*See D'Ascoli v. Stieh*, 742 A.2d 138 (N.J. Super. Ct. App. Div. 1999) (applying New Jersey law to determine

(continued...)

4

Agreement was negotiated and entered into in New Jersey by a New Jersey corporation principally

doing business in New Jersey.  Ingersoll-Rand's focus on contracting events relating to the Century

Policies is misplaced; those Policies do not even come into play unless the 2003 Agreement is held

unenforceable.[7]  That the New Jersey court in prior litigation involving Ingersoll-Rand applied New

York law to other carriers' policies that are not here at issue and have nothing to do with the 2003

Agreement is beside the point.  In any event, the New Jersey courts often apply New York law and

are fully capable of doing so here if New York law is determined to be applicable.  *See, e.g., Goldentree*

*Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 593 (S.D.N.Y. 2006) ("Ohio courts are

equally competent to apply New York state law as is this Court.").

> ### D.    Abstention Is Appropriate Even Under the *Colorado River* Standard

Even if some (or all) of this case were governed by the *Colorado River* standard, abstention

would still be appropriate.  This Court has emphasized that "[s]ince *Colorado River*, federal courts have

time and time again followed the analysis set out by the Supreme Court and have declined to

---

(continued)

enforceability of contract made in New Jersey under which services were performed in New Jersey by New Jersey practitioner); *McBride v. Minstar, Inc.*, 662 A.2d 592, 597 (N.J. Super. Ct. Law Div. 1994) (regarding legal effect of contract, "'the law of the place of the contract ordinarily governs the choice of law…'").

[7]  At the same time Ingersoll-Rand disavows the Settlement Agreement in its entirety, Ingersoll-Rand also seeks protection under the choice-of-law provision in the Agreement.  The New York courts recognize that allowing a party to enforce a provision in an agreement the party otherwise disavows is inequitable and generally do not allow it.  *See, e.g., Palumbo v. Donalds*, 754 N.Y.S.2d 856, 863 (Civ. Ct. 2003) (stating "[defendants] should not have the benefit of part of the oral agreement, while disavowing the rest[,]" and enforcing that agreement while refusing to give defendants the benefit sought).  In any event, that provision applies to issues regarding the interpretation of the Agreement, not to the predicate issue of the Agreement's validity.  Here, the Agreement was negotiated and entered into in New Jersey, and New Jersey has the greatest interest in the issue of the validity of an agreement entered into in New Jersey by a New Jersey company.

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) and *International Minerals & Resources v. Pappas*, 96 F.3d 586 (2d Cir. 1996) – the two cases cited by Ingersoll-Rand on this issue – are distinguishable.  In both of those cases, the validity of the agreement before the court was not in dispute.  In *Motorola*, the issue before the court was whether an arbitration provision in the undisputed agreement could be enforced by a nonsignatory.  In making that determination, the court applied the choice-of-law provision that the valid agreement contained.  388 F.3d at 49-51.  Similarly, in *Pappas*, the court was asked to determine on what date the undisputed agreement there came into effect, not whether it was valid in the first instance.  96 F.3d at 591-92.  To determine the effective date, the court applied English law per a provision in the contract.  *Id.* at 592.

adjudicate disputes before them in deference to parallel state court proceedings." *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 815 F. Supp. 127, 131 (S.D.N.Y. 1993).  Under *Colorado River*, the following factors are considered:  (1) jurisdiction by either court over *res* or property; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) order of court litigation; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.  Of these various factors, this Court has placed particular importance on avoiding piecemeal or duplicative litigation.  For example, in *Goldentree Asset Management*, this Court applied *Colorado River* and abstained in favor of a pending state action, noting that "separate litigation of the construction of the parties' agreement 'increases the likelihood that [the] dispute will drag on and decreases the likelihood of settlement.'  Accordingly, the avoidance of piecemeal litigation factor weighs heavily in favor of abstention." 448 F. Supp. 2d. at 594 (citation omitted).  This Court also stated that plaintiff's rights are adequately protected in the state forum, where it can bring as counterclaims any claims asserted in the federal action. *Id.* at 595.

This Court and the Second Circuit have abstained under *Colorado River* in numerous other cases involving duplicative federal and state litigation. *See, e.g., DeCisneros v. Younger*, 871 F. 2d 305, 309 (2d Cir. 1989) (abstention appropriate due to risk of piecemeal litigation presented by the concurrent actions and the existence of exclusively state law issues; on latter issue, court stated that "the interests of comity are best served by waiting for the state court to speak first . . . .  Such a deferral by the federal court guarantees it will not misinterpret [the applicable state] law."); *Wiggin & Co. v. Ampton Invs., Inc.*, 66 F. Supp. 2d 549, 554 (S.D.N.Y. 1999) (abstention "strongly" supported because the parallel suits arose out of the same set of facts and judicial resources would be wasted if both actions went forward; court also relied on fact that state action was filed first and only state law issues were involved); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 658 (S.D.N.Y. 1997) (because both actions involve the same requests for relief under an insurance policy, "the piecemeal litigation factor

becomes an even weightier factor favoring abstention[,]" which is supported by the existence of exclusively state law issues and adequate protection of the plaintiff's rights in the state action).

As in the above cases, abstention would here too be appropriate under *Colorado River*, as five of the six factors favor New Jersey. (Only the first factor – jurisdiction over property – is not relevant.) The convenience of the forum weighs in favor of abstention because Ingersoll-Rand is a New Jersey company and its relevant documents and witnesses (particularly key, non-party witnesses) are primarily located there. Avoiding piecemeal litigation also favors abstention – if both the New York and New Jersey actions proceed, the parties will be litigating identical issues in different forums, and there will exist the risk of inconsistent results. The order and progress of the actions favors New Jersey because that action was commenced first, discovery has been served and, in just a matter of days, the New Jersey court will hold a hearing on Ingersoll-Rand's motion to dismiss the New Jersey Complaint. No issues of federal law are implicated here, and, as discussed *infra* at n.6, New Jersey law applies to the issue of the validity of the 2003 Agreement. Finally, the adequacy of protection in the state court also favors abstention because the claims and relief sought are virtually identical, and Ingersoll-Rand can bring as a counterclaim in the New Jersey Action any claim it may wish to bring in the instant action. Thus, the *Colorado River* factors here weigh heavily in favor of abstention.

## II.    Ingersoll-Rand's First-Filed Arguments Should Be Rejected

Century's New Jersey Action was the first-filed and is pending in the jurisdiction with the greatest ties to this dispute. In light of this, it makes no sense for this Court to waste its resources and risk inconsistent results by moving ahead to decide state law issues already before the New Jersey court. This Court should stay or dismiss this case in favor of the New Jersey Action.[8]

---

[8] Ingersoll-Rand argues that the first-filed rule does not apply where the actions were filed close in time. This Court has stated, however, that "the shortness of the interval [between filings] does not provide sufficient justification for ignoring the order of filing." *Transatl. Reins. Co. v. Cont'l Ins. Co.*, 2003 WL 22743829, *1

(continued...)

### A.    The First-Filed Doctrine Supports A Stay Or Dismissal Here

Courts sometimes have indicated that abstention, rather than the first-filed rule, is the doctrine that should be applied in staying or dismissing federal litigation in favor of pending state court litigation. *See, e.g., Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462 (S.D.N.Y. 2001). However, many cases have applied the first-filed rule outside the context of competing federal court actions – including where the competing actions were federal and state actions. *See, e.g., Pike v. WSNCHS E., Inc.*, 2003 WL 548884 (S.D.N.Y. Feb. 25, 2003) (first-filed rule applied to competing federal and state actions); *Quality King Distrib., Inc. v. KMS Research, Inc.*, 946 F. Supp. 233 (E.D.N.Y. 1996) (same);[9] *JC Mfg., Inc. v. NPI Elec., Inc.*, 577 N.Y.S.2d 145 (App. Div. 1991) (competing state actions); *Conn. Gen. Life Ins. Co. v. Zurich Reins. (N. Am.), Inc.*, 2002 WL 1880261 (N.Y. Sup. Ct. Mar. 7, 2002) (same); *cf.* N.Y. C.P.L.R. 3211(a)(4) (allowing party to move to dismiss if "there is another action pending between the same parties for the same cause of action in a court of any state or the United States").

### B.    Century's Action Is Not An Improper Anticipatory Filing

Ingersoll-Rand argues that the New Jersey Action is an improper anticipatory filing, and should not be accorded first-filed status. This Court has defined an "improper anticipatory filing" justifying an exception to the first-filed rule as "'one made after the apparent threat of a presumed adversary filing the mirror image of that suit' in another court. . . . An 'apparent threat' has been

---

(continued)

(S.D.N.Y. Nov. 20, 2003). Moreover, this Court recognizes that the court in which the action is first-filed should decide the forum issue. *See Schnabel v. Ramsey Quant. Sys., Inc.*, 322 F. Supp. 2d 505, 510-11 (S.D.N.Y. 2004) ("This district has laid down a bright-line rule…: 'The court before which the first-filed action was brought determines which forum will hear the case.'") (citation omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Liab. Mut. Fire Ins. Co.*, 2005 WL 2209110, *1 (S.D.N.Y. Sept. 7, 2005) (same).

[9]    The Court kept the case as to the parties not involved in the state litigation. In discussing whether the balance of conveniences justified a departure from the first-filed rule, this Court found that most of the key witnesses were in the state forum, the underlying transaction occurred there and all the defendants but one were located there. In looking at whether "special circumstances" existed to justify an exception to the first-filed rule, this Court said that because the operative facts took place in the first-filed forum, the plaintiffs there could not be said to have forum shopped.

found where there is an *overt statement* that a party intends to commence litigation.  To put a party on notice of a forthcoming lawsuit, a letter to a party must state '*the intention to file suit, a filing date, and/or a specific forum for the filing of the suit.*'"  *Pharm. Res., Inc. v. Alpharma USPD, Inc.*, 2002 WL 987299, *3 (S.D.N.Y. May 13, 2002) (emphasis added) (citation omitted).  Here, Ingersoll-Rand has not alleged (nor could it) that it told Century it intended to bring litigation, much less made the detailed kind of statements required for the New Jersey Action to be considered an "improper anticipatory filing." [10]

Moreover, Ingersoll-Rand's argument that Ingersoll-Rand is the real plaintiff when it comes to this dispute is substantively incorrect.  *See Seneca Ins. Co. v. Lincolnshire Mgmt., Inc.*, 703 N.Y.S.2d 127 (N.Y. App. Div. 2000) ("[Plaintiffs'] argument that they are a 'natural plaintiff'. . . is without merit, since that doctrine is not recognized in New York law.").  That argument is also wrong factually, as Century is clearly the aggrieved party here – it put aside coverage and other defenses and has paid over $25 million under the 2003 Agreement – and had every right to file the New Jersey Action when Ingersoll-Rand reneged.  Because it is undisputed that Century's action was the first-filed and because Ingersoll-Rand has not demonstrated that Century's action was an improper anticipatory action justifying departure from the first-filed rule, this Court should stay or dismiss this action.

**III.    *Forum Non Conveniens* Also Favors Dismissal of this Action**

The New York courts have routinely granted *forum non conveniens* motions, particularly where, as here, the events giving rise to the claim before the court occurred in another state, that state's law

---

[10]  All of the cases Ingersoll-Rand cites for the proposition that Century is an improper plaintiff miss the mark.  Of the cases involving actions between an insurer and a policyholder, two were declaratory judgments filed after the policyholder requested and the insurer denied coverage or rescinded the policy. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996); *Cont'l Ins. Cos. v. Wickes Cos., Inc.*, 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991).  In other cases, the insurer had received demand letters from the policyholder indicating that they intended to file suit unless payment was made by a certain date; the insurers then filed their own declaratory judgment action prior to the specified date. *Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347 (S.D.N.Y. 1992); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581 (S.D.N.Y. 1990).  Finally, in other cases cited by Ingersoll-Rand, the policyholder submitted a proof of loss to the insurer, and the insurer filed suit either on the same day or before denying coverage. *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983).

governs the dispute, and the majority of witnesses or documents are located in that other state. *E.g.*, *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996) (noting that *forum non conveniens* factors favored abstention where parties were not New York corporations, at-issue insurance policies were not governed by New York law, most relevant witnesses and documents were outside New York and New York had little connection to dispute, despite the fact that the relevant policies were underwritten there); *Gillenson v. Happiness Is Camping, Inc.*, 829 N.Y.S.2d 444 (Sup. Ct. 2006) (dismissing on *forum non conveniens* grounds in favor of New Jersey action where New Jersey law applied, injury occurred in New Jersey to New Jersey domiciliary and where witnesses either lived in New Jersey or would not be inconvenienced by case proceeding there).

The negotiations which resulted in the formation of the 2003 Agreement occurred in New Jersey (and, to a lesser extent, Pennsylvania) and not, as Ingersoll-Rand contends, New York. (Myers Aff. (Exh. C) at ¶¶ 6-8.) The relevant documents and witnesses (including key non-party witnesses) are located outside of New York, and neither Ingersoll-Rand nor Century is a New York corporation. As a result, New York has a minimal interest in this dispute compared to New Jersey. Neither this Court nor the parties should be put through the expense and inconvenience of litigating the exact same issues here that are already before the New Jersey court.

Dated: July 31, 2007

Respectfully submitted,

**CROWELL & MORING LLP**

By:_____/s/ Frank M. Esposito_____
             Frank M. Esposito, Esq. (FE2558)

David Florin
Kathryn A. Underhill
Margot L. Green
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624 2500 (ph)
(202) 628 5116 (fax)

153 East 53rd Street, 31st floor
New York, NY 10022
(212) 223 4000 (ph)
(212) 223 4134 (fax)

Attorneys for Defendant Century Indemnity Company

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 31st day of July, 2007, I caused a copy of the foregoing Reply Memorandum of Law to be delivered via first class mail to the following individuals:

>Anthony Bartell
>Steven H. Weisman
>McCarter & English LLP
>245 Park Avenue, 27th Floor
>New York, NY 10167-0001
>
>Attorneys for Plaintiff
>Ingersoll-Rand Company


>_/s/ Frank M. Esposito_
>Frank M. Esposito