UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INGERSOLL-RAND COMPANY, | Case No. 07-CV-4825 (LTS) (THK) |
| Plaintiff, | |
| v. | |
| CENTURY INDEMNITY COMPANY (as successor to CCI Insurance Company, successor to Insurance Company of North America), | |
| Defendant. | |

**PRELIMINARY PRE-TRIAL STATEMENT**

Ingersoll-Rand Company ("Ingersoll Rand") and Century Indemnity Company ("Century") jointly submit this Preliminary Pre-Trial Statement pursuant to the Court's June 19, 2007 Initial Conference Order and the Court Endorsed Letter, dated July, 19, 2007, adjourning the Initial Conference to October 12, 2007.

A.   Ingersoll Rand's Statement of the Nature of this Action

Ingersoll Rand filed this action, on May 17, 2007, in the Supreme Court of the State of New York, New York County. Century, on June 6, 2007, removed this action pursuant to 28 *U.S.C.* § 1446(d). Ingersoll Rand seeks damages arising from Century's alleged breach of certain insurance policies sold to Ingersoll Rand. Ingersoll Rand also seeks a declaration that: (1) the parties did not settle the coverage disputes subject to this action; and (2) Century must reimburse Ingersoll Rand, under certain insurance policies, for defense and indemnity costs arising from underlying asbestos-related claims.

ME1 6818926v.1

Century's Statement of the Nature of this Action

This action, in the first instance, is a declaratory judgment action involving the existence and enforcement of a settlement agreement ("2003 Settlement Agreement") between Ingersoll Rand and Century, which Century contends and Ingersoll Rand denies was reached by the parties and memorialized in a document dated December 10, 2003 and sent to Ingersoll Rand on December 11, 2003 ("Century Document"). This action is virtually identical to a first-filed action by Century pending in the Superior Court of New Jersey, Bergen County, and assigned to Judge Brian Martinotti ("New Jersey Action"). Ingersoll Rand has moved to dismiss Century's New Jersey Action, and Judge Martinotti held oral argument on that motion on September 7, 2007. Judge Martinotti has also scheduled a settlement conference with the parties for October 17, 2007. For its part, Century has moved to dismiss or stay this action in favor of the New Jersey Action, and Century's motion has been fully briefed.

The 2003 Settlement Agreement at issue in both in the New Jersey Action and here addressed the coverage and handling of asbestos and other claims made against Ingersoll Rand by individuals asserting that they sustained bodily injury allegedly due to the use of Ingersoll Rand's products. Ingersoll Rand sought coverage for these underlying bodily injury claims under two excess insurance policies issued by Century to Ingersoll Rand. Century's position was that, even if coverage were available, the maximum amount of that coverage would be $25 million; Ingersoll Rand for its part contended that much more would be available under the Century Policies.

Century asserts, and Ingersoll Rand denies, that the Parties entered into the 2003 Settlement Agreement (in New Jersey), which fully resolved Ingersoll Rand's coverage claims under the two excess policies and settled their dispute as to the available coverage under those policies, if any, at a compromise amount of $37.5 million. Century has already paid, and

ME1 6818926v.1

Ingersoll Rand has accepted (at its offices in New Jersey, where it is incorporated and headquartered), over $25 million pursuant to and in reliance upon the terms of the 2003 Settlement Agreement.  Ingersoll Rand denies that the payments were made pursuant to the 2003 Settlement Agreement.

To the extent this Court finds in Ingersoll Rand's favor on its First Cause of Action, the Parties' rights and obligations under the Policies will need to be determined, and this action will become an insurance coverage action.  What the Parties' rights and obligations under the Policies are need not be reached unless and until the Court first makes determinations as to the existence and enforceability of the 2003 Settlement Agreement.

B.   The Court possesses jurisdiction over this action pursuant to 28 *U.S.C.* § 1332.  Ingersoll Rand incorporated and maintains its principal place of business in New Jersey.  Century incorporated and maintains its principal place of business in Pennsylvania.  The amount in controversy exceeds $75,000.  Neither party contests the Court's jurisdiction over this matter.  Century, however, filed a pre-Answer motion to stay or dismiss this action in favor of a pending New Jersey state court action.

C.   The parties consider the following material facts uncontested:

(1)   Century sold to Ingersoll Rand two multi-year excess liability policies; i.e., (1) policy number XBC1904, issued from January 1, 1966 through January 1, 1969 ("1966 Excess Policy"); and (2) policy number XBC42188, issued from January 1, 1969 through February 15, 1972 ("1969 Excess Policy") (together with the 1966 Excess Policy, the "Excess Policies").

(2)   Ingersoll Rand paid an additional premium of $1,066 to extend the 1969 Excess Policy from January 1, 1972 through February 15, 1972.

(3) On August 28, 1969, Century issued Endorsement No. 3, which increased the liability limits of the 1969 Excess Policy from $10 million to $15 million ("August Endorsement"). Ingersoll Rand paid an additional premium of $6,472 for this Policy change.

(4) Ingersoll Rand defends asbestos-related liability claims in New York County, New Jersey and elsewhere ("Asbestos Claims"), which give rise to defense and indemnity costs.

(5) Century has reimbursed Ingersoll Rand slightly more than $25 million for the bodily injury claims under the Excess Policies. All such payments have been made from Century's Pennsylvania offices to Ingersoll Rand's New Jersey offices.

(6) Ingersoll Rand has incurred costs for the Asbestos Claims in excess of $25 million for which Ingersoll Rand is seeking coverage from Century.

(7) By 2002, Ingersoll Rand had sought coverage from Century under the Excess Policies.

(8) The Excess Policies form the basis of this action and were the subject of the Century Document.

(9) Ingersoll Rand maintained its principal place of business in New York, New York when it purchased the Excess Policies. Ingersoll Rand purchased the Excess Policies through the insurance producer formerly known as Marsh & McLennan, Inc.

(10) Ingersoll Rand is incorporated under the laws of New Jersey. Ingersoll Rand has been a New Jersey corporation since 1905. Ingersoll Rand maintains, and established at some point in 1972, its principal place of business in New Jersey.

(11) In 2002 and 2003, the parties held settlement discussions in an attempt to resolve their disputes under the Excess Policies.

(12) Mr. Malcolm Myers for Century and Ms. Ingrid Morscher for Ingersoll Rand participated in those settlement discussions.

ME1 6818926v.1

D.    This Court possesses subject matter jurisdiction over this controversy and personal jurisdiction over the Parties.

E.    (1)    Whether New York or New Jersey substantive law applies to the causes of action set forth in the Complaint.

(2)    <u>First Cause of Action</u>:  A judicial determination of whether the parties reached a settlement in 2003 as memorialized in the Century Document.

Ingersoll Rand contends that the issues to be determined may depend on whether New York or New Jersey substantive law applies to this cause of action.

Century contends that this cause of action may include determinations on the following issues:

- Whether the Parties mutually agreed to the essential terms of the agreement;

- Whether the Parties manifested an intent to be contractually bound by the terms of the agreement;

- Whether the terms of the agreement are sufficiently definite so as to render performance under the agreement ascertainable; and

- In the alternative, whether Century has been performing, to its detriment, under the agreement in reliance upon Ingersoll Rand's express promises set forth therein and upon Ingersoll Rand's implicit course of conduct in the years following entering into the agreement.

(3)    <u>Second Cause of Action</u>:  A judicial determination of the parties' rights and obligations, under the Excess Policies, for the Asbestos Claims.

Century contends that only if the Court does not find that the parties reached an agreement, then the Court must determine the parties rights and obligations, under the Excess Policies, for Asbestos Claims.  Century contends that the issues include:

- Whether and to what extent Century has any coverage obligations under the Excess Policies for the Asbestos Claims, including the liability limits provided by

- the Excess Policies to pay defense and indemnity costs arising from the Asbestos Claims;

- Whether all preconditions to coverage, as set forth in the Excess Policies, have been satisfied, including but not limited to the whether the liability limits of the underlying insurance has been properly exhausted;

- Whether Century has any defense cost obligations under the Excess Policies and, if so, the extent of those obligations;

- The proper method for allocating indemnity and defense costs for the Asbestos Claims that Century might be obligated to pay under the Excess Policies; and

- Whether certain costs incurred by Ingersoll Rand are reasonable and necessary.

(4)  <u>Third Cause of Action</u>: A judicial determination as to whether Century breached any of its obligations under the Excess Policies; and if so, whether and in what measure Ingersoll Rand suffered any damages as a result of such breach.

Century contends that only if the Court does not find that the parties reached an agreement, then the Court must determine the issues described in this paragraph E.(4).

F.  <u>Contested Material Facts</u>

(1)  Ingersoll Rand disputes Century's claim that the parties settled their insurance coverage dispute and that the parties memorialized such settlement in the Century Document.

(2)  Ingersoll Rand and Century dispute whether, at the November 13, 2003 meeting held in New Jersey, Ms. Ingrid Morscher or Mr. John Clary, for Ingersoll Rand, and Mr. Malcolm Myers, for Century, reached an agreement to settle Ingersoll Rand's claims under the Excess Policies.

(3)  Ingersoll Rand and Century dispute whether Ms. Ingrid Morscher communicated to Century that Ingersoll Rand management had approved such an agreement.

ME1 6818926v.1

(4)     Ingersoll Rand and Century dispute whether the bills received by Century from Ingersoll Rand after November 13, 2003 were pursuant to the specific percentages set forth in the Century Document.

(5)     Ingersoll Rand and Century dispute whether for the next two years, Ingersoll Rand continued to bill Century, and Century continued to pay, under those specific percentages set forth in the Century Document.

(6)     Ingersoll Rand and Century dispute whether prior to July 2006 and after the Century Document was drafted, Ingersoll Rand ever told Century that it rejected and would not sign the Century Document.

(7)     Ingersoll Rand and Century dispute whether and to what extent the Excess Policies provide insurance coverage for the Asbestos Claims.

(8)     Ingersoll Rand and Century dispute the total liability limits provided by the Excess Policies to pay defense and indemnity costs arising from the Asbestos Claims.

(9)     Ingersoll Rand and Century dispute whether and to what extent the Excess Policies require Century to provide coverage for Ingersoll Rand's defense costs and indemnity costs arising from the Asbestos Claims.

(10)    Century disputes Ingersoll Rand's claim that the Excess Policies provide liability limits of $100 million to pay defense and indemnity costs arising from the Asbestos Claims, as follows:

- The 1966 Excess Policy provides Ingersoll Rand with annual limits of $10 million, each occurrence and in the aggregate, for product hazard claims. The 1966 Policy, therefore, provides a total of $30 million in limits for the Asbestos Claims.

- The 1969 Excess Policy initially provided Ingersoll Rand with annual limits of $10 million, each occurrence and in the aggregate, for product hazard claims. On August 28, 1969, however, Century issued the August Endorsement which increased the Policy's annual limits from $10 million to $15 million, each

- occurrence and in the aggregate, for product hazard claims, effective July 10, 1969.

- The August Endorsement creates a short term policy period of January 1, 1969 through July 10, 1969, which provides Ingersoll Rand with $10 million in limits, each occurrence and in the aggregate, for product hazard claims. The August Endorsement also creates a short term policy period of July 10, 1969 through January 1, 1970, which provides Ingersoll Rand with $15 million in limits, each occurrence and in the aggregate, for product hazard claims.

- Century also extended the 1969 Excess Policy from January 1, 1972 through February 15, 1972. This extension created a stub policy which provides Ingersoll Rand with an additional $15 million in limits, each occurrence and in the aggregate, for product hazard claims.

- The 1969 Excess Policy provides a total of $70 million in limits, each occurrence and in the aggregate, for the Asbestos Claims.

(11) Century contends and Ingersoll Rand disputes that, even if the parties reached no settlement agreement, and even if coverage is available under the Excess Policies, the maximum amount of coverage would be $25 million.

G. Ingersoll Rand bases its first and second causes of action on N.Y. CPLR 3001 and N.Y. CPLR 3017(d). Ingersoll Rand bases its third cause of action on provisions in the Excess Policies and on applicable case law.

H. <u>Ingersoll Rand's Position</u>

Century filed a pre-Answer motion to dismiss. Ingersoll Rand, therefore, cannot ascertain the legal basis of any defense Century may assert other than Century's claim that the Century Document relieves it of its obligations under the Excess Policies.

<u>Century's Position</u>

At this stage of the proceeding asserting Century's defenses (which relate only to a determination of whether there is coverage) is premature. However, in the event that the Court does reach the coverage/breach of contract causes of action, Century will likely assert a number

ME1 6818926v.1

of coverage defenses, including, but not limited to those coverage issues identified in Paragraph F above.

Century may have additional defenses that can not now be articulated due to the fact that Century does not have all documents and information bearing on the insurance coverage issues that may be raised by this action. Insofar as Century can not now assert all of the defenses it may have to any alleged coverage under any Century policies, it expressly reserves the right to reevaluate its defenses and/or to assert additional defenses upon the particularization of Ingersoll Rand's claims, upon discovery and review of additional documents and information, and upon the development of other pertinent facts.

I.      Ingersoll Rand's Burden of Proof Contentions

(1) Century bears the burden of proof with respect to Ingersoll Rand's first cause of action. Century must prove the parties settled their liability limits dispute at a November 13, 2003 meeting and that the Century Document memorializes the parties' alleged settlement.

(2) With respect to Ingersoll Rand's second cause of action, it must identify the Excess Policies' liability limits available for defense and indemnity costs arising from the Asbestos Claims. Century bears the burden of proving any Excess Policy exclusion bars coverage for the Asbestos Claims. Century also bears the burden of proving: (a) the Excess Policies provide total occurrence limits of only $25 million for the Asbestos Claims; and (b) the two Century stub policies provide no additional liability limits.

(3) Ingersoll Rand bears the burden of proof with respect to its third cause of action. Ingersoll Rand must show Century failed to satisfy its obligations under the Excess Policies and the damages Ingersoll Rand incurred as a result of Century's breach of contract.

(4) Because Century filed a pre-Answer motion to dismiss, Ingersoll Rand cannot state whether it or Century bears the burden of proof for any such unasserted defense.

<u>Century's Burden of Proof Contentions</u>

(1) As the party requesting declaratory judgment in this action, Ingersoll Rand has the burden of proving it is entitled to the declaration it seeks. Thus, Ingersoll Rand must prove that parties did not reach a binding agreement resolving their disputes under the Excess Policies.

(2) As to Ingersoll Rand's Second and Third Causes of Action, Ingersoll Rand, as the insured, bears the burden of proving coverage and issues relating to that coverage.

J.  Ingersoll Rand cannot yet advise whether it must amend its pleadings or join any parties to this action. The Court should permit the parties until one hundred twenty (120) days before the end of fact discovery to amend their pleadings and join parties to this action. If the Court denies Century's motion to dismiss, the Court should permit Century to file a responsive pleading within ten (10) days of the entry of the Court's order with respect to Century's motion to dismiss.

K.  The parties do not consent to transfer this case to a magistrate judge for trial.

L.  If the Court denies Century's dismissal motion, then the parties propose to make initial disclosures, pursuant to Fed. R. Civ. P. 26, sixty (60) days following the Court's decision.

M.  <u>Disclosure Subjects</u>

(1)  The parties may need discovery regarding: (1) whether the parties settled their coverage disputes; (2) whether the parties memorialized a settlement through the Century Document; and (3) the available limits and other coverage issues under the Excess Policies. Ingersoll Rand also may need discovery regarding any defenses Century asserts in its Answer.

(2)  Name, address and telephone number of those persons likely to possess discoverable information that the disclosing party may use in support of its claims or defenses.

(3) Copies of, or description by category and location, of documents, electronically stored information or tangible items in the possession, custody or control of the disclosing party that the disclosing party may use in support of its claims or defenses.

(4) Computation of any category of damages claimed by the disclosing party, making available for inspection and copying documents or other evidentiary materials not privileged or protected from disclosure on which the party bases its computation.

<u>Ingersoll Rand's Discovery Cut-Off Proposal</u>

Ingersoll Rand proposes that the parties conduct simultaneously fact discovery on all issues presented in its Complaint. Ingersoll Rand proposes a six (6) month discovery period commencing after the Court decides Century's motion to dismiss.

<u>Century's Discovery Cut-Off Proposal</u>

To the extent the Court finds that the parties reached a settlement resolving Ingersoll Rand's claims under the Excess Policies, the Court will not need to reach Counts II and III of the Complaint. As a result, Century proposes that this matter be handled in two phases. In Phase I, only the issues contained in Count I will be addressed, concluding with trial, if necessary. In Phase II, should it become necessary, the issues implicated in Counts II and III of the Complaint will be addressed. Accordingly, Century proposes that the Court set a schedule as follows:

<u>Phase I</u>

(i) The parties will conduct all discovery, on Count I only, for 4 months. As the Plaintiff bears the burden of proof, sixty (60) days before the close of discovery, Plaintiff shall identify, pursuant to F.R. Civ. P 26 (a)(2), any experts it intends to call at trial with respect to Count I and Century will have 30 days to take the depositions of all experts so identified. Thirty (30) days after Plaintiff has identified such experts, Defendant shall identify, pursuant to F.R. Civ. P 26 (a)(2),

any experts it intends to call at trial with respect to Count I and Ingersoll Rand will have 30 days to take the depositions of all experts so identified.

(ii)   Motions for Summary Judgment will be filed 30 days after the close of that discovery.

(iii)  Depending upon the result of the dispositive motions, the parties will either proceed directly to trial under Count I or this matter will be resolved.

(iv)  If the parties proceed to trial, Century expects trial on the Phase I issues to last no more than 5 days.

Phase II (if necessary)

(i)    The parties will conduct fact discovery for 6 months.

(ii)   Within 30 days of the close of fact discovery, Ingersoll Rand will identify any experts they intend to call as witnesses at trial, pursuant to F.R.Civ.P. 26(a)(2), and Century will have 30 days to take the depositions of all experts so identified.

(iii)  Within 30 days of the close of discovery of Ingersoll Rand's experts, Century will identify any experts they intend to call as witnesses at trial, pursuant to F.R.Civ.P. 26(a)(2), and Ingersoll Rand will have 30 days to take the deposition of all experts so identified.

(iv)  Within 30 days of the close of all discovery, the parties may file dispositive motions.

(v)   If the parties proceed to trial, Century expects trial on the Phase II issues to last no more than 10 days.

N. The parties may need expert testimony with respect to liability and/or damages issues.

<u>Ingersoll Rand's Proposal</u>

The parties simultaneously identify, and serve the opinions of, any affirmative expert witnesses they intend to call at trial, pursuant to Fed. R. Civ. P. 26(a)(2), within forty-five (45) days after close of fact discovery, and that the parties have forty-five (45) days to take the depositions of all affirmative expert witnesses so identified. Twenty (20) days following the close of discovery of the parties' affirmative experts, the parties simultaneously identify, and serve the opinions of, any rebuttal expert witnesses they intend to call at trial, pursuant to Fed. R. Civ. P. 26(a)(2), and that the parties have forty-five (45) days to take the depositions of all rebuttal expert witnesses so identified.

<u>Century's Proposal</u>

Century proposes the Court bifurcate discovery, including expert discovery, consistent with its discovery proposal in Paragraph M above.

O. No changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of Court except as proposed in this Paragraph O.

The Parties expressly reserve the right to request the production of metadata for particular documents once document production has occurred.

The Court should allow each party to propound thirty (30) Interrogatories in addition to the standard Interrogatories set forth in Local Civil Rule 33.3. The complexity of certain fact issues necessitates these additional Interrogatories, which may allow the parties to narrow the issues to be addressed at depositions.

The Parties agree that no discovery deadlines should begin to run until the Court has decided Century's motion to dismiss.

ME1 6818926v.1

P.  The parties have participated in formal mediation and continue to engage in settlement discussions.  The parties must attend a mandatory settlement conference on October 17, 2007 before The Honorable Brian R. Martinotti of the New Jersey Superior Court, Bergen County.  In connection with the October 17, 2007 settlement conference, Judge Martinotti required the Parties to submit to the court their respective "bottom-line" settlement figures and supporting rationales for those figures.  The parties submitted these figures and supporting rationales on Friday, September 28, 2007.

Q.  Ingersoll Rand demands trial by jury.

<u>Ingersoll Rand's Proposal</u>

Ingersoll Rand proposes this Court try simultaneously all issues presented in Ingersoll Rand's Complaint and all issues Century may present in its answer.  Ingersoll Rand estimates it will require approximately ten (10) trial days to present its case.

<u>Century's Proposal</u>

Century proposes the Court bifurcate this case consistent with its proposal in Paragraph M above.  Century estimates it will require approximately five (5) trial days to present its case on Ingersoll Rand's first cause of action.  Century estimates it will require approximately ten (10) trial days to present its case on Ingersoll Rand's second and third causes of action.

R.  The parties, at this time, request no further orders from the Court under Fed. R. Civ. P. 26(c) or 16(b) and (c).

Dated:  October 5, 2007

| **McCARTER & ENGLISH, LLP** | **CROWELL & MORING LLP** |
|---|---|
| By: */s/ Steven H. Weisman*<br>    Steven H. Weisman, Esq. (SW2408)<br>    Anthony Bartell<br>    (Admitted *Pro Hac Vice*)<br>245 Park Avenue<br>27th Floor<br>New York New York 10167-0001<br>(212) 609-6800 (ph)<br>(212) 609-6921 (fax)<br><br>Attorneys for Ingersoll Rand Company | By: */s/ Frank M. Esposito*<br>    Frank M. Esposito, Esq. (FE2558)<br><br>153 East 53rd St.<br>31st Floor<br>New York, NY 10022<br>212-223-4000 (ph)<br>212-223-4134 (fax)<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>David Florin, Esq.<br>(*Pro Hac Vice application pending*)<br>Margot L. Green, Esq.<br>(*Pro Hac Vice application pending*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>202-624-2500 (ph)<br>202- 628-5116 (fax)<br><br>Attorneys for Century<br>Century Indemnity Company |

ME1 6818926v.1